1  FRANK M. PITRE (100077)
   fpitre@cpmlegal.com
2  MARK C. MOLUMPHY (168009)
   mmolumphy@cpmlegal.com
3  GERALD S. OHN (217382)
   gohn@cpmlegal.com
4  NIKI B. OKCU (229345)
   nokcu@cpmlegal.com
5  **COTCHETT, PITRE & McCARTHY**
   840 Malcolm Road, Suite 200
6  Burlingame, CA 94010
   Telephone: (650) 697-6000
7  Fax: (650) 697-0577

8  *Attorneys for Plaintiff Terra Insurance Company*
   *(A Risk Retention Group)*
9

E-filing

10
           **UNITED STATES DISTRICT COURT**
11
           **NORTHERN DISTRICT OF CALIFORNIA**
12
              **SAN FRANCISCO DIVISION**          EMC
13
                                        CV 09
14 **TERRA INSURANCE COMPANY**     )   Civil Action No. **1609**
   **(A Risk Retention Group),**   )
15                                  )   **COMPLAINT FOR DAMAGES**
               **Plaintiff,**       )   **BASED ON:**
16                                  )
         **vs.**                    )   1.   **Fraudulent Misrepresentation**
17                                  )
                                    )   2.   **Fraudulent Concealment**
18 **NEW YORK LIFE INVESTMENT**     )
   **MANAGEMENT LLC, and Does 1-10,** )  3.   **Negligent Misrepresentation**
19                                  )
                                    )   4.   **Breach Of Fiduciary Duty**
20             **Defendants.**      )
                                    )   5.   **Breach Of Contract**
21                                  )
                                    )   6.   **Breach Of Implied Covenant Of**
22                                  )        **Good Faith & Fair Dealing**
                                    )
23 _____ )   7.   **Negligence**

24                                      **JURY TRIAL DEMANDED**

25

26

27

28

# TABLE OF CONTENTS

Page

I.   OVERVIEW ........................................................... 1

II.  JURISDICTION AND VENUE .......................................... 3

III. THE PARTIES ........................................................ 3

    A.  PLAINTIFF ....................................................... 3

    B.  DEFENDANT ...................................................... 3

IV.  FACTUAL ALLEGATIONS ............................................. 4

    A.  NYLIM'S DUTIES AS AN INVESTMENT ADVISOR ................... 4

    B.  THE INVESTMENT ADVISORY AGREEMENT ....................... 6

    C.  NYLIM DIRECTS TERRA TO INCREASE ITS EQUITY HOLDINGS ...... 8

V.   CAUSES OF ACTION ................................................ 13

FIRST CAUSE OF ACTION
(Fraudulent Misrepresentation) ............................................ 13

SECOND CAUSE OF ACTION
(Fraudulent Concealment) ................................................. 14

THIRD CAUSE OF ACTION
(Negligent Misrepresentation) ............................................. 16

FOURTH CAUSE OF ACTION
(Breach of Fiduciary Duty) ............................................... 17

FIFTH CAUSE OF ACTION
(Breach of Contract) ..................................................... 19

SIXTH CAUSE OF ACTION
(Breach of Implied Covenant of Good Faith & Fair Dealing) .................... 20

SEVENTH CAUSE OF ACTION
(Negligence) ............................................................ 21

VI.  PRAYER FOR RELIEF ............................................... 22

JURY TRIAL DEMANDED ................................................... 22

LAW OFFICES
COTCHETT,
PITRE
& MCCARTHY

1    Plaintiff Terra Insurance Company ( A Risk Retention Group) ( herein after "Plaintiff" or
2  "Terra") alleges as follows upon information and belief based, *inter alia*, upon investigation
3  conducted by Plaintiff and its counsel, except as to those allegations pertaining to Plaintiff
4  personally, which are alleged upon knowledge:

5  **I.    OVERVIEW**

6    1.    Plaintiff Terra is one of the oldest and most established professional liability
7  insurers in the United States, offering coverage to engineering firms. Unlike most of its
8  competitors, Terra operates as a risk retention group formed under the Federal risk retention
9  statutes. Accordingly, Terra is owned exclusively by its policyholders, principally engineering
10 firms that practice in the geosciences and broad-based civil engineering disciplines. After years
11 of superior performance for its clients, Terra is now one of the highest rated risk retention groups
12 in the United States.

13   2.    Since Terra is a risk retention group, Terra's policyholders pay premiums to Terra
14 and also receive Terra's profits through appreciation of their common stock. Thus, Terra's Board
15 of Directors have consistently sought the expert assistance of professional financial advisors to
16 help preserve Terra's assets for the benefit of its policyholder owners, i.e., America's engineers.
17 Ultimately, as discussed below, Terra retained Defendant New York Life Investment
18 Management LLC ("NYLIM" or "Defendant") to provide investment advice and counsel based
19 on its touted experience and capabilities. Indeed, NYLIM proclaimed itself to be a premier
20 investment management firm with unique expertise based on its experience, research and
21 analytical methods. However, after being entrusted with Terra's funds, and despite being paid
22 substantial advisory fees, NYLIM violated the most basic fiduciary duties owed to its client and,
23 even more troubling, concealed material information that contradicted the very investment advice
24 it was providing to Terra, in violation of principles of tort and contract law.

