J. Russell Stedman (117130), rstedman@bargerwolen.com
Travis R. Wall (191662), twall@bargerwolen.com
Peter J. Felsenfeld (260433), pfelsenfeld@bargerwolen.com
BARGER & WOLEN LLP
650 California Street, 9th Floor
San Francisco, California  94108-2713
Telephone:  (415) 434-2800
Facsimile:  (415) 434-2533

Attorneys for Defendant
New York Life Investment Management LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TERRA INSURANCE COMPANY (A Risk Retention Group), | CASE NO. C 09-01609 WHA |
| Plaintiff, | **DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST, SECOND AND THIRD CLAIMS FOR RELIEF IN PLAINTIFF'S COMPLAINT AND MOTION TO STRIKE** |
| v. | |
| NEW YORK LIFE INVESTMENT MANAGEMENT LLC, | **FRCP 12(b)(6), 12(f)** |
| Defendant. | Date:       July23, 2009
Time:       8:00 AM |
| | Courtroom 9, 19th Floor |
| | The Honorable William Alsup |

DEFENDANT'S MOTION TO DISMISS AND TO STRIKE

# TABLE OF CONTENTS

PAGE

1. INTRODUCTION ............................................................................................................. 2

2. STATEMENT OF FACTS ............................................................................................... 4

    A.   The Investment Advisory Agreement ................................................................. 4

    B.   Terra Blames NYL Investments for Equity Losses Incurred Due to Stock Market Downturn in Late 2008 ....................................................................... 5

    C.   Terra's Fraud Allegations ................................................................................ 6

    D.   The Quality Tilt.................................................................................................. 6

3. DISCUSSION .................................................................................................................... 9

    A.   Legal Standards in Ruling on a Rule 12(b)(6) Motion ................................... 9

    B.   The Intentional Misrepresentation Claim should be Dismissed ................... 10

        (1)   The Quality Tilt Allegations are Immaterial and Cannot be used to Establish that NYL Investments Made any False Statements ........................... 11

        (2)   General Opinions about the "Economy" are not Actionable............................... 12

        (3)   Terra Cannot Establish that it Justifiably Relied upon Opinions about the General State of the Economy or that this Reliance Caused Terra's Injury........ 12

        (4)   Terra has not Pled a Plausible Theory of Fraud .................................................. 13

    C.   The Concealment Claim should be Dismissed................................................ 13

        (1)   Terra has Not Adequately Alleged that NYL Investments Concealed Material Facts .................................................................................................. 14

        (2)   NYL Investments had no Duty to Disclose the Details of the Quality Tilt Program to Terra............................................................................................ 15

        (3)   Terra cannot Show that it would have Acted Differently Had it Known the True Facts ...................................................................................................... 16

    D.   The Claim for Negligent Misrepresentation should be Dismissed ............... 16

    E.   The Court should Strike all Quality Tilt Allegations from the Complaint ................... 18

4. CONCLUSION.................................................................................................................. 19

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

i
DEFENDANT'S MOTION TO DISMISS AND TO STRIKE

# TABLE OF AUTHORITIES

PAGE

**Cases**

*Bell Atlantic v. Twombly,*
   550 U.S. 554, 127 S. Ct. 1955 (2007). ................................................................. 10, 13

*Bishop v. Lucent Technologies Corp.,*
   520 F.3d 516 (6th Cir. 2008) .......................................................................... 10

*Branch v. Tunnell,*
   14 F.3d 449 (9th Cir. 1994) .......................................................................... 2, 10

*Fantasy, Inc. v. Fogerty,*
   984 F.2d 1524 (9th Cir. 1993) ....................................................................... 18

Federal Rule of Civil Procedure 12(b)(6) .............................................................. 9

*Fraker v. Sentry Life Ins. Co.,*
   19 Cal. App. 4th 276 (1993) ...................................................................... 10, 11

*Friedman v. Merck & Co.,*
   107 Cal. App. 4th 454 (2003) ........................................................................ 16

*Handley v. Handley,*
   179 Cal. App. 2d 742 (1960) ........................................................................ 14

*In re Glen-Fed, Inc. Sec. Litig.,*
   42 F.3d 1541 (9th Cir.1994) (en banc) ............................................................ 10

*Lovejoy v. AT & T Corp.,*
   119 Cal. App. 4th 151 (2004) ........................................................................ 14

*Mullis v. United States Bank Ct.,*
   828 F.2d 1385 (9th Cir. 1987) ...................................................................... 10

*National Ass'n for the Advancement of Psychoanalysis v. California Bd. of Psychology,*
   228 F.3d 1043 (9th Cir. 2000) .................................................................. 10, 13

*Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells,*
   86 Cal. App. 4th 303 (2000) ........................................................................ 12

*Parks Sch. of Business v. Symington,*
   51 F.3d 1480 (9th Cir. 1995) ......................................................................... 9

*Talbot v. Robert Matthews Distrib. Co.,*
   961 F.2d 654 (7th Cir. 1992) ....................................................................... 18

*Vess v. Ciba–Geigy Corp. USA,*
   317 F.3d 1097 (9th Cir. 2003) ...................................................................... 10

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

**Statutes**

Fed. R. Civ. P. 12(b)(6) ........................................................................................................ 1

Fed. R. Civ. P. 12(f) ................................................................................................ 1, 18, 19

Fed. R. Civ. P. 9(b) ............................................................................................... 10, 11, 12

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

iii

DEFENDANT'S MOTION TO DISMISS AND TO STRIKE

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on July 23, 2009, at 8:00 AM, or as soon thereafter as this matter may be heard by the Honorable William Alsup in Courtroom 9, 19th Floor, of the above-entitled court, defendant New York Life Investment Management LLC ("NYL Investments") will move the court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the first, second and third claims for relief in plaintiff's complaint. Defendant's motion is made on the grounds that the first, second, and third claims for relief in the complaint fail to state a claim upon which relief can be granted. Defendant further moves to dismiss the first, second and third claims for relief with prejudice on the ground that plaintiff cannot correct the defects in these claims by amendment and that granting leave to amend would be futile.