25   3.    As discussed herein, as early as June 2007, and continuing all the way through
26 March 2008, Terra repeatedly expressed concerns to NYLIM about its investment portfolio given
27 economic events and trends seemingly pointing to the deterioration of the U.S. economy.
28 Specifically, Terra sought NYLIM's expertise and advice with respect to its equity holdings, all

1 of which were placed in NYLIM-owned and managed mutual funds. Terra inquired whether it
2 was prudent to liquidate and convert much or all of these equity holdings to cash, cash
3 equivalents or U.S. Treasury bonds for an extended period of time to preserve its investment
4 capital until the financial markets and the overall economy stabilized. NYLIM repeatedly
5 dismissed Terra's concerns and represented, instead, that it believed that the U.S. economy was
6 fundamentally sound, complete with Board presentations and prepared written materials
7 confirming NYLIM's purported belief that market indices would rise by 7-10%. In fact, NYLIM
8 directed Terra to increase its equity holdings to the maximum amount allowed under Terra's
9 investment policy, and maintain all of its equity positions in NYLIM-owned and operated mutual
10 funds.

11    4.    However, contrary to the advice it was providing to Terra, and in complete
12 violation of its contractual and fiduciary duties to Terra, NYLIM inexplicably failed to disclose
13 that, as early as February 2007, NYLIM's management had evaluated its own portfolio of
14 investments and internally decided to divert its own investments to safe U.S. Treasury bonds
15 based on NYLIM's internal conclusion that markets were acting irrationally and that the U.S.
16 economy was unstable.

17    5.    In late September 2008, after seeing drastic reductions in the value of its equity
18 holdings, Terra asked again for NYLIM's assistance to implement both an immediate action plan
19 and an investment strategy to year end. However, adding insult to injury, and despite the
20 hundreds of thousands of dollars of advisory fees that it had been paid to date, NYLIM ignored
21 Terra's requests for help, failed to respond, and abandoned its fiduciary relationship. As a result,
22 Terra's investment portfolio took another nose dive until November 2008, at which point, in
23 order to mitigate its losses, Terra instructed NYLIM to liquidate Terra's holdings in NYLIM
24 mutual funds. The very next day, after NYLIM carried out the instructions, NYLIM gave notice
25 that it was terminating its services for Terra.

26    6.    Plaintiff suffered substantial damages as its equity holdings, including NYLIM
27 mutual funds, plunged in value. By this action, Plaintiff seeks to recover damages for NYLIM's
28 wrongful conduct.

LAW OFFICES
COTCHETT,
PITRE
& MCCARTHY

**II.    JURISDICTION AND VENUE**

7.    This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a)(1) in that Plaintiff and Defendant are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interest and costs.

8.    Venue is proper in this district. Defendant maintains an affiliated office in this District in San Francisco, California. A substantial part of the events, acts, omissions and transactions complained of herein, including the concealment of information to Plaintiff, occurred in this District. At all relevant times herein, Defendant conducted substantial business and/or committed violations of law by acts committed in this District.

**III.   THE PARTIES**

**A.    PLAINTIFF**

9.    Plaintiff Terra is a Vermont corporation headquartered in Corte Madera, California. Terra, which traces its roots back to 1969, is one of the nation's oldest professional liability insurers offering coverage to engineering firms.

**B.    DEFENDANT**

10.    Defendant NYLIM is a registered investment advisor incorporated in Delaware with its principal place of business in New York, New York. NYLIM has affiliated offices in various parts of the United States, including San Francisco. NYLIM is an indirect, wholly-owned subsidiary of New York Life Insurance Company. NYLIM is one of the largest asset management firms in the United States.

11.    Except as described herein, Plaintiff is ignorant of the true names of Defendants sued as Does 1 through 10 inclusive and, therefore, sues these Defendants by such fictitious names. Plaintiff will seek leave of the Court to amend this Complaint to allege their true names and capacities when they are ascertained. Plaintiff alleges that each of these Doe Defendants is responsible in some manner for the acts and occurrences alleged herein, and that Plaintiff's damages were caused by such Doe Defendants.

12.    Defendant, and the Doe Defendants, and each of them, are individually sued as participants and as aiders and abettors in the improper acts, plans, schemes, and transactions, to

1 induce Plaintiff to purchase and hold the securities, and pay the advisory fees, that are the subject
2 of this Complaint.

3     13.    Various other people, firms, and corporations, presently unknown to Plaintiff and
4 sued herein as Does 1 through 10 in this Complaint, have participated as members of the alleged
5 scheme or acted in furtherance of it, or aided or assisted in carrying out its purposes as alleged in
6 this Complaint, and have performed acts and made statements in furtherance of the violations
7 and conspiracy.

8     14.    At all relevant times, Defendant was and is the agent of each of the remaining Doe
9 Defendants, and in doing the acts alleged herein, was acting within the course and scope of such
10 agency. Defendant ratified and/or authorized the wrongful acts of each of the other Doe
11 Defendants.

12 **IV.    FACTUAL ALLEGATIONS**

13     **A.    NYLIM'S DUTIES AS AN INVESTMENT ADVISOR**

14     15.    An investment advisor is a firm or individual who, for compensation, engages in
15 the business of advising others, either directly or through publications or writings, as to the value
16 of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for
17 compensation and as part of a regular business, issues or promulgates analyses or reports
18 concerning securities. Investment advisors provide ongoing management of investments based
19 on the client's objectives.

20     16.    As an investment advisor, NYLIM was subject to professional standards of care
21 with respect to advising clients such as Terra. These standards of care are based on applicable
22 state and federal laws, industry standards, and professional codes of ethics.

23     17.    As an investment advisor, NYLIM and/or its representatives were members of or
24 affiliated with the Financial Planning Association, the Certified Financial Planner Board of
25 Standards, and the Financial Planning Standards Board.

26     18.    Under standards established by the Financial Planning Association, the Certified
27 Financial Planner Board of Standards, and the Financial Planning Standards Board, NYLIM had
28 a duty of loyalty to act in the best interests of its client at all times. Conversely, an investment

1  advisor should not act in his own interest.  Engaging in self-dealing, misappropriating a client's
2  assets or opportunities, or otherwise profiting in a transaction that is not substantively or "entirely
3  fair" to the client may give rise to breaches of the duty of loyalty.