Defendant also will move pursuant to Federal Rule of Civil Procedure 12(f) to strike the following allegations in the complaint on the ground that the matters alleged are immaterial, impertinent or scandalous: ¶2, at 1:23-24; ¶ 4, at 2:11-16; ¶ 36, at 8:9-18; ¶ 43, at 10:11-20; ¶ 44, at 10:22-12:3; ¶ 45, at12:4-9; ¶ 53, at13:15-20; ¶ 54, at 13:21-26; ¶ 61, at 14:21-26; ¶ 69, 16:4-9; ¶ 70, at16:10-14; ¶ 78, at 17:14-19 (commencing with "when NYLIM" and ending with "concealing material facts"); ¶ 79, 17:27-18:3 (commencing with "NYLIM's"); ¶ 80, at 18:7-10 (commencing with "NYLIM failed"); ¶ 81, at18:12-15 (commencing with "intentionally withholding"; ¶90, at 19:20-23 (commencing with "advising Terra" and ending with "contrary to its own conclusions"); ¶97, at 20:21-23 (commencing with "by advising").

This motion is based on this Notice of Motion, the Memorandum of Law in Support of Defendants' Motion to Dismiss, Request for Judicial Notice, the Declaration of Travis R. Wall, all pleadings, records and papers on file in this action, and upon such oral and documentary evidence that may be presented at the time of the hearing on the motion.

Dated: May 22, 2009                      BARGER & WOLEN LLP


By:      //s// Travis R. Wall
J. RUSSELL STEDMAN
TRAVIS R. WALL
Attorneys for Defendant
New York Life Investment
Management LLC

1
DEFENDANT'S MOTION TO DISMISS AND TO STRIKE

# MEMORANDUM OF LAW

## 1.   INTRODUCTION

Plaintiff is attempting to elevate a run-of-the-mill professional negligence claim into a fraud claim based on knowingly false allegations.  Terra Insurance Company ("Terra") suffered a market loss due to the unprecedented stock market collapse in late 2008.  Defendant NYL Investments was Terra's investment advisor at the time.  Plaintiff alleges that NYL Investments not only gave bad advice, but deliberately misled Terra into maintaining its equity positions when NYL Investments actually believed that the equity markets were on the brink of collapse.

In support of this far-fetched theory, Terra relies entirely upon false allegations about a program referred to as the "quality tilt."  Terra describes the "quality tilt" as an internal decision by NYL Investments to "divest its own investments into safe U.S. Treasuries" at a time it was recommending that Terra do just the opposite.  These allegations are patently false, as conclusively established by the very publications Terra selectively quotes in its complaint:[1]

- *Allegation* – the "quality tilt" involved changes to NYL Investments' own accounts. *Fact* – the quality tilt was an investment program that NYL Investments' parent company, New York Life Insurance Company ("New York Life"), devised for its general account.

- *Allegation* – the quality tilt developed out of concerns about the soundness of the equity markets. *Fact* – the quality tilt was based on New York Life's belief that a narrow part of the fixed income markets (corporate bonds), did not adequately compensate investors for the risk of default; as a result, New York Life decided to "tilt" new fixed income investments slightly in favor of "higher quality" bonds and treasuries – hence the "quality tilt."

---

[1] The Court does not have to accept Terra's false allegations at face value.  In determining a motion to dismiss, a court need not accept as true allegations that are contradicted by documents to which the complaint refers.  *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds as recognized in 307 F.3d 1119, 1126 (9th Cir. 2002) (court properly considered deposition and affidavit that were mentioned in the amended complaint but not attached). The facts stated here are all contained in the very same report that Terra cites in its complaint.

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

- ***Allegation*** – NYL Investments made a decision to "divest it own investments into safe U.S. Treasury bonds" at a time it was recommending that Terra maintain (or increase) its equity position.

  ***Fact*** – the quality tilt did not involve the liquidation of any investments by NYL Investments or New York Life but just a reallocation of a small portion of New York Life's investable cash flow into higher grade fixed income investments; as a result, the percentage of U.S. Treasuries within New York Life's fixed income portfolio increased by 2% in proportion to the total fixed income assets, and there was a corresponding 2% decrease in lower grade corporate bonds.

- ***Allegation*** – There was an internal decision to suppress the quality tilt.

  ***Fact*** – New York Life described this investment program in publications that have been publicly available on New York Life's website since February 2008.

The limited adjustment that NYL Investments' parent company made to its fixed income portfolio had nothing to do with the advice that NYL Investments allegedly gave to Terra about its equity positions.  The two matters involve entirely different investments and markets.  Terra had copies of New York Life's publications about the quality tilt in preparing its complaint.  Terra, nevertheless, has misrepresented the nature and scope of the program in an attempt to elevate a garden variety market loss claim into one for fraud.  These patently false allegations do not provide a basis to impose liability on NYL Investments under any theory, let alone satisfy the heightened pleading standards for alleging fraud.