4       19.    Under standards established by the Financial Planning Association, the Certified
5  Financial Planner Board of Standards, and the Financial Planning Standards Board, NYLIM had
6  a duty to act with due care and in good faith towards its client.  Accordingly, NYLIM had a duty
7  to act prudently with the care of a prudent investment advisor.  Thus, an investment advisor such
8  as NYLIM must at all times exercise good judgment, applying its education, skills, and expertise
9  to the financial planning or investment issue at hand.  Simply following a prudent process is not
10  sufficient if prudent good judgment and the investment advisor's requisite knowledge, expertise
11  and experience are not well applied.

12       20.    Under standards established by the Financial Planning Association, the Certified
13  Financial Planner Board of Standards, and the Financial Planning Standards Board, NYLIM had
14  a duty of honesty to its client.  Indeed, honesty is fundamental to the role of an investment
15  advisor who is placed in a position of trust and confidence.  Thus, in the course of professional
16  activities, an investment advisor must not engage in conduct involving dishonesty, fraud, deceit
17  or misrepresentation, or knowingly make a false or misleading statement to or conceal material
18  information from a client.

19       21.    Under standards established by the Financial Planning Association, the Certified
20  Financial Planner Board of Standards, and the Financial Planning Standards Board, NYLIM had
21  a duty to provide full and fair disclosure of all material facts.  Disclosure of material facts is
22  essential when acting in the client's best interest.  As such, an investment advisor must provide
23  accurate and relevant information.

24       22.    Under standards established by the Financial Planning Association, the Certified
25  Financial Planner Board of Standards, and the Financial Planning Standards Board, NYLIM had
26  a duty to disclose and manage material conflicts of interest.  All investment advisors receiving
27  any type of fee for their services possess conflicts of interest relating to their own compensation
28  and may possess other conflicts of interest.  Thus, investment advisors must disclose material

LAW OFFICES
COTCHETT,
PITRE
& McCARTHY

1 conflicts of interest. A conflict of interest is material if an ordinary person would take it into
2 account in making a decision. However, the disclosure of a conflict of interest does not negate
3 the investment advisor's duty to act in the best interests of the client with respect to the scope of
4 the engagement.

## B. THE INVESTMENT ADVISORY AGREEMENT

6 23. On or about June 21, 1989, Terra entered into an investment advisory agreement
7 ("Investment Advisory Agreement" or "Agreement") with Towneley Capital Management, Inc.

8 24. In October 2000, Towneley Capital was acquired by NYLIM.

9 25. According to NYLIM, it is one of the United States' premier investment
10 management firms, with 1,500 employees and 15 offices across the nation. NYLIM also
11 described itself as one of the top 25 global money managers with billions in assets under
12 management.

13 26. NYLIM heavily promoted its ability to give investor clients a highly successful
14 team approach towards investment management, based on its bottom-up, value-driven stock
15 selection process and in-depth portfolio analysis. NYLIM claimed that its global research
16 capabilities differentiated it from competitors and was a key factor in achieving results for its
17 clients. NYLIM also represented that it provided proprietary research and unique investment
18 capabilities to global institutional and individual investors. In one NYLIM release, it claimed
19 that it delivers "the investment products and expertise you've come to expect through:
20 Multi-Boutique Management, offering access to leading institutional managers that drive
21 performance; Proven Wealth-Building Tools, providing actionable and effective solutions to help
22 invest and plan for all life stages; and a commitment to you. We proudly stand on a track record
23 of accountability, integrity, and commitment."

24 27. Based on NYLIM's reported record and resources, and with the knowledge that
25 Towneley's investment advisory team would continue to work on Terra's account at NYLIM,
26 Terra consented to assignment of the Agreement to NYLIM and continued to retain them.

27 28. Pursuant to the Agreement, NYLIM was paid to act as Terra's investment advisor
28 with respect to a fund that consisted of securities and cash from time to time held in a custodial

1    account. The Agreement gave NYLIM the authority to manage the fund and to make such
2    purchases and sales of securities on behalf of the fund as NYLIM deemed appropriate and
3    consistent with the stated investment objectives.

4        29.    Pursuant to this Agreement, NYLIM was required to consult with Terra with
5    respect to changes in the objectives of the investment guidelines. The Agreement also required
6    NYLIM to provide Terra with monthly reports on the valuation of assets held in the fund. The
7    Agreement provided that NYLIM would place orders for purchases and sales of securities held in
8    the fund with brokers whom NYLIM believed would provide good execution and the best prices
9    available in the market place.

10       30.    The Agreement expressly provided that NYLIM would not be protected against
11   any liability to Terra based upon NYLIM's bad faith, negligence or reckless disregard of
12   NYLIM's obligations. In return for NYLIM's expertise and services, Terra agreed to pay
13   NYLIM professional advisory fees.

14       31.    The relevant investment guidelines and advisory fees for the Agreement are based
15   on revisions to the Agreement entered into in 2005. Under these investment guidelines, the
16   Agreement's stated Investment Objective was "Preservation of capital in nominal terms and
17   interest income."

18       32.    With respect to investments in mutual funds, the Agreement provided that a
19   maximum of 20% of the portfolio, at cost, could be invested in proprietary balanced and equity
20   mutual funds. The Agreement also provided that NYLIM could invest up to 20% at cost of the
21   total portfolio assets in mutual funds managed and owned by NYLIM.

22       33.    Consistent with the stated Investment Objective, the other primary types of
23   investments permitted were corporate, municipal, U.S. government and U.S. government agency
24   fixed-interest bonds maturing within 20 years from the date of purchase. Nonetheless, NYLIM
25   was permitted to invest in short-term (under one year) interest-bearing instruments and money
26   market mutual funds in such amounts or in such proportions that NYLIM believed to be
27   conducive to achievement of the Investment Objective.