The fraud claims suffer from other fatal defects as well – Terra cannot establish the required elements of falsity, actual and justifiable reliance, or causation with respect to representations NYL Investments allegedly made about the "soundness" of the entire "U.S. economy."   These generalized statements of belief are too nebulous to support claims for fraud or concealment.

Terra cannot state a claim for fraud and cannot correct these defects by amendment because they are based entirely on the quality tilt—Terra cannot plead around or overcome the actual facts about the quality tilt as established by the reports it relies upon in the Complaint.  The first, second

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

3
DEFENDANT'S MOTION TO DISMISS AND TO STRIKE

and third, claims should be dismissed with prejudice and this case be allowed to proceed only on Terra's core claims of breach of contract, breach of fiduciary duty, negligence and the like.

The Court should strike all allegations regarding the quality tilt from other claims as well. Terra alleges that NYL Investments concealed the quality tilt – which had nothing to do with equities – as part of a deliberate scheme to cause Terra's equity positions to lose value. The complaint repeats and incorporates the quality tilt allegations in every claim for relief. These allegations are immaterial, impertinent and scandalous within the meaning of Federal Rule of Civil Procedure 12(f) and should be stricken in their entirety.

## 2. STATEMENT OF FACTS

### A. The Investment Advisory Agreement

Terra is a professional liability insurer providing casualty insurance to engineering firms. Complaint ¶ 1. In 1989, Terra entered into an investment advisory agreement with Towneley Capital Management, Inc. Complaint ¶ 23; Wall Decl., Ex. 1. In October 2000, Terra consented to the assignment of the investment advisory agreement to NYL Investments. Complaint ¶ 27.

NYL Investments acted as an investment advisor with respect to a fund that consisted of securities and cash held in a custodial account. *Id.* ¶ 28. The investment advisory agreement gave NYL Investments the authority to manage the account in accordance with a written set of investment guidelines attached as Exhibit A. *Id.*; Wall Decl., Ex. 1. Until Terra and NYL Investments agreed upon changes to the investment guidelines in writing, NYL Investments was "authorized to pursue the objectives set out in Exhibit A." Wall Decl., Ex. 1.

The relevant guidelines were approved in November 2005. Complaint ¶ 31. Those guidelines provided a stated investment objective of "Preservation of Capital in nominal terms and interest income." *Id.*; Wall Decl., Ex. 2 (Exhibit A). No more than 85% of the fund's assets could be invested in fixed income securities, and a maximum of 20% of the portfolio at cost could be invested in balanced and equity mutual funds. Complaint ¶¶ 32, 34; Wall Decl., Ex. 2 (Exhibit A). The guidelines further provided that the "objective seeks a balance between the capital risks associated with equity mutual funds/products and the risks of loss of purchasing power that may

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

4
DEFENDANT'S MOTION TO DISMISS AND TO STRIKE

result from holding fixed income securities during prolonged periods of price inflation." Wall Decl, Ex. 2 (Exhibit A).

**B.**   **Terra Blames NYL Investments for Equity Losses Incurred Due to Stock Market Downturn in Late 2008**

The public equity market suffered a severe downturn in late 2008.  From September 1 to December 31 2008, all major stock market indices turned in losses ranging from 24% to 30%. Request for Judicial Notice ("RJN") ¶¶ 4, 6, 8. Terra's portfolio was insulated from most of this volatility because, under its investment guidelines, the majority of its funds were in fixed income investments.  Complaint ¶¶ 32, 34; Wall Decl., Ex. 2 (Exhibit A).  Terra's equity positions were held entirely in a variety of mutual funds.  Complaint ¶¶ 3, 32 (investment advisory agreement allowed investments in balanced and equity mutual funds).  Terra, nonetheless, contends that NYL Investments is liable for failing to recommend, in late 2007 and early 2008, that Terra completely eliminate or significantly reduce its equity holdings.

According to the complaint, in June 2007 and at a November 2007 board meeting, Terra's President and CEO David Coduto and its Chief Financial Officer Hal Arditti expressed concerns to NYL Investments about the exposure posed by Terra's equity holdings, and proposed eliminating its equity holdings altogether.  Complaint ¶¶ 38-41.  Major stock market indices – including the Dow Jones Industrial Average, S&P 500 and Russell 3000 – reached their all time highs in October 2007.  RJN ¶¶ 4, 6, 8.  Terra, thus, alleges that it proposed exiting the equity market right around the time that it happened to reach its peak.  Terra asserts that, in response to its concerns, NYL Investments investment advisors claimed that the "U.S. economy" was "fundamentally sound" and recommended that Terra maintain its current equity position.  Complaint ¶ 41.

Terra's board of directors had another meeting in March 2008.  An investment advisor and economist from NYL Investments attended this meeting.  *Id.* ¶ 42.  Mr. Coduto allegedly reiterated his concerns about Terra's equity holdings and recommended that they be eliminated altogether or substantially reduced.  *Id.*  The NYL Investments economist gave a "detailed presentation of his 2008 economic forecast and market outlook, representing that it was NYL Investments' belief that 'the U.S. economy is fundamentally found' [sic]."  *Id.*  NYL Investments allegedly again

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

DEFENDANT'S MOTION TO DISMISS AND TO STRIKE

recommended that Terra maintain its equity position.  *Id.*  Terra contends that it continued to hold equities based on NYL Investments' recommendations and economic forecasts.  *Id.*

## C.  Terra's Fraud Allegations

The complaint alleges seven claims for relief against NYL Investments:  three fraud-based claims for relief – intentional misrepresentation, intentional concealment, and negligent misrepresentation – and separate claims for breach of fiduciary duty, breach of contract, breach of the implied covenant, and professional negligence.