28

LAW OFFICES
COTCHETT,
PITRE
& MCCARTHY

COMPLAINT                                                    7

34. With respect to diversification, under the Agreement, a maximum of 85% of the portfolio could be invested in fixed-income securities, including municipal, corporate and government securities. Not more than 3% on a cost basis of the portfolio could be held in securities of any one corporation or any one issue of a municipal bond. In addition, no more than 10% of the portfolio could be invested in any single state, city, or other political division.

35. As to investment advisory fees, the Agreement provided that NYLIM would receive quarterly payments of fees based on the average fair market value of the fund.

## C. NYLIM DIRECTS TERRA TO INCREASE ITS EQUITY HOLDINGS

36. As described herein, NYLIM disregarded the fiduciary duties owed to Terra, its client, misrepresented its belief about market conditions in order to maximize commissions it would earn from Terra's equity holdings, and concealed material information that directly contradicted the advice it was providing. Put simply, Terra was not given the benefit of NYLIM's expertise nor the opportunity to learn of critical diversification strategies which NYLIM adopted in managing its own portfolio of assets. Rather, in a reckless and bad faith dereliction of duty, during a time period when NYLIM was diverting its own assets into U.S. Treasury bonds based on NYLIM's belief that markets were unfavorable and acting irrationally, NYLIM advised Terra to continue to maintain and increase its equity position in NYLIM funds because the U.S. economy is "fundamentally sound."

37. As late as 2005, Terra's primary equity investments were in well performing third party mutual funds, unrelated to NYLIM. In August 2005, NYLIM advised Terra that it needed to sell its interest in these mutual funds and to invest instead in NYLIM mutual funds. In November 2005, Joan M. Sabella, a portfolio manager with NYLIM's Equity Investor's Group, sent a letter to David L. Coduto, the President and Chief Executive Officer of Terra, repeating the request. According to Sabella, NYLIM had decided that, due to changes in its investment management strategy, it could no longer advise Terra on assets invested in third party mutual funds. NLYIM stated that its new policy would take effect on December 31, 2005. In reliance on NYLIM's advice, Terra sold its interest in well performing third party mutual funds and made

COMPLAINT                                                                                          8

1  additional investments in NYLIM mutual funds. Ultimately, the only mutual funds held by Terra
2  were owned and managed by NYLIM.

3     38.     In June 2007, Terra officers, including President and CEO David Coduto and
4  Chief Financial Officer Hal S. Arditti, visited with NYLIM and met with Joan Sabella and Veda
5  Pai-Panadiker to discuss Terra's investment portfolio. Coduto and Arditti told NYLIM of
6  Terra's increasing concerns about its investment portfolio, and the exposure posed by its equity
7  holdings, in light of conditions in the U.S. economy. Sabella and Pai-Panadiker dismissed the
8  concerns and told Terra to maintain its holdings.

9     39.     In subsequent meetings of Terra's Board of Directors during 2007, the Board
10  engaged in extensive discussions about its investment portfolio.

11     40.     In November 2007, approximately one week prior to a scheduled Terra board
12  meeting to be attended by NYLIM representatives, Terra sent NYLIM written discussion points
13  on Terra's concerns about the economy and proposed eliminating or materially reducing Terra's
14  equity holdings.

15     41.     At the November 2007 Terra board meeting, Coduto asked NYLIM
16  representatives Sabella and Pai-Panadiker whether Terra should eliminate or materially reduce its
17  equity portfolio given current economic conditions, and then transfer such balance of equities
18  into cash, cash equivalents or U.S. Treasury Bonds for an extended period of time until the
19  financial markets and the overall economy stabilized. Sabella, the NYLIM portfolio manager of
20  Terra's account, rejected the move and represented that NYLIM market strategists had internally
21  concluded that the U.S. economy is "fundamentally sound." Accordingly, according to Sabella,
22  "it was NYLIM's recommendation that Terra maintain its current equity position." Sabella
23  recommended that Terra sell all its NYLIM Mainstay international funds and replace them with
24  NYLIM's ICAP international fund and, further, that Terra purchase additional NYLIM mutual
25  funds – i.e., to increase its equity holdings. Terra followed the advice of its professional
26  investment advisor.

27     42.     In March 2008, Terra held another Board meeting. Two NYLIM representatives
28  attended the meeting, Sabella and William Knapp. Knapp was described as an economist, with a

1  Ph.D. in Economics, the managing director of NYLIM's Investor's Group, and the firmwide

2  Investment Strategist. During the meeting, Coduto, Terra's President, reiterated his concerns

3  about Terra's equity holdings and his recommendation to eliminate or materially reduce Terra's

4  equity stake. In response, Knapp gave the Board a detailed presentation of his 2008 economic

5  forecast and market outlook, representing that it was NYLIM's belief that "the U.S. economy is

6  fundamentally found" and that "everyone should buy houses." NYLIM also presented written

7  reports supporting NYLIM"s purported market outlook, prepared by Knapp and Tony Elavia, the

8  Chief Investment Officer and Senior Managing Director of NYLIM's Equity Investor's Group.

9  Based on these oral and written reports, NYLIM again directed Terra to maintain its current

10  equity position. In reliance on NYLIM's advice, Terra did so.

11      43.     However, unbeknownst to Terra, NYLIM had internally decided to take the exact

12  opposite approach with respect to its own holdings. In a special report recently discovered by

13  Terra, Gary Wendlant, Vice Chairman of the Board and Chief Investment Officer of NYLIM,

14  admitted that:

15          Based on our belief that the markets were acting irrationally, in February 2007,

16          New York Life management approved a proposal to divert a portion of the

17          Company's investable cash flow from our normal credit market investments into

18          U.S. Treasurys. U.S. Treasurys are not only entirely safe, but offer excellent

19          liquidity, positioning us to take advantage of attractive investment opportunities

20          when risk/reward relationships improve.