The fraud claims all rest on allegations that NYL Investments' investment advisors not only were wrong about the economic forecast, but that they deliberately gave false opinions about the economy in an attempt to induce Terra to maintain equity investments that NYL Investments expected to fail.  The operative allegations in all three fraud claims are identical:

- That NYL Investments represented that "the economy was fundamentally sound" and "its conclusion that Terra should maintain if not increase its equity position in NYL Investments funds."  Complaint ¶¶ 53, 69; and

- That these representations were false (or that NYL Investments had concealed the true facts) in that NYL Investments internally had concluded "that the economy was not sound and that NYL Investments had already commenced efforts to divest its own investments to safe U.S. Treasury bonds."  Complaint ¶¶ 53, 61, 69.

## D.  The Quality Tilt

The "quality tilt" forms the lynchpin of Terra's fraud allegations.  Based on selective quotations from a "special report" that Terra claims it only "recently discovered," Terra implies that the quality tilt reflected NYL Investments' internal decision to eliminate or substantially reduce its own equity holdings due to concerns about the economy as a whole, at the same time that NYL Investments' investment advisors were recommending that Terra maintain its equity position.  Complaint ¶ 43. Terra's excerpts about the quality tilt are not merely taken out of context; they completely misrepresent the nature and scope of the program.

The "special report" on which Terra relies was contained in a document entitled "New York Life Annual Report 2007," which New York Life published.  Wall Decl., Ex. 3.  New York Life,

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

DEFENDANT'S MOTION TO DISMISS AND TO STRIKE

NYL Investments' parent company, is the largest mutual insurance company in the United States and has a $140 billion investment portfolio. *Id.* at 6, 18; RNJ ¶ 3.

The 2007 Annual Report begins with introductory remarks to New York Life's policyholders about the general financial state of the company. Wall Decl., Ex. 3 at 2. The introduction mentions a strategy that New York Life's investment team had devised to address certain trends in the markets toward "weaker underwriting standards for all forms of debt," i.e. corporate bond ratings. *Id.* The document then refers the reader to a "special report" beginning on page six in which Gary Wendlandt, New York Life's Chief Investment officer and Vice Chairman of its Board of Directors, discusses the investment program in more detail. *Id.* In later publications, New York Life began referring to this program as the "quality tilt." Complaint ¶ 44, at 11:3-5.

Terra's complaint alleges that the quality tilt reflected an internal, well-concealed decision by NYL Investments to "divest its own investments to safe U.S. Treasury bonds" due to concerns about the equity markets. Complaint ¶ 61. These representations are contradicted by other allegations in Terra's complaint and by the very publications on which Terra relies. The quality tilt had nothing to do with NYL Investments' own investments or the equity markets. It instead concerned a modest adjustment that New York Life made with respect to new fixed income investments due to concerns about corporate bond spreads:

- ***The quality tilt related to New York Life's general account, not NYL Investments' own investments***. The quality tilt was an investment program that New York Life devised for its general account. This is evident by the reports on which Terra relies and the allegations in the complaint itself. *See* Wall Decl., Exs. 3 & 4 (New York Life's 2007 Annual Report and 2007 Policyholder Report, which included the quality tilt discussion); Complaint ¶ 44 (discussing the quality tilt as part of New York Life's "long-term commitments to [its] policyholders").

- ***The quality tilt had nothing to do with equity investments or the equity markets in general***. The tilt did not even involve the equity markets. It developed out of New York Life's concerns about corporate bond markets, which are sometimes

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

called the "credit markets." *See* Wall Decl., Ex. 3 at 6-9. Mr. Wendlandt's special

report distinguishes between the "stock market" (equities) and the "credit markets"

(fixed income/corporate bonds). *Id.* at 6. In New York Life's view, investors were

overly optimistic about corporate bonds default rates and were "demanding too little

payment for the risks they were assuming." *Id.* at 7. In other words, the spread on

the corporate bonds was not commensurate with the risk of default. As a result,

New York Life decided to "divert a portion of the Company's investable cash flow

from [its] normal credit market investments into U.S. Treasurys." *Id.*; *see also*

Complaint ¶ 44 (noting that the tilt derived out of concerns about the "trend toward

weaker underwriting standards for all forms of debt").

- ***The quality tilt involved a slight adjustment in New York Life's fixed income
  portfolio rather than a drastic re-allocation of assets***. Terra gives the impression in
  its complaint that the "tilt" involved a sea change in investment strategy. That was
  not the case. Despite concerns about corporate bond ratings, New York Life decided
  merely to "tilt" its fixed income portfolio slightly in favor of higher "quality" fixed
  income investments – the "quality tilt." The end result was a two percent change in
  the percentage of U.S. Treasury bonds within New York Life's fixed income
  (not equity) portfolio. New York Life described the slight changes in a section of its
  Annual Report entitled "Fixed Income Assets":

> Realizing that the market was not pricing certain fixed income
> securities properly during 2007, we directed a portion of our
> investable cash into U.S. Treasurys and other highly rated public
> bonds. Consequently, the proportion of fixed income assets rated
> highest-quality ("NAIC 1") increased two percentage points to
> represent 69 percent of total fixed income assets. . . . As of the end of
> 2007, the Bank and Finance category represented 13 percent of total
> fixed income assets, a decline of two percentage points from a year

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

8
DEFENDANT'S MOTION TO DISMISS AND TO STRIKE

ago, while U.S. Treasurys and agencies increased by the same amount and represented seven percent.