21  (emphasis added).

22      44.     A similar posting from NYLIM's website, since removed, also stated that:

23          New York Life's investment management team has long ascribed to a proven,

24          conservative discipline in managing our more than $150-billion portfolio. . . . We

25          don't try to predict which way the market will move. We do our own

26          fundamental, bottom-up research, rather than relying on credit ratings. We invest

27          for the long term, because we make long-term commitments to our policyholders.

28          We maintain diversification and ample liquidity. And we ensure that the potential

❀
LAW OFFICES
COTCHETT,
PITRE
& MCCARTHY

COMPLAINT                                                                10

1  returns offered by the securities we invest in significantly exceed the risk of these

2  investments.

3  It is that insistence on getting paid for taking risk that drove a strategic

4  reallocation of some of our investments in February 2007 — a move we refer to as

5  a "quality tilt." More than a year before the current credit crisis emerged, New

6  York Life's investment management team, led by Vice Chairman and Chief

7  Investment Officer Gary Wendlandt, began closely monitoring what they believed

8  to be an unfavorable market environment. Observing a trend toward weaker

9  underwriting standards for all forms of debt, as well as investment returns that

10  were not commensurate with the risk, they recommended a strategy that called for

11  temporarily allocating a larger portion of the company's investments into safe

12  U.S. Treasury bonds. . . .

13  Such diversification requires significant discipline. "New York Life's strong

14  operating results over the past decade have meant a continual inflow of money to

15  be invested. Even at the peak of the market, we would not take a significant stake

16  in any single name, no matter how attractive it appeared, because we know there's

17  always a risk we could get it wrong," says Gary Wendlandt. "We're confidently

18  humble in our investing approach."

19  **What Lies Ahead**

20  As the events of the past weeks have made clear, we are in the middle of a

21  fundamental reshaping of the financial sector — a transformation more dramatic

22  than anything seen in generations. But amid this storm, it's business as usual at

23  New York Life. In good times and in bad, our core values of financial strength,

24  humanity and integrity continue to stand us — and, more important, our

25  policyholders — in very good stead. Our mutuality allows us to keep a steady

26  hand at the wheel, maintaining a long-term view and avoiding the temptations of

27  chasing short-term gains. And our commitment to maintaining the industry's #1

28

11

1   team of well-trained professional agents means you have a valued partner to help

2   guide you through these uncharted waters.

3   (emphasis added).

4   45.    NYLIM and its senior investment officers never advised Terra about its

5   conclusions about the economy or the February 2007 "quality tilt" and internal shift of its own

6   investments into safe U.S. Treasury bonds, even though such a quality tilt was later proposed by

7   Terra in its meetings with NYLIM's representatives. Rather, at all times, NYLIM and its senior

8   investment officers advised Terra to maintain and increase its equity holdings given its supposed

9   positive outlook on the economy.

10  46.    By September 2008, the value of Terra's equity holdings in the NYLIM owned

11  and managed mutual funds had greatly deteriorated. On September 29, 2008, Coduto and Arditti

12  called Sabella, NYLIM's portfolio manager, and asked for NYLIM's guidance with respect to the

13  need to take any immediate action to preserve assets, as well as NYLIM's proposed strategies for

14  the rest of the year. In response, Sabella merely said that NYLIM would do whatever Terra

15  wanted it to do. Sabella also said that she would ask Tony Elavia, the Chief Investment Officer

16  of NYLIM Equity Investors, to speak with Coduto.

17  47.    On September 30, 2008, Terra's Coduto and Lisa Gamblin participated on a

18  conference call with NYLIM's Sabella and Elavia. When Coduto asked NYLIM's

19  representatives for the basis for its advice to maintain its equity holdings, Elavia responded that,

20  "At any given time, we give it our best guess."

21  48.    On October 20, 2008, after several more weeks had passed, Terra sent a letter to

22  NYLIM and reiterated its request for guidance going forward. This time, after receiving

23  hundreds of thousands of dollars in management fees, NYLIM went silent and chose not to

24  respond at all.

25  49.    Having already seen the value of its NYLIM mutual fund holdings plummet,

26  having received no response from its paid investment advisors, and considering relevant

27  accounting rules with respect to asset impairment, Terra made the decision to mitigate its

28  substantial losses and liquidate its equity holdings in NYLIM mutual funds.

1    50.    On November 10, 2008, Terra contacted NYLIM and directed it to liquidate its

2    mutual fund holdings immediately with the proceeds to be maintained as cash. The very next

3    day, November 11, 2008, NYLIM sent Terra a letter and gave notice of NYLIM's decision to

4    terminate the Agreement.

5    51.    Between November 2007, when NYLIM directed Terra to maintain and increase

6    its equity holdings, and November 2008, when the equity holdings were ultimately liquidated,

7    Terra suffered losses of approximately $3,000,000, including losses in the value of its portfolio,

8    loss of use of capital, lost interest, and unearned professional advisory fees. In the short period

9    between September 2008 and November 2008, when NYLIM ignored Terra's pleas for guidance,

10   Terra's investments lost approximately $1,000,000.

11   **V.    CAUSES OF ACTION**

12                              **FIRST CAUSE OF ACTION**

13                              **(Fraudulent Misrepresentation)**

14   52.    Terra hereby incorporates all of the foregoing paragraphs.