*Id.* at 19.

- ***The quality tilt did not involve the divestment of any investments, but only a diversion of investable cash flow.*** Terra maintains that NYL Investments had decided to "divest" its investments into safe U.S. Treasury bonds at a time it was recommending that Terra maintain its equity portfolio. The tilt did not involve the liquidation of any investments but just the reallocation of a portion of New York Life's investable cash flow into higher grade fixed income assets. Wall Decl., Ex. 3 at 7, 19.

- ***The details of the quality tilt have been widely disseminated.*** There has never been an attempt to conceal the quality tilt, why it was undertaken or what it involved. The special report Terra claims it just "recently discovered" has been published on New York Life's website since early 2008. New York Life's 2007 Annual Report has been available to the public on New York Life's website since April 2008. Wall Decl. Ex. 3; RJN ¶ 1. The same quality tilt discussion is contained in another document entitled "New York Life Report to Policyholders 2007," which has been available on New York Life's website since February 2008. Wall Decl. Ex. 4, RJN ¶ 2.

### 3. DISCUSSION

A. <u>Legal Standards in Ruling on a Rule 12(b)(6) Motion</u>

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Business v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995). In determining whether a complaint properly states a claim, a court is only obligated to make reasonable inferences of facts alleged and does not have to accept

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

1   unreasonable inferences or unwarranted deductions of fact.  *National Ass'n for the Advancement of*

2   *Psychoanalysis v. California Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000).

3          A court need not accept as true allegations contradicted by judicially noticed facts.  *Mullis v.*

4   *United States Bank Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987) (judicially noticeable facts).  The court

5   also need not accept as true allegations contradicted by documents to which the complaint refers,

6   even if documents are not attached to the pleading.  *See Branch v. Tunnell,* 14 F.3d 449, 454 (9th

7   Cir. 1994), overruled on other grounds as recognized in 307 F.3d 1119, 1126 (9th Cir. 2002) (court

8   properly considered deposition and affidavit that were mentioned in the amended complaint but not

9   attached).

10          A plaintiff must meet its pleading burden for each element required for recovery.  *See*

11   *Bishop v. Lucent Technologies Corp.*, 520 F.3d 516, 519 (6th Cir. 2008).  A "formulaic recitation of

12   the elements of a cause of action will not do."  *Bell Atlantic v. Twombly*, 550 U.S. 554, 127 S. Ct.

13   1955, 1965 (2007).  The pleading must contain more than a statement of facts that merely creates a

14   "suspicion" of a legally cognizable right of action, but must allege facts that, if credited, rise above

15   the level of speculation.  *Id.*

16          Allegations of fraud must meet the heightened pleading standards of Federal Rule of Civil

17   Procedure 9(b).  This requires allegation of particular facts concerning the circumstances of the

18   fraud, including time, place, persons, statements made and an explanation of how or why such

19   statements are false or misleading.  *In re Glen-Fed, Inc. Sec. Litig.,* 42 F.3d 1541, 1547-48 n.7 (9th

20   Cir.1994) (en banc).  Fraud averments failing to meet the Rule 9(b) standard are disregarded, and

21   the remaining allegations should be evaluated to see if a valid claim has been stated.  *See Vess v.*

22   *Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1105 (9th Cir. 2003).

**B.      The Intentional Misrepresentation Claim should be Dismissed**

24          In order to state a claim for intentional misrepresentation, plaintiff must plead the following

25   elements: "(1) a false representation as to a material fact, (2) knowledge of the falsity, (3) intent to

26   defraud, (4) justifiable reliance, and (5) resulting damage."  *Fraker v. Sentry Life Ins. Co.*, 19 Cal.

27   App. 4th 276, 285 (1993).  The complaint alleges that NYL Investments falsely represented that the

28   "U.S. economy" was "fundamentally sound" and counseled that Terra should maintain its equity

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

10

DEFENDANT'S MOTION TO DISMISS AND TO STRIKE

position, and that Terra relied on these statements to its detriment.  Citing the quality tilt, Terra alleges that NYL Investments knew these representations were false because it internally had concluded that the U.S. market conditions were unstable and that it should divest its investments into safe U.S. Treasury bonds.  Complaint ¶¶ 53-54.  These allegations are insufficient as a matter of law to state a claim for intentional misrepresentation.

### (1)    The Quality Tilt Allegations are Immaterial and Cannot be used to Establish that NYL Investments Made any False Statements

To survive a motion to dismiss, a fraud plaintiff must allege sufficient facts to show that the defendants' opinion was both objectively and subjectively false.  *Fraker*, 19 Cal. App. 4th at 285 (plaintiff must allege that the statement was false and that defendant knew it was false).  Plaintiff does not identify any facts, let alone allege facts with particularity under Rule 9(b), establishing that NYL Investments' statements in November 2007 and March 2008 that the "economy was fundamentally sound" and that Terra should maintain its equity position were false at the time they were made.