15   53.    NYLIM made material representations to Terra that were false and misleading,

16   including but not limited to oral and written representations about NYLIM's analysis about

17   market conditions, its stated belief that the economy was fundamentally sound, and its conclusion

18   that Terra should maintain if not increase its equity position in NYLIM funds, consistent with its

19   investment objectives, at a time when NYLIM had concluded that the economy was not sound

20   and commenced efforts to divest its own investments to safe U.S. Treasury bonds.

21   54.    NYLIM's representations were false and misleading. When NYLIM made the

22   representations, NYLIM knew the representations were false or made the representations

23   recklessly and without regard for their truth because NYLIM had internally concluded, based on

24   its research and analysis, that U.S. market conditions were and would continue to be unstable and

25   unfavorable and that NYLIM should begin shifting its own investments to safe U.S. Treasury

26   bonds.

27   55.    At the time the misrepresentations were made, NYLIM intended that Terra rely on

28   the misrepresentations.

56.     Terra purchased and held equities in NYLIM mutual funds in justifiable and reasonable reliance on NYLIM's misrepresentations.  Had Terra known the true facts, Terra would not have purchased or continued to hold equities, including those held in NYLIM mutual funds.  NYLIM's misrepresentations were a substantial factor in causing Terra harm.

57.     NYLIM, and the Doe Defendants, and each of them, aided and abetted, encouraged, and rendered substantial assistance in accomplishing the wrongful conduct, their wrongful goals, and other wrongdoing complained of herein.  In taking action, as particularized herein, to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoings complained of, NYLIM and each of the Doe Defendants acted with an awareness of his/its primary wrongdoing and realized that his/its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

58.     As a result of the wrongful conduct of NYLIM, Terra has suffered and will continue to suffer economic losses and other general and specific damages, all in an amount to be determined according to proof.

59.     The aforementioned acts of NYLIM were done maliciously, oppressively, and with intent to defraud, and Terra is entitled to punitive and exemplary damages in an amount to be shown according to proof at the time of trial.

## SECOND CAUSE OF ACTION

### (Fraudulent Concealment)

60.     Terra hereby incorporates all of the foregoing paragraphs.

61.     Throughout the period, including during party-to-party communications in November 2007, March 2008, September 2008, and October 2008, when Terra sought NYLIM's professional advice and recommendations on Terra's investment portfolio, NYLIM concealed material facts from Terra as discussed above, including but not limited to, the fact that it had internally concluded that the economy was not sound and that NYLIM had already commenced efforts to divest its own investments to safe U.S. Treasury bonds.

62.     NYLIM was Terra's investment advisor during the relevant time period.  As Terra's investment advisor, NYLIM had a duty to disclose these material facts to Terra.  Further,

1  once NYLIM sought to disclose its views to Terra, it had the duty to disclose all known material
2  information.

3      63.    NYLIM actively concealed these material facts from Terra and intended to
4  deceive Terra and induce its reliance by concealing these material facts.

5      64.    Terra purchased and held equities in NYLIM mutual funds in justifiable and
6  reasonable reliance on NYLIM's deception. Indeed, NYLIM actually advised Terra to maintain
7  or increase its equity positions in NYLIM funds in direct contradiction to its own internal
8  analysis. Had Terra known the true facts concealed from it, Terra would not have purchased or
9  continued to hold equities, including those held in NYLIM mutual funds. NYLIM's concealment
10  of material facts was a substantial factor in causing Terra harm.

11      65.    NYLIM, and the Doe Defendants, and each of them, aided and abetted,
12  encouraged, and rendered substantial assistance in accomplishing the wrongful conduct, their
13  wrongful goals, and other wrongdoing complained of herein. In taking action, as particularized
14  herein, to aid and abet and substantially assist the commission of these wrongful acts and other
15  wrongdoings complained of, NYLIM and each of the Doe Defendants acted with an awareness of
16  his/its primary wrongdoing and realized that his/its conduct would substantially assist the
17  accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

18      66.    As a result of the wrongful conduct of NYLIM, Terra has suffered and will
19  continue to suffer economic losses and other general and specific damages, all in an amount to be
20  determined according to proof.

21      67.    The aforementioned acts of NYLIM were done maliciously, oppressively, and
22  with intent to defraud, and Terra is entitled to punitive and exemplary damages in an amount to
23  be shown according to proof at the time of trial.

24

25

26

27

28

1

### THIRD CAUSE OF ACTION

2

### (Negligent Misrepresentation)

3        68.     Terra hereby incorporates all of the foregoing paragraphs.

4        69.     NYLIM made material representations to Terra that were false and misleading,

5   including but not limited to oral and written representations about NYLIM's analysis about

6   market conditions, its stated belief that the economy was fundamentally sound, and its conclusion

7   that Terra should maintain if not increase its equity position in NYLIM funds, consistent with its

8   investment objectives, at a time when NYLIM had concluded that the economy was not sound

9   and commenced efforts to divest its own investments to safe U.S. Treasury bonds.

10       70.     NYLIM's representations were false and misleading. When NYLIM made the

11  representations, NYLIM had no reasonable ground for believing the representations were true.

12  Indeed, NYLIM had previously determined that, based on its research and analysis, U.S. market

13  conditions were and would continue to be unstable and unfavorable and that NYLIM should

14  begin to divest its own investments to safe U.S. Treasury bonds.

15       71.     At the time the misrepresentations were made, NYLIM intended that Terra rely on

16  the misrepresentations.

17       72.     Terra purchased and held equities in NYLIM mutual funds in justifiable and

18  reasonable reliance on NYLIM's misrepresentations. Had Terra known the true facts, Terra

19  would not have purchased or continued to hold equities, including those held in NYLIM mutual

20  funds. NYLIM's misrepresentations were a substantial factor in causing Terra harm.