Terra alleges NYL Investments knew its recommendation that Terra should maintain its equity position was false because, under the quality tilt, NYL Investments allegedly had decided to "divest its investments into U.S. Treasury bonds" on the belief that the economy as a whole was "not sound."  Yet, the quality tilt did not even involve the same subject or derive from assumptions about the equity markets.  Rather, it concerned a self-described "tilt" in the fixed income investments of NYL Investments' parent company due to concerns that certain corporate bonds had not been rated correctly.  There is no inherent conflict between the rationale behind the quality tilt in New York Life's fixed income portfolio and statements that the "U.S. economy is fundamentally sound" or that Terra should continue to invest in equities.

There is a fundamental disconnect between the quality tilt and the propriety of the advice that NYL Investments allegedly was giving to Terra about its equity portfolio.  The two issues simply have nothing to do with each other.  One concerns the decision whether to increase or decrease the permitted percentage of equity investments under guidelines in place since 2005.  The other concerns minor adjustments that NYL Investments' parent company made to the allocation of

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

11
DEFENDANT'S MOTION TO DISMISS AND TO STRIKE

investable cash flow already directed into its fixed income portfolio; the quality tilt did not involve the equity markets or any decision about the appropriate allocation between fixed income and equity investments.  This investment program and the rationale behind it cannot possibly be used to establish that NYL Investments' statements about the "soundness" of the "economy" and equity investments were both objectively and subjectively false at the time they were made.

### (2)    General Opinions about the "Economy" are not Actionable

A statement that the economy is "fundamentally sound" is not a material fact but an opinion. Opinions about the economy or statements about future economic performance typically cannot support a claim for intentional or negligent misrepresentation.  *See Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells*, 86 Cal. App. 4th 303, 103 (2000).

A statement about the health of the "economy" is too amorphous to support a claim for fraud.  There are multiple indicators about the "economy," such as the job markets, consumer spending, housing markets, commercial paper markets, corporate bond markets, stock markets, and futures.  The complaint does not allege exactly how NYL Investments' statements were false, describe the particular sector of the "economy" to which NYL Investments was referring, or identify any actual misstatements of fact NYL Investments made about any economic indicators. These allegations are insufficient to establish falsity, especially in the fraud context where circumstances surrounding the fraud must be alleged with particularity.  *See* Fed. R. Civ. P. 9(b).

### (3)    Terra Cannot Establish that it Justifiably Relied upon Opinions about the General State of the Economy or that this Reliance Caused Terra's Injury

Terra must allege adequate facts to show that it justifiably relied upon NYL Investments' supposed misrepresentation that the economy and equity markets were "sound."  There never will be unanimity of opinions among investment advisors and other professionals about a topic as nebulous as the "soundness" of the economy or the stock market.  By definition, all reasonable investors know that financial forecasts might be incorrect.  Hence, Terra could not have justifiably believed that NYL Investments' alleged statements were a guaranty of future market performance.

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

12
DEFENDANT'S MOTION TO DISMISS AND TO STRIKE

Terra also cannot allege facts to establish that it would have treated its equity positions any differently had it known of the quality tilt program.  Terra contends that if it had known the "true facts" it would not have "purchased or continued to hold equities."  Complaint ¶ 56.  Terra has not pled any, let alone sufficient facts, to establish how an opinion about risk spreads in the corporate bond segment of the fixed income market, and New York Life's decision to redirect 2% of its investible cash flow from corporate bonds into treasuries, would have caused Terra to liquidate its entire equity portfolio.  The two are entirely unrelated.

### (4)   Terra has not Pled a Plausible Theory of Fraud

To state a viable claim, a fraud plaintiff must provide a plausible theory of liability that rises above the level of pure speculation. *Bell Atlantic*, 550 U.S. 554, 127 S. Ct. 1955 at 1965.  The allegations in the complaint fail to meet even this basic standard.

The fraud claim simply does not make any sense under the circumstances of this case. Terra cannot establish that NYL Investments deliberately misrepresented the quality tilt in a scheme to cause Terra's investment account to lose money.  The quality tilt was unrelated to the investment advice NYL Investments provided regarding the percentage of Terra's fund invested in equities, and NYL Investments had no financial incentive to provide knowingly false investment advice.  Even on a motion to dismiss, the court is not obligated to make unwarranted deductions of fact and to accept every theory of liability no matter how implausible and unrealistic. *National Ass'n for the Advancement of Psychoanalysis,* 228 F.3d 1043 at 1049 (a court is only obligated to make reasonable inferences of facts alleged and does not have to accept unreasonable inferences).

The circumstances of the case do not fit the constructs for fraud, and Terra cannot correct the multiple defects in its intentional misrepresentation claim by amendment.  Accordingly, Terra's first claim for relief should be dismissed with prejudice.

### C.   The Concealment Claim should be Dismissed

To state a claim for fraudulent concealment, a plaintiff must plead the following five elements:

(1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

13

DEFENDANT'S MOTION TO DISMISS AND TO STRIKE

defendant must have intentionally concealed or suppressed the fact with the intent to

defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would

not have acted as he did if he had known of the concealed or suppressed fact, and (5)

as a result of the concealment or suppression of the fact, the plaintiff must have

sustained damage.

*Lovejoy v. AT & T Corp.,* 119 Cal. App. 4th 151, 157 (2004).  Plaintiff has not adequately alleged

any element.

> **(1)   Terra has Not Adequately Alleged that NYL Investments Concealed Material Facts**

Terra alleges that NYL Investments concealed "the fact that it had internally concluded that

the economy was not sound and that NYL Investments had already commenced efforts to divest its

own investments to safe U.S Treasury bonds."  Complaint ¶ 61.  The theory is that

NYL Investments concealed these facts in a scheme to defraud Terra into maintaining investments

NYL Investments expected to fail.