21       73.     NYLIM, and the Doe Defendants, and each of them, aided and abetted,

22  encouraged, and rendered substantial assistance in accomplishing the wrongful conduct, their

23  wrongful goals, and other wrongdoing complained of herein. In taking action, as particularized

24  herein, to aid and abet and substantially assist the commission of these wrongful acts and other

25  wrongdoings complained of, NYLIM and each of the Doe Defendants acted with an awareness of

26  his/its primary wrongdoing and realized that his/its conduct would substantially assist the

27  accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

28

1    74.    As a result of the wrongful conduct of NYLIM, Terra has suffered and will

2  continue to suffer economic losses and other general and specific damages, all in an amount to be

3  determined according to proof.

4                          **FOURTH CAUSE OF ACTION**

5                            **(Breach of Fiduciary Duty)**

6    75.    Terra hereby incorporates all of the foregoing paragraphs.

7    76.    By virtue of its relationship with Terra, and its position as Terra's investment

8  advisor, NYLIM set out to create and did in fact create a special relationship of trust and

9  confidence, and thereby owed Terra a fiduciary duty. A fiduciary relationship existed at all times

10  herein.

11    77.    NYLIM acted on Terra's behalf as an investment advisor for the purposes of

12  managing Terra's investment fund to make such purchases and sales of securities on behalf of

13  Terra in accordance with the investment objectives and guidelines in the Agreement.

14    78.    NYLIM breached its fiduciary duties to Terra by failing to act as a reasonably

15  careful investment advisor would have acted under the same or similar circumstances by, among

16  other things, advising Terra to invest in NYLIM mutual funds during a time when NYLIM was

17  diverting its own investments to safe U.S. Treasury bonds; misrepresenting and concealing

18  material facts; pursuing an investment course to increase NYLIM's own yield at Terra's expense;

19  and abandoning the relationship.

20    79.    NYLIM breached its fiduciary duty of honesty not to mislead Terra. NYLIM

21  represented to Terra in November 2007 that NYLIM believed, based on its research and analysis,

22  that the U.S. economy was fundamentally sound. NYLIM recommended that Terra maintain its

23  equity positions in NYLIM funds and in fact, invest in additional NYLIM funds, in furtherance

24  of Terra's investment objectives in the Agreement. Again, in March 2008, NYLIM represented

25  to Terra that NYLIM believed, based on its research and analysis, that the U.S. economy was

26  fundamentally sound. NYLIM recommended that Terra maintain its equity positions in NYLIM

27  funds in furtherance of Terra's investment objectives in the Agreement. NYLIM's

28  representations were misleading and dishonest because NYLIM's own written reports during the

1 same time period stated that, based on its research and analysis, as of February 2007, NYLIM

2 believed U.S. market conditions were and would continue to be unstable and unfavorable and so

3 NYLIM began shifting its own investments to safe U.S. Treasury bonds.

4       80.     NYLIM breached its fiduciary duty to provide full and fair disclosure of all

5 material facts including, without limitation, in party-to-party conversations in November 2007,

6 March 2008, September 2008, and October 2008, when Terra sought NYLIM's

7 recommendations on Terra's investment portfolio. NYLIM failed to disclose to Terra that based

8 on NYLIM's research and analysis as evidenced in written reports, as of February 2007, NYLIM

9 believed U.S. market conditions were and would continue to be unstable and unfavorable and so

10 NYLIM began shifting its own investments to safe U.S. Treasury bonds.

11       81.     NYLIM breached its fiduciary duty to act with due care and in the utmost good

12 faith to Terra by knowingly providing Terra with erroneous investment advice, intentionally

13 withholding from Terra the benefit of NYLIM's own research and analysis that concluded that

14 markets were unstable and investments should be shifted to safer vehicles like U.S. Treasury

15 bonds, and abandoning the relationship.

16       82.     NYLIM breached its fiduciary duties of loyalty and failed to disclose and manage

17 material conflicts of interest. Indeed, rather than acting in Terra's best interests at all times,

18 NYLIM advised Terra to pursue an investment strategy that NYLIM knew was not in Terra's best

19 interests based on NYLIM's research and analysis of market conditions. Instead, NYLIM sought

20 to increase its own yield at Terra's expense, but failed to disclose this material conflict of interest.

21       83.     NYLIM's repeated breach of its fiduciary duty was a substantial factor in causing

22 Terra harm.

23       84.     NYLIM, and the Doe Defendants, and each of them, aided and abetted,

24 encouraged, and rendered substantial assistance in accomplishing the wrongful conduct, their

25 wrongful goals, and other wrongdoing complained of herein. In taking action, as particularized

26 herein, to aid and abet and substantially assist the commission of these wrongful acts and other

27 wrongdoings complained of, NYLIM and each of the Doe Defendants acted with an awareness of

28

1 his/its primary wrongdoing and realized that his/its conduct would substantially assist the

2 accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

3     85.    As a result of the wrongful conduct of NYLIM, Terra has suffered and will

4 continue to suffer economic losses and other general and specific damages, all in an amount to be

5 determined according to proof.

6     86.    The aforementioned acts of NYLIM were done maliciously, oppressively, and

7 with intent to defraud, and Terra is entitled to punitive and exemplary damages in an amount to be

8 shown according to proof at the time of trial.

9 <center>**FIFTH CAUSE OF ACTION**</center>

10 <center>**(Breach of Contract)**</center>

11     87.    Terra hereby incorporates all of the foregoing paragraphs.

12     88.    As alleged herein, Terra and NYLIM entered into the Investment Advisory

13 Agreement whereby NYLIM agreed to manage Terra's investment fund and to make such

14 purchases and sales of securities on behalf of Terra in accordance with the investment objectives

15 and guidelines in the Agreement.

16     89.    Terra fully performed all conditions, covenants, and promises required of it under

17 the Agreement and, among other things, paid advisory fees to NYLIM for its investment advice

18 pursuant to the terms of the Agreement.