The pled facts demonstrate that nothing about the quality tilt was actually concealed from

Terra or the public.  The "special report" on which Terra relies has been posted on the internet since

the first quarter of 2008.  RJN ¶¶ 1-2; Wall Decl., Exs. 3-4.  It is difficult to conceive how

NYL Investments could actively suppress information that its parent, New York Life, was

broadcasting to the public and to all New York Life policyholders.

To be actionable, allegedly concealed information must also be "material."  A fact

represented or suppressed is "material" if it "relates to a matter of substance" and "directly affects

the purpose for which the deceived party acted."  *See Handley v. Handley*, 179 Cal. App. 2d 742,

746 (1960).  The allegedly suppressed information about the quality tilt was unrelated to any advice

NYL Investments was giving to Terra concerning its equity portfolio. Rather, the tilt concerned

slight adjustments that NYL Investments' parent company made to its fixed income portfolio.  The

complaint has not and cannot establish that this adjustment, or New York Life's conclusion about

the "risk/reward spread" in the corporate bond market, was material to any advice that

NYL Investments was giving to Terra about its equity portfolio.

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

14

DEFENDANT'S MOTION TO DISMISS AND TO STRIKE

The "special report" and other publications Terra cites not only were immaterial, but actually undercut Terra's theory of liability.  Terra premises its complaint on the assumption that NYL Investments should have recommended drastic changes in Terra's investment guidelines, in place since 2005, to severely reduce or even eliminate all equity investments due to potentially adverse market conditions.  This reactive investment strategy is inconsistent with the rationale behind the quality tilt and the philosophical approach to investing described in the "special report" on which Terra relies.  New York Life's descriptions of the quality tilt all emphasize the need to take a long-term view and to avoid making extreme portfolio changes in response to market conditions.  Complaint ¶ 44 ("We don't try to predict which way the market will move. . . . We invest for the long term, because we make long-term commitments to our policyholders."); Wall Decl, Ex. 3 at 9 ("We are not traders.  We look for investments that have a margin of safety and can stand the test of time. . . . We do not have shareholders who might want to maximize short-term profit, an objective that carries increased risk and greater potential for significant losses.")

The quality "tilt" after all was just that – a slight adjustment in the fixed income portfolio rather than the radical change in investment strategies that Terra contends NYL Investments should have recommended.

### (2)      NYL Investments had no Duty to Disclose the Details of the Quality Tilt Program to Terra

The complaint presumes that NYL Investments had a duty to disclose specific information about its parent company's investment strategies and views of the corporate bond markets.  Terra does not have the right to know how NYL Investments' parent company or other clients are investing their funds.  To the contrary, it would have violated NYL Investments' fiduciary duties to its clients to disclose any non-public details about New York Life's accounts and to recommend that all clients invest in lockstep with NYL Investments' parent company.  NYL Investments should maintain confidences and provide investment advice based on the particular investment objectives and risk tolerances of each individual client.

Even if NYL Investments could disclose non-public information about New York Life's handling of its fixed income portfolio, NYL Investments had no legal duty to do so.  The quality tilt

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

15
DEFENDANT'S MOTION TO DISMISS AND TO STRIKE

had nothing to do with the equity markets or the appropriate allocation between equity and fixed income investments.  NYL Investments did not have a legal duty to disclose information that was not material to the advice it allegedly was providing to Terra about the size of its equity portfolio.

### (3)   Terra cannot Show that it would have Acted Differently Had it Known the True Facts

Terra has not alleged sufficient facts to establish that it would have acted differently had it known the "true facts."  Terra has not alleged any facts to explain how knowledge about New York Life's beliefs about narrow spreads in the corporate bond market – and the slight adjustment that New York Life made to its fixed income portfolio as a result – would have caused Terra to liquidate its entire equity portfolio.  These two issues have no logical relationship to each other.

The facts of this case cannot be shoehorned into a fraudulent concealment claim.  Because the multiple defects in the concealment claim cannot be corrected by amendment, Terra's second claim for relief should be dismissed with prejudice.

### D.   The Claim for Negligent Misrepresentation should be Dismissed

The elements of a cause of action for negligent misrepresentation are: (1) the defendant must have made a representation as to a past or existing material fact; (2) the representation must have been untrue; (3) regardless of his actual belief the defendant must have made the representation without any reasonable ground for believing it to be true; (4) the representation must have been made with the intent to induce plaintiff to rely upon it; (5) the plaintiff must have been unaware of the falsity of the representation; he must have acted in reliance upon the truth of the representation and he must have been justified in relying upon the representation;  and (6) as a result of his reliance upon the truth of the representation, the plaintiff must have sustained damage. *Friedman v. Merck & Co.,* 107 Cal. App. 4th 454, 475-76 (2003).

The negligent misrepresentation claim suffers from the same defects as the intentional misrepresentation claim – no actionable statement of material fact or opinion; no facts pled with particularity establishing that the statement that "the economy is fundamentally sound" was false at the time it was made; no actual and justifiable reliance; and no causation.