19     90.    NYLIM breached its obligations to Terra under the Agreement contract by failing

20 to pursue the Agreement's stated Investment Objective, advising Terra to maintain its equity

21 position in NYLIM funds and to purchase additional securities at a time when NYLIM knew that

22 such a strategy was inconsistent with Terra's Investment Objective and contrary to its own

23 conclusions. NYLIM further breached the Agreement by abandoning the relationship, refusing to

24 perform its contractual duties, and ignoring Terra's requests for investment advice.

25     91.    NYLIM, and the Doe Defendants, and each of them, aided and abetted,

26 encouraged, and rendered substantial assistance in accomplishing the wrongful conduct, their

27 wrongful goals, and other wrongdoing complained of herein. In taking action, as particularized

28 herein, to aid and abet and substantially assist the commission of these wrongful acts and other

LAW OFFICES
COTCHETT,
PITRE
& MCCARTHY

1 wrongdoings complained of, NYLIM and each of the Doe Defendants acted with an awareness of
2 his/its primary wrongdoing and realized that his/its conduct would substantially assist the
3 accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

4     92.    As a result of NYLIM's breach, Terra has suffered and will continue to suffer
5 economic losses and other general and specific damages, all in an amount to be determined
6 according to proof.

7 <div align="center">**SIXTH CAUSE OF ACTION**</div>

8 <div align="center">**(Breach of Implied Covenant of Good Faith & Fair Dealing)**</div>

9     93.    Terra hereby incorporates all of the foregoing paragraphs.

10     94.    As alleged herein, Terra and NYLIM entered into the Investment Advisory
11 Agreement whereby NYLIM agreed to manage Terra's investment fund and to make such
12 purchases and sales of securities on behalf of Terra in accordance with the investment objectives
13 and guidelines in the Agreement.

14     95.    Implied in the Agreement was a covenant that NYLIM would act in good faith and
15 deal fairly with Terra and would not do anything to deprive Terra of the benefits of the
16 Agreement.

17     96.    Terra fully performed all conditions, covenants, and promises required of it under
18 the Agreement and, among other things, paid advisory fees to NYLIM for its investment advice
19 pursuant to the terms of the Agreement.

20     97.    NYLIM unfairly interfered with and frustrated Terra's right to receive the benefits
21 of the Agreement by failing to pursue the Agreement's stated Investment Objective, by advising
22 Terra to maintain and increase its equity position in NYLIM funds when NYLIM knew that such a
23 strategy was inconsistent with Terra's Investment Objective and contrary to its own conclusions.
24 NYLIM further interfered with and frustrated Terra's right to receive benefits of the Agreement by
25 abandoning the relationship, refusing to perform its contractual duties and ignoring Terra's
26 requests for investment advice.

27     98.    NYLIM, and the Doe Defendants, and each of them, aided and abetted,
28 encouraged, and rendered substantial assistance in accomplishing the wrongful conduct, their

1 wrongful goals, and other wrongdoing complained of herein. In taking action, as particularized
2 herein, to aid and abet and substantially assist the commission of these wrongful acts and other
3 wrongdoings complained of, NYLIM and each of the Doe Defendants acted with an awareness of
4 his/its primary wrongdoing and realized that his/its conduct would substantially assist the
5 accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

6      99.    As a result of NYLIM's breach, Terra has suffered and will continue to suffer
7 economic losses and other general and specific damages, all in an amount to be determined
8 according to proof.

9 <div align="center">**SEVENTH CAUSE OF ACTION**</div>

10 <div align="center">**(Negligence)**</div>

11      100.    Terra hereby incorporates all of the foregoing paragraphs.

12      101.    By virtue of its relationship with Terra, NYLIM owed Terra a duty to exercise
13 reasonable and ordinary care in communicating with Terra, in providing investment advice, and in
14 managing its fund to make such purchases and sales of securities on behalf of Terra in accordance
15 with the investment objectives and guidelines in the Agreement. NYLIM owed Terra further
16 duties under applicable state and federal laws, industry standards, and professional codes of
17 ethics.

18      102.    NYLIM duties to Terra included, but are not limited to, the duty to: (1) act honestly
19 and not mislead Terra; (2) disclose all material facts; (3) act in good faith; (4) pursue Terra's
20 investment objectives; (5) consult with Terra about its investment portfolio and not abandon the
21 relationship; (6) act in Terra's best interests; and (7) disclose and manage material conflicts of
22 interest.

23      103.    NYLIM was negligent in failing to exercise reasonable and ordinary care with
24 respect to these duties as set forth above. NYLIM's negligence was a substantial factor in causing
25 Terra harm.

26      104.    As a direct and legal result of NYLIM's negligent acts and omissions, Terra has
27 suffered and will continue to suffer economic losses and other general and specific damages, all in
28 an amount to be determined according to proof.

LAW OFFICES
COTCHETT,
PITRE
& MCCARTHY

**VI.**   **PRAYER FOR RELIEF**

WHEREFORE, Terra prays for judgment as follows:

1.   Awarding Terra compensatory damages and exemplary damages in an amount to be proven at trial;

2.   Awarding Terra pre-judgment interest, as well as reasonable attorneys' fees, and other costs;

3.   Awarding such other relief as this Court may deem just and proper.

<div align="center">

**JURY TRIAL DEMANDED**

</div>

Terra demands a jury trial on all issues so triable.

Date:   April 13, 2009                                    COTCHETT, PITRE & McCARTHY

By: _____
                                                                    MARK C. MOLUMPHY

*Attorneys for Plaintiff Terra Insurance Company*
*(A Risk Retention Group)*

LAW OFFICES
COTCHETT,
PITRE
& McCARTHY