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

The negligent misrepresentation claim suffers from another fatal defect.  In order to state a claim, a plaintiff must allege facts showing that NYL Investments had "no reasonable grounds" to believe in November 2007 and March 2008 that the "economy" was "fundamentally sound" or that investors should continue to invest in equities.  In other words, Terra must show that the *only* reasonable position for all investment advisors was to recommend that all clients liquidate their entire equity portfolios.  This is an absurd position.  Moreover, the equity markets had reached all-time highs in October 2007, and the stock market reflected a net gain in 2007.  RJN ¶¶ 4, 6, 8.  Under the circumstances, Terra cannot possibly show that no reasonable investment advisor could have concluded that the "economy" in general or the "equity markets" in particular were "sound."

Even if Terra were able to make this showing, which would be impossible, it would never be able to establish justifiable reliance.  If the "economy" was so "unsound" that no reasonable person could conclude that it was "sound," then Terra could not have justifiably relied upon statements to the contrary.

Terra cannot use the quality tilt allegations to establish that NYL Investments' alleged statements about the economy were false and that NYL Investments made the alleged statements without any reasonable grounds for believing them to be true.  The fact that NYL Investments' parent company, New York Life, had concluded in 2007 that the markets for certain fixed income assets were acting irrationally does not prove that the entire "economy" was in fact "unsound" and that it would have been unreasonable for any investment advisor to recommend that any client invest in equities.

A careful scrutiny of each of the elements of Terra's three fraud claims underscores the absurdity of its allegations.  Terra cannot state a valid misrepresentation or concealment claim based on general statements that the "economy" was "sound," and the quality tilt allegations are totally irrelevant to any issue in dispute about Terra's equity positions.  The fraud claims are illogical and fatally defective and should be dismissed with prejudice.

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

17
DEFENDANT'S MOTION TO DISMISS AND TO STRIKE

**E.**     **The Court should Strike all Quality Tilt Allegations from the Complaint**

The quality tilt based allegations not only are immaterial to the three fraud claims, but should be stricken from the complaint altogether.  Allegations regarding the quality tilt permeate the complaint and are repeated in all claims for relief except negligence.  In its breach of fiduciary duty claim, for example, Terra alleges that NYL Investments falsely represented that it believed, "based on its research and analysis, that the U.S. economy was fundamentally sound," yet deliberately recommended that Terra maintain its equity position.  Complaint ¶ 79.  Terra's quality tilt allegations are baseless and illogical, whether pled in the fraud claims or in any other claim for relief.  Because Terra derives this theory of liability from demonstrably false and distorted allegations about the quality tilt, the defects in these allegations cannot be cured by amendment.

Rule 12(f) provides that a court "may order stricken from any pleading . . . any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "Immaterial" matters are those that have no essential or important relationship to the claim for relief; "impertinent" matters are statements that do not pertain and are not necessary to the issues in question.  *Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th Cir. 1993), overruled on other grounds, 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994).  Scandalous allegations may be stricken if the matter alleged "bears no possible relation to the controversy or may cause the objecting party prejudice." *Talbot v. Robert Matthews Distrib. Co*., 961 F.2d 654, 664 (7th Cir. 1992) (allegations that milk distributor intentionally caused outbreak of salmonella in order to consummate fraudulent scheme against route drivers held subject to motion to strike as "scandalous").

In *Fogerty*, the complaint included extensive allegations regarding a prior tax shelter plan and other dealings with defendant's predecessor.  Plaintiff contended that the allegations were relevant to the interactions between the parties, even if they were not independently actionable.  The district court struck the allegations on the grounds that they were irrelevant and would unnecessarily complicate the litigation and cause undue delay.  The Ninth Circuit upheld the order, holding that the trial judge "could properly grant the motion to strike for the purpose of streamlining the ultimate resolution of the action and focusing the jury's attention on the real issues in the case." *Forgerty,* 984 F.2d at 1527.

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

18

DEFENDANT'S MOTION TO DISMISS AND TO STRIKE

The quality tilt allegations are not germane to any issue in dispute and should be stricken in their entirety.  Terra has publicly accused NYL Investments of serious intentional wrongdoing.  When drafting its complaint, Terra had complete copies of the "special reports" and was well aware that the quality tilt was limited in scope and had nothing to do with equities or its claimed losses on its equity investments.  Terra has deliberately misrepresented and distorted the nature of the program in an effort to pressure and embarrass NYL Investments.

Terra plainly asserted the irrelevant and scandalous quality tilt allegations to gain a strategic advantage in this litigation.  Terra undoubtedly intends to use them to try to justify intrusive discovery into the investment accounts of NYL Investments' parent company and perhaps to seek the deposition of senior New York Life officers.  The mere fact that Terra is in a dispute with NYL Investments does not give it license to delve into the investment details of NYL Investments' affiliates at the highest levels, no matter how false the allegations and how remotely related the investments are to the particular issues in dispute.

Plaintiff's quality tilt allegations are smoke and mirrors designed to obfuscate the weakness of plaintiff's market loss claim and to find ways to burden NYL Investments and its parent company with intrusive and unnecessary discovery.  These allegations are "immaterial," "impertinent" and "scandalous" within the meaning of Federal Rule of Civil Procedure 12(f) and should be stricken from the complaint.

### 4.  CONCLUSION

NYL Investments respectfully requests that the Court dismiss plaintiff's first, second and third claims for relief with prejudice and strike all averments concerning the "quality tilt."

Dated:  May 22, 2009                                BARGER & WOLEN LLP


By:        //s// Travis R. Wall
           J. RUSSELL STEDMAN
           TRAVIS R. WALL
           Attorneys for Defendant
           New York Life Investment
           Management LLC

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

19
DEFENDANT'S MOTION TO DISMISS AND TO STRIKE