FRANK M. PITRE (100077)
fpitre@cpmlegal.com
MARK C. MOLUMPHY (168009)
mmolumphy@cpmlegal.com
NIKI B. OKCU (229345)
nokcu@cpmlegal.com
**COTCHETT, PITRE & McCARTHY**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Fax: (650) 697-0577

*Attorneys for Plaintiff Terra Insurance Company*
*(A Risk Retention Group)*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| **TERRA INSURANCE COMPANY (A Risk Retention Group),** <br><br> **Plaintiff,** <br><br> **vs.** <br><br> **NEW YORK LIFE INVESTMENT MANAGEMENT LLC, and Does 1-10,** <br><br> **Defendants.** | Civil Action No. CV-09-1609-WHA <br><br> **MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE** <br><br> Date:  July 30, 2009 <br> Time:  8:00 a.m. <br> Courtroom 9, 19th Floor <br> Hon. William Alsup |

LAW OFFICES
COTCHETT,
PITRE
& McCARTHY

# TABLE OF CONTENTS

**Page**

I.  **INTRODUCTION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. **STATEMENT OF THE FACTS**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.  Terra Hires NYLIM As Its Investment Advisor. . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.  NYLIM's Duties As Investment  Advisor. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    C.  Under The Advisory Agreement, NYLIM Understood Terra's Investment
        Goals As An Insurance Company Were To Protect Capital And Limit Risk. . . . . 3

    D.  NYLIM Directs Terra To Increase Its Equity Holdings.. . . . . . . . . . . . . . . . . . . . 4

    E.  NYLIM Conceals Critical Information Relating To Terra's Investment
        Decisions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III. **ISSUES PRESENTED**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

IV. **ARGUMENT**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    A.  Legal Standard for 12(b)(6) Motion **to Dismiss**. . . . . . . . . . . . . . . . . . . . . . . 8

    B.  Terra Has Sufficiently Pled Intentional Misrepresentation. . . . . . . . . . . . . . . . 8

        1.  The Complaint Alleges Actionable Misrepresentations. . . . . . . . . . . . . . 9

        2.  NYLIM's Misrepresentations Were Material. . . . . . . . . . . . . . . . . . . . 12

        3.  Terra Justifiably Relied on NYLIM's Misrepresentations.. . . . . . . . . . . 13

    C.  Terra Has Sufficiently Pled Fraudulent Concealment. . . . . . . . . . . . . . . . . . . . 15

        1.  NYLIM Concealed Material Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        2.  NYLIM Had a Duty to Speak. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        3.  Terra Has Alleged Reliance For Purposes of Concealment. . . . . . . . . . . 17

    D.  NYLIM Is Liable for Negligent Misrepresentation. . . . . . . . . . . . . . . . . . . . . . 18

        1.  NYLIM Made its Misrepresentations "Without Reasonable
            Grounds" for Believing Them to Be True. . . . . . . . . . . . . . . . . . . . . . . 18

        2.  Terra Justifiably Relied on NYLIM's Misrepresentations.. . . . . . . . . . . 19

    E.  The Court Should Deny NYLIM's Motion to Strike. . . . . . . . . . . . . . . . . . . . 20

IV. **CONCLUSION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

LAW OFFICES
COTCHETT,
PITRE
& MCCARTHY

**MPA IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE**
**CV-0901609-WHA**                                                                              i

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page**

3

### <u>CASES</u>

4

*Alliance Mortgage Co. v. Rothwell,*
5
    10 Cal.4th 1226 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

6
*Bily v. Arthur Young & Co.,*
    3 Cal. 4th 370 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

7
*Blankenheim v. E.F. Hutton, Co. ,*
8
    217 Cal.App.3d 1463 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

9
*Chang v. Chen,*
    80 F.3d 1293 (9th Cir. 1996).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

10
*Charpentier v. Los Angeles Rams,*
11
    75 Cal.App.4th 301 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

12
*Colapriaco v. Sun Microsystems, Inc.,*
    758 F. Supp. 1335 (N.D. Cal. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

13
*Conley v. Gibson,*
14
    355 U.S. 41(1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

15
*De La Cruz v. Tormey,*
    582 F.3d 45 (9th Cir. 1978).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

16
*Engalla v. Permanente Medical Group, Inc.,*
17
    15 Cal.4th 951 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 14

18
*Fogerty v. Fantasy, Inc.*
    510 U.S. 517 (1994).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

19
*Fox v. Pollack,*
20
    181 Cal.App.3d 954 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

21
*Goodman v. Kennedy,*
    18 Cal.3d 335 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

22
*In re 2 TheMart.com Securities Litigation,*
23
    114 F. Supp. 2d 955 (C.D. Cal. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

24
*LiMandri v. Judkins,*
    52 Cal.App.4th 326 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

25
*Marketing West, Inc. v. Sanyo Fisher (USA) Corp.,*
26
    6 Cal.App.4th 603 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17

27
*Mercer v. Elliott,*
    208 Cal.App.2d 275 (1962). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

28

LAW OFFICES
COTCHETT,
PITRE
& McCARTHY

*Noll v. Carlson*,
  809 F.2d 1446 (9th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Nursing Home Pension Fund v. Oracle Corp.*,
  380 F.3d 1226 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Quality Wash Group V, Ltd. v. Hallak*,
  50 Cal.App.4th 1687 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Sangster v. Paetkau*,
  68 Cal.App.4th 151 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*SEC v. TLC Invs. & Trade Co.*,
  179 F. Supp. 2d 1149 (C.D. Cal. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Shurkin v. Golden State Vinters Inc.*,
  471 F.Supp.2d. 998, 2006
  U.S. Dist. LEXIS 94900(N.D. Cal. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Shwarz v. United States*,
  234 F.3d 428 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Trinity Hotel Investors, LLC v. Sunstone OP Props, LLC*,
  2009 U.S. Dist. LEXIS 13692 (C.D. Cal. Feb. 5, 2009). . . . . . . . . . . . . . . . . 12

*United States v. Williams*,
  441 F.3d 716 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Williamson v. Gen. Dynamics Corp.*,
  208 F.3d 1144 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## STATUTES AND RULES

California Civil Code

  § 1710. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Federal Rule of Civil Procedure

  12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

  12(f). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## OTHER AUTHORITIES

Cal. Prac. Guide Fed. Civ. Proc. Before Trial
  (The Rutter Group 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

LAW OFFICES
COTCHETT,
PITRE
& McCARTHY

**MPA IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE**
**CV-0901609-WHA**                                                                                       iii

## I.    INTRODUCTION

Stripped of its invective – including the accusation that plaintiff Terra Insurance Company ("Terra"), one of America's oldest professional liability insurers, made "knowingly false allegations" in its Complaint – the motion to dismiss filed by Defendant New York Life Investment Management LLC ("NYLIM") boils down to a fact-intensive <u>materiality</u> argument.

More specifically, NYLIM asserts that all fraud claims should be dismissed at this pleading stage because, <u>as a matter of law</u>, it could not have been <u>material</u> for Terra to know about NYLIM's internal decision to reallocate its own funds into safe U.S. Treasuries due to its concern that financial markets were acting irrationally, notwithstanding the undisputed factual allegations in the Complaint that:

(a)    NYLIM was Terra's trusted <u>financial advisor</u>, paid thousands of dollars to provide financial advice reflecting its evaluation of the economy and suitable investments, with a <u>fiduciary duty</u> under California law to disclose all material facts,

(b)    Terra specifically and repeatedly expressed to NYLIM its strong desire to shift funds into U.S. Treasuries – i.e. the very securities that NYLIM moved into – due to its concern about the credit market – i.e., the very concern cited by NYLIM motivating its own decision; and

(c)    NYLIM specifically told Terra not to invest in U.S. Treasuries and, instead, advised Terra to increase its equity investments (i.e., NYLIM's mutual funds) based on NYLIM's stated (and allegedly false) belief that, based on empirical studies and market analysis, the economy was fundamentally sound.

Viewed in this proper light, the motion to dismiss is fundamentally flawed and should be denied.

<u>First</u>, under established California law applicable in this diversity case, the materiality of an undisclosed fact is an inherently <u>factual</u> issue, hotly disputed between the parties, and inappropriate for resolution on a motion to dismiss.  Indeed, the parties not only dispute whether NYLIM's decision to invest in U.S. Treasuries due to market concerns would have been material to Terra, they apparently dispute the scope of NYLIM's conduct itself.

<u>Second</u>, even if one engaged in such a fact-intensive inquiry at this pleading stage, there can be little doubt that NYLIM's conduct would have been material to Terra, based on the materiality standard expressed in California law.  Indeed, NYLIM's self-serving suggestion that its decision to purchase U.S. Treasuries based on concerns about the "credit crisis" would have

been immaterial to Terra because the credit crisis and fixed-income investments "had nothing to do with the equity markets" borders on absurd.  Plainly, many of the same economic factors underlying the credit crisis were relevant to both equity and fixed income investments, as the relevant economic indexes show.  At a minimum, one can not conclude, as a matter of law, that NYLIM's decision to invest in U.S. Treasuries "had nothing to do" with Terra's decision to invest in the exact same securities.

For these reasons, Terra respectfully requests the Court to deny NYLIM's motion to dismiss and motion to strike.

## II.   STATEMENT OF THE FACTS

### A.   Terra Hires NYLIM As Its Investment Advisor

Plaintiff Terra is one of the oldest and most established professional liability insurers in the United States, offering coverage to engineering firms.  Complaint, ¶1.  Structured as a "risk retention group" under Federal risk retention statutes, Terra is owned by its policyholders, principally engineering firms in the geosciences and civil engineering disciplines.  *Id.*

As an insurer, Terra policyholders pay premiums which are invested and then either used to pay claims, or returned to policyholders through appreciation of their common stock.  *Id.*, ¶2.  Thus, Terra's Board uses the expert assistance of professional financial advisors to help manage its funds.  *Id.*

In 1989, Terra retained a small firm, Towneley Capital Management, to serve as its investment advisors.  *Id.*, ¶23.  However, in 2000, Townely was acquired by NYLIM.  *Id.*, ¶24.  NYLIM asked Terra to hire it to serve as its new advisors, touting itself as one of the largest and most successful firms in the country, with unique expertise based on its experience and proprietary research and analytical methods.  *Id.*, ¶25-26.  Indeed, NYLIM heavily promoted its ability to give investor clients a highly successful team approach towards investment management, based on its bottom-up, value-driven stock selection process and in-depth portfolio analysis.  NYLIM claimed that its global research capabilities differentiated it from competitors

LAW OFFICES
COTCHETT,
PITRE
& McCARTHY

**MPA IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE**
**CV-0901609-WHA**                                                                                           2

and was a key factor in achieving results for its clients.  *Id.*  On that basis, Terra agreed to hire NYLIM and paid NYLIM substantial advisory fees.  *Id.*, ¶2, 27.

### B.    NYLIM's Duties As Investment  Advisor

In agreeing to serve as Terra's investment advisor, NYLIM was subject to professional standards of care based on applicable state and federal laws, industry standards, and professional codes of ethics, including:

- the duty of loyalty to act in the best interests of its client at all times, and conversely, to not act in its own interest if it conflicted with the client;

- the duty to act with due care and in good faith towards its client, including to act prudently and apply its education, skills, and expertise to the financial planning or investment issue at hand;

- the duty to act honestly, given the advisor's position of trust and confidence; and perhaps, most importantly,

- the duty, repeatedly acknowledged in California as a fiduciary duty, to provide full and fair disclosure of all material facts.  Indeed, because disclosure of material facts is essential when acting in the client's best interest, an investment advisor must provide accurate and relevant information.

Id., ¶¶15-22.

### C.    Under The Advisory Agreement, NYLIM Understood Terra's Investment Goals As An Insurance Company Were To Protect Capital And Limit Risk

Pursuant to the Agreement, NYLIM acted as Terra's investment advisor over funds held in its custodial account, which consisted of securities and cash, with authority to manage the funds and to make such purchases and sales of securities as NYLIM deemed appropriate and consistent with Terra's stated investment objectives.  *Id.*, ¶28.

As clearly stated in the Agreement, Terra's Investment Objective was the "Preservation of capital in nominal terms and interest income" – consistent with its charter and obligations as an insurance company.  *Id.*, ¶31.  Thus, the Agreement set certain maximum limits on various types of investments, including investments in equity-based mutual funds.  *Id.*, ¶32-34.  Other

LAW OFFICES
COTCHETT,
PITRE
& McCARTHY

**MPA IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE
CV-0901609-WHA**                                                                                          3

1   permitted investments included corporate, municipal, U.S. government securities, U.S.

2   Treasuries, money-market funds, and U.S. government agency fixed-interest bonds. *Id.*

3   The Agreement provided that NYLIM would receive quarterly payments of fees based on

4   the average fair market value of the fund. *Id.*, ¶35.

5   **D.   NYLIM Directs Terra To Increase Its Equity Holdings**

6   Unfortunately, in 2007, in disregard to fiduciary duties owed to Terra, NYLIM

7   misrepresented its concerns about deteriorating market conditions. More specifically, during the

8   <u>same</u> time period that NYLIM was diverting its own assets into U.S. Treasuries based on its

9   belief that markets were acting irrationally, NYLIM advised Terra <u>against</u> investing in the <u>same</u>

10  U.S. Treasuries even after Terra raised the <u>same</u> concerns. Instead, in order to maximize its

11  commissions, NYLIM advised Terra to continue to <u>maintain and increase its equity position</u> in

12  NYLIM mutual funds based on its purported belief that the economy was "fundamentally

13  sound." *Id.*, ¶36.

14  As late as 2005, Terra's primary equity investments were in well performing third party

15  mutual funds, unrelated to NYLIM. *Id.*, ¶37. In August 2005, NYLIM advised Terra to sell its

16  interest in these mutual funds and to invest instead in NYLIM mutual funds. Terra followed

17  NYLIM's advice. Ultimately, the only mutual funds held by Terra were owned and managed by

18  NYLIM. *Id.*

19  In June 2007, Terra officers, including President and CEO David Coduto and Chief

20  Financial Officer Hal S. Arditti, visited with NYLIM and met with Joan Sabella and Veda Pai-

21  Panadiker to discuss Terra's investment portfolio. *Id.*, ¶38. Coduto and Arditti expressed

22  Terra's increasing concerns about its exposure from equity holdings given deteriorating

23  conditions in the U.S. economy. Sabella and Pai-Panadiker dismissed the concerns and told

24  Terra to maintain its holdings. *Id.*

25  In November 2007, approximately one week prior to a scheduled Terra board meeting to

26  be attended by NYLIM representatives, Terra sent NYLIM written discussion points on Terra's

27  concerns about the economy and proposed eliminating or materially reducing Terra's equity

28

LAW OFFICES
COTCHETT,
PITRE
& MCCARTHY

1   holdings.  *Id.*, ¶40.  Later, at the November 2007 board meeting, Coduto again asked NYLIM

2   representatives Sabella and Pai-Panadiker whether Terra should eliminate or materially reduce its

3   equity portfolio given current economic conditions and then transfer the balance into cash or U.S.

4   Treasuries until the economy stabilized.  *Id.*, ¶41. Sabella, rejected the move and represented that

5   NYLIM market strategists had internally concluded that the U.S. economy is "fundamentally

6   sound."  According to Sabella, NYLIM's recommended that Terra maintain its current equity

7   position and to purchase additional NYLIM mutual funds – i.e., to increase its equity holdings.

8   Again, Terra followed the advice of its professional investment advisor.  *Id.*

9         In March 2008, Terra held another Board meeting.  Two NYLIM representatives attended

10  the meeting, Sabella and William Knapp.  *Id.*, ¶42. Knapp was described as an economist, with a

11  Ph.D. in Economics, the managing director of NYLIM's Investor's Group, and the firmwide

12  Investment Strategist.  Coduto, Terra's President, reiterated his concerns about Terra's equity

13  holdings and his recommendation to eliminate or materially reduce Terra's equity stake.  *Id*.  In

14  response, Knapp gave the Board a detailed presentation of his 2008 economic forecast and

15  market outlook, representing that it was NYLIM's belief that "the U.S. economy is

16  fundamentally found" and that "everyone should buy houses."  *Id*.  NYLIM also presented

17  written reports supporting NYLIM's purported market outlook, prepared by Knapp and Tony

18  Elavia, the Chief Investment Officer and Senior Managing Director of NYLIM's Equity

19  Investor's Group.  Based on these oral and written reports, NYLIM directed Terra to maintain its

20  current equity position.  Terra did so.  *Id*.

21         **E.    NYLIM Conceals Critical Information Relating To Terra's Investment**
               **Decisions**

22

23         However, unbeknownst to Terra, NYLIM had internally decided to take the exact

24  opposite approach with respect to its own holdings.  *Id.*, ¶43.  According to a NYLIM report,

25  Gary Wendlant, Vice Chairman of the Board and Chief Investment Officer of NYLIM, admitted

26  that:

27         <u>Based on our belief that the markets were acting irrationally, in February 2007,
           New York Life management approved a proposal to divert a portion of the
           Company's investable cash flow from our normal credit market investments into</u>

28



LAW OFFICES
COTCHETT,
PITRE
& McCARTHY

**MPA IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE**
**CV-0901609-WHA**                                                                        5

<u>U.S. Treasurys</u>.  U.S. Treasurys are not only entirely safe, but offer excellent liquidity, positioning us to take advantage of attractive investment opportunities when risk/reward relationships improve.

(Emphasis added).  *Id.*

A similar posting from NYLIM's website, since removed, also stated that:

New York Life's investment management team has long ascribed to a proven, conservative discipline in managing our more than $150-billion portfolio. . . .<u>It is that insistence on getting paid for taking risk that drove a strategic reallocation of some of our investments in February 2007 — a move we refer to as a "quality tilt."</u>  More than a year before the current credit crisis emerged, New York Life's investment management team, led by Vice Chairman and Chief Investment Officer Gary Wendlandt, began closely monitoring what they believed to be an unfavorable market environment. Observing a trend toward weaker underwriting standards for all forms of debt, as well as investment returns that were not commensurate with the risk, they recommended a strategy that called for temporarily allocating a larger portion of the company's investments into safe U.S. Treasury bonds. . . .

Such diversification requires significant discipline.  "New York Life's strong operating results over the past decade have meant a continual inflow of money to be invested.  Even at the peak of the market, we would not take a significant stake in any single name, no matter how attractive it appeared, because we know there's always a risk we could get it wrong," says Gary Wendlandt.  "We're confidently humble in our investing approach."

**What Lies Ahead**

As the events of the past weeks have made clear, we are in the middle of a fundamental reshaping of the financial sector — a transformation more dramatic than anything seen in generations.  But amid this storm, it's business as usual at New York Life.  In good times and in bad, our core values of financial strength, humanity and integrity continue to stand us — and, more important, our policyholders — in very good stead.  Our mutuality allows us to keep a steady hand at the wheel, maintaining a long-term view and avoiding the temptations of chasing short-term gains.  And our commitment to maintaining the industry's #1 team of well-trained professional agents means you have a valued partner to help guide you through these uncharted waters.

(Emphasis added). *Id.*, ¶44.

Inexplicably, despite the fact that Terra had raised the <u>same</u> concerns, during the <u>same</u> time period, and proposed a shift to the <u>same</u> investments, NYLIM and its senior investment officers never advised Terra about its conclusions about the economy or the February 2007 "quality tilt" and internal shift of a portion of its own investments into safe U.S. Treasury bonds, even though such a quality tilt was later proposed by Terra in its meetings with NYLIM's

LAW OFFICES
COTCHETT,
PITRE
& McCARTHY

**MPA IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE
CV-0901609-WHA**                                                                          6

1  representatives.  *Id.*, ¶45.  Rather, NYLIM advised Terra to maintain and increase its equity

2  holdings given its supposed positive outlook on the economy.  *Id.*

3         By September 2008, the value of Terra's equity holdings in the NYLIM owned and

4  managed mutual funds had greatly deteriorated.  *Id.*, ¶46.  Terra asked for NYLIM's guidance for

5  preserving what remained of its assets.  NYLIM merely responded that it would do whatever

6  Terra wanted it to do.  *Id.*  In a subsequent call, NYLIM's representative said, "At any given

7  time, we give it our best guess."  *Id.*, ¶47.

8         On October 20, 2008, Terra finally sent a letter and reiterated its request for help.

9  NYLIM didn't respond, at all.  *Id.*, ¶48.

10        A month later, on November 10, 2008, Terra contacted NYLIM and directed it to

11 liquidate its mutual fund holdings immediately with the proceeds to be maintained as cash,

12 resulting in losses of about $3 million.  *Id.*, ¶49-51.  The next day, NYLIM sent Terra a letter and

13 gave notice of NYLIM's decision to terminate the Agreement.  *Id.*

14 **III.    ISSUES PRESENTED**[1/]

15        1.     Whether it is appropriate to dismiss Terra's fraud-based claims based on the

16               inherently factual argument that, as a matter of law, NYLIM's decision to divert

17               funds into safe U.S. Treasuries due to the <u>same</u> concerns raised by Terra, during

18               the <u>same</u> time period, would nonetheless have been <u>immaterial</u> to Terra's own

19               investment decision making process?

20        2.     Whether the Court should strike all "quality tilt" allegations from the Complaint

21               based on NYLIM's factual assertion, disputed by Terra, that the quality tilt

22               program was not material to the advice it provided to Terra nor related in any way

23               to its investments?

24

25

26

27 ---

[1]     While NYLIM failed to state the issues presented in its motion to dismiss as required by

28 local rules, Terra presents its interpretation of the issues that defendant intended to present.

LAW OFFICES
COTCHETT,
PITRE
& MCCARTHY

**MPA IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE
CV-0901609-WHA**                                                                                    7

## IV.   ARGUMENT

### A.   Legal Standard for 12(b)(6) Motion to Dismiss

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) only when a plaintiff's allegations fail "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  It is well-settled that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [the plaintiff's] claim which would entitle [the plaintiff] to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (footnote omitted); *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1149 (9th Cir. 2000); *De La Cruz v. Tormey*, 582 F.3d 45, 48 (9th Cir. 1978).  In considering a motion to dismiss, the court must accept as true all factual allegations in the complaint and must draw all reasonable inferences from those allegations, construing the complaint in the light most favorable to the plaintiff.  *Nursing Home Pension Fund v. Oracle Corp.*, 380 F.3d 1226, 1229 (9th Cir. 2004); *Shurkin v. Golden State Vinters Inc.*, 471 F.Supp.2d. 998, 2006 U.S. Dist. LEXIS 94900, *29 (N.D. Cal. 2006), *citing Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Dismissal without leave to amend is appropriate only when the court is satisfied that the deficiencies of the complaint could not possibly be cured by amendment.  *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996); *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).

### B.   Terra Has Sufficiently Pled Intentional Misrepresentation

Under California law, which Defendant concedes applies in this case, the tort of intentional misrepresentation based fraud or deceit requires proof of the following elements: "'(a) misrepresentation (false representation, concealment or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.'"  *Engalla v. Permanente Medical Group, Inc.*, 15 Cal.4th 951, 974 (1997).  In its motion to dismiss, Defendant contests only two of these elements – misrepresentation (on the basis that the misrepresentations were not material) and reliance.  Defendant's Motion to Dismiss ("MTD") at 10-13.

LAW OFFICES
COTCHETT,
PITRE
& McCARTHY

**MPA IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE**
**CV-0901609-WHA**                                                                         8

1

_____**1.**          **The Complaint Alleges Actionable Misrepresentations**

2

California Civil Code Section 1710 sets forth several kinds of misrepresentations or

3

deceits including, *inter alia*, (1) "The suggestion, as a fact, of that which is not true, by one who

4

does not believe it to be true," and (2) "The assertion, as a fact, of that which is not true, by one

5

who has no reasonable ground for believing it to be true." Here, Defendant made untrue

6

statements which it did not believe to be true and had no reasonable ground for believing to be

7

true.

8

In an effort to negate this element, Defendant first argues that it did not make a statement,

9

but merely an expression of opinion or belief. But Defendant's argument misses the mark. To

10

begin with, where, as here, a party possesses superior knowledge and makes a statement of

11

professional opinion, such statements are treated as a positive assertion of fact. Further, while it

12

is one thing to make a statement, which is not true, believing it to be true, it is quite another to

13

make a statement, which is not true while not even believing it to be true or having any

14

reasonable grounds for so believing. Here, NYLIM is not alleged to have simply mistakenly

15

believed that the markets were stable and that Terra should maintain its money in them, but

16

rather misleading made these representations while, in fact, believing just the opposite and

17

diverting its own money into more secure investments.

18

**NYLIM's Professional Opinions Constitute Actionable Representations**

19

Contrary to NYLIM's contention, its opinions were not merely expressions of general

20

belief, but actions misrepresentations:

21

22

23

24

> "Under certain circumstances, expressions of professional opinion are treated as
> representations of fact. When a statement, although in the form of an opinion, is
> not a casual expression of belief but a deliberate affirmation of the matters stated,
> it may be regarded as a positive assertion of fact. Moreover, when a party
> possesses or holds itself out as possessing superior knowledge or special
> information or expertise regarding the subject matter and a plaintiff is so situated
> that it may reasonably rely on such supposed knowledge, information or expertise,
> the defendant's representation may be treated as one of material fact."

25

26

*Mercer v. Elliott*, 208 Cal.App.2d 275, 280 (1962), citing *Bily v. Arthur Young & Co.*, 3 Cal. 4th

27

370, 408 (1992).

28

LAW OFFICES
COTCHETT,
PITRE
& McCARTHY

When NYLIM representatives said that the economy was "fundamentally sound" at the November 2007 and March 2008 Terra board meetings, it was not a casual expression of belief, but a direct response to Terra's concerns regarding the health of the economy. *See* Compl. at ¶ 41, 42. NYLIM representatives were hired by Terra to serve as investment advisers, holding themselves out as possessing expertise regarding the economy and the financial markets. As professional investment advisers, NYLIM were believed by their clients to possess superior knowledge and expertise regarding financial matters. As such it was reasonable for Terra to rely on the expertise and knowledge of NYLIM regarding the economy. Thus NYLIM's representations regarding the economy can be treated as ones of material fact. *Bily*, 3 Cal. 4th at 408.

Further, Defendant's argument erroneously focuses on only one of its misrepresentations while ignoring the others and the context in which the misrepresentation was made. Defendant did not merely state that "the economy was 'fundamentally sound'" out-of-the-blue in a five word sound-bite. Rather, Defendant made the misrepresentation as a financial adviser to a client who had specifically inquired whether it should convert its equity holdings to cash, cash equivalents or U.S. Treasury bonds "until the financial market and the overall economy stabilized." Complaint at ¶ 3, 40. In fact, "Terra sent NYLIM written discussion points on Terra's concerns about the economy and proposed eliminating or materially reducing Terra's equity holdings" which were later discussed with NYLIM. *Id*. at ¶ 40, 41. Thus, NYLIM did not simply make a general statement about the economy, but rather made a misleading statement in response to a specific inquiry of its financial client.

Moreover, contrary to Defendant's implication that it had merely made a flip comment about the economy, the complaint alleges that "Sabella, the NYLIM portfolio manager of Terra's account, ... represented that <u>NYLIM market strategists had internally concluded</u> that the U.S. economy [was] 'fundamentally sound.'" *Id*. at ¶ 41 (emphasis added). NYLIM did not present this statement as pie-in-the-sky conjecture, but rather as the findings from the analysis of its strategists. Based on these purported findings, NYLIM even advised Terra that "market indices

1   would rise by 7-10%" and specifically advised Terra to "maintain all of its equity positions" and,

2   in fact, "to increase its equity holdings." *Id*. at ¶ 3. But, as discussed below, NYLIM's own

3   analysis contradicted these statements.

4       Under such circumstances, Defendant's representations may be treated as ones of material

5   facts.

6       **NYLIM Knowingly Made False Statements**

7       Whether misstatements by NYLIM were ones of fact or "casual expressions of belief" is

8   irrelevant because, as Terra later learned, NYLIM did not even believe what it was espousing to

9   Terra.  In fact, contrary to its representations to Terra, it had internally concluded that the U.S.

10  economy was <u>not</u> sound.  As alleged, it was "<u>NYLIM's internal conclusion that markets were</u>

11  <u>acting irrationally and that the U.S. economy was unstable</u>."  *Id*. at ¶¶ 4, 36 (emphasis added).

12  NYLIM's had discovered fundamental problems in the U.S. economic markets as disclosed in a

13  special report and other postings on its website:

14          <u>Based on our belief that the markets were acting irrationally, in February 2007,</u>
            <u>New York Life management approved a proposal to divert a portion of the</u>
15          <u>Company's investable cash flow from our normal credit market investments into</u>
            <u>U.S. Treasurys</u>.

16                                      * * *

17
            <u>It is that insistence on getting paid for taking risk that drove a strategic</u>
18          <u>reallocation of some of our investments in February 2007 — a move we refer to as</u>
            <u>a "quality tilt."  More than a year before the current credit crisis emerged, New</u>
19          <u>York Life's investment management team, led by Vice Chairman and Chief</u>
            <u>Investment Officer Gary Wendlandt, began closely monitoring what they believed</u>
20          <u>to be an unfavorable market environment. Observing a trend toward weaker</u>
            <u>underwriting standards for all forms of debt, as well as investment returns that</u>
21          <u>were not commensurate with the risk, they recommended a strategy that called for</u>
            <u>temporarily allocating a larger portion of the company's investments into safe</u>
22          <u>U.S. Treasury bonds</u>. . . .

23
    *Id*. at ¶¶ 43, 44 (emphasis in original).  This information, however, was never disclosed to Terra.
24
        Whether "merely" a belief or not, it was false and misleading for NYLIM to tell Terra
25
    that it believed that the markets were stable when in fact it had concluded the exact opposite, i.e.,
26
    "that the markets were acting irrationally."  It was false and misleading to advise Terra that the
27
    equity markets would increase 7-10% when "they believed [there] to be an unfavorable market
28

LAW OFFICES
COTCHETT,
PITRE
& McCARTHY

**MPA IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE
CV-0901609-WHA**                                                                    11

environment." And it was false and misleading to advise Terra that it was prudent to maintain or increase its equity position when, for its own portfolio, it believed it was necessary to divert "a larger portion of the company's investments into safe U.S. Treasury Bills."

### 2.     NYLIM's Misrepresentations Were Material

California courts assess materiality, an inherently factual issue, from a "reasonably person" perspective:

> Reliance upon a fraudulent misrepresentation is not justifiable unless the matter misrepresented is material ... The matter is material if ... a reasonable [person] would attach importance to its existence or nonexistence ... <u>But materiality is a jury question</u>, and a 'court may [only] withdraw the case from the jury if the fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influence by it.'

*Charpentier v. Los Angeles Rams*, 75 Cal.App.4th 301, 312-313 (1999) (emphasis added).

Thus, under this standard, the determination of whether the misrepresentations NYLIM representatives made to Terra are material, is a question of fact, that cannot be decided on a motion to dismiss. *Trinity Hotel Investors, LLC v. Sunstone OP Props, LLC*, _____, 2009 U.S. Dist. LEXIS 13692, *_____ (C.D. Cal. Feb. 5, 2009). On this basis alone, the motion should be denied.

Further, if a factual analysis is performed, the allegations plainly establish that NYLIM made misrepresentations that were material to Terra and any other reasonable investor in Terra's position. NYLIM advised that the economy was fundamentally sound, that the markets would increase in value 7-10% in the next year and that Terra should maintain and increase its equity position in NYLIM funds, while, at the same time, believing that the economy was not sound, the markets were going to drop in value and, acting prudently in its own best interests, moved its money from equity into more secure investments.

Although Defendant contends that its concerns over the U.S. economy stemming from the credit crisis were wholly independent of any concerns regarding equity markets, the facts belie this distinction. Far from qualifying its concerns to particular markets in its later discovered expressed, Defendant broadly stated that "they believed [there] to be an unfavorable market environment" generally, "we are in the middle of a fundamental reshaping of the financial sector"


LAW OFFICES
COTCHETT,
PITRE
& McCARTHY

**MPA IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE**
**CV-0901609-WHA**                                                                                    12

1   not merely a limited portion thereof, and that the entire "U.S. economy was unstable."

2   Complaint at ¶ 44.  Similarly, without qualification of investment type, Defendant had

3   concluded from "[o]bserving a trend toward weaker underwriting standards for all forms of debt,

4   as well as investment returns that were not commensurate with the risk, they recommended a

5   strategy that called for temporarily allocating a larger portion of the company's investments into

6   safe U.S. Treasury bonds."  *Id*.

7           Thus, Defendant's analysis found that the entire financial sector was in trouble, including

8   the equity market.  *Ibid*.  Its statements, however, indicating that the economy was strong and

9   that markets would continue to increase in value directly contradicted its analysis and belief.  As

10  such, they were materially false and misleading.

11          In short, by applying the "reasonable person" test to assess "materiality," it clear that a

12  reasonable investor would find it important to know that its financial advisor, to whom it is pays

13  for financial advice regarding market conditions and who serves as a fiduciary, believed that the

14  "markets were acting irrationally," believed that it was an "unfavorable market environment,"

15  believed that the prudent course was to withdraw from the equity markets and invest instead in

16  cash or cash equivalents.  Likewise, a reasonable investor would find it important not to be

17  misled by its own financial advisor when it specifically seeks advice on market conditions and

18  specifically queries whether it should convert its assets to a safer investment.

19                **3.    Terra Justifiably Relied on NYLIM's Misrepresentations**

20          <u>Reliance is a question of fact</u>.  As held by the California Supreme Court, "Except in the

21  rare case where the undisputed facts leave no room for a reasonable difference of opinion, the

22  question of whether the <u>plaintiff's reliance is reasonable is a question of fact</u>.'"  *Alliance*

23  *Mortgage Co. v. Rothwell*, 10 Cal.4th 1226, 1239 (1995) (emphasis added).  Similarly, in holding

24  that reliance is a question of fact, the court in *Blankenheim v. E.F. Hutton, Co.* explained "[w]hat

25  would constitute fraud in a given instance might not be fraudulent when exercised toward

26  another person.  The test of the representation is its actual effect on the particular mind."  217

27  Cal.App.3d 1463, 1475 (1990).

28

LAW OFFICES
COTCHETT,
PITRE
& McCARTHY

**MPA IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE**
**CV-0901609-WHA**                                                                    13

1    Accordingly, because reliance is an inherently factual issue, it would be inappropriate for

2    this Court to adjudicate this issue based on the pleadings.

3    "Reliance exists when the misrepresentation or nondisclosure was an immediate cause of

4    the plaintiff's conduct which altered his or her legal relations, and when without such

5    misrepresentation or nondisclosure he or she would not, in all reasonable probability, have

6    entered into the contract or other transaction. *Alliance Mortgage Co. v. Rothwell*, 10 Cal.4th

7    1226, 1239 (1995) (emphasis added). "In establishing the reliance element of a cause of action

8    for fraud, it is settled that the alleged fraud need not be the sole cause of a party's reliance."

9    *Sangster v. Paetkau*, 68 Cal.App.4th 151, 170 (1998). Further, "a presumption, or at least an

10   inference, of reliance arises wherever there is a showing that a misrepresentation was material."

11   *Engalla v. Permanente Medical Group, Inc*., 15 Cal.4th 951, 977 (1997) (see discussion, *infra*,

12   regarding materiality.)

13   As alleged by the complaint, at the time the of the misrepresentations, NYLIM intended

14   for Terra to rely on the misrepresentations in order for Terra to maintain its equity position in the

15   NYLIM mutual funds and for NYLIM to thereby benefit from additional advisory fees.

16   Complaint at ¶ 36. According to the pleadings, Terra, in reliance on the statements of its

17   financial advisor, maintained its equity position in NYLIM mutual funds. *Id*. at ¶ 42, 56. Had

18   Terra known the true facts, it would have reallocated its funds to U.S. Treasury Bonds (as

19   desired) and not been harmed. *Id*. at ¶ 56.

20   Incredulously, however, NYLIM claims that there was no reliance. This makes no sense

21   – Terra retained NYLIM, like any investor retaining a financial services advisor, in order to

22   receive financial advice upon which it could base its investment decisions. There would be no

23   purpose for Terra to have retained NYLIM and paid it hundreds of thousands of dollars if it did

24   not intend to rely upon its advice. Moreover, the allegations indicate that Terra, in fact, followed

25   NYLIM's advice – NYLIM advised Terra that the markets were stable and to maintain or

26   increase its equity position and this is exactly what Terra did. *Id*. at 36, 37, 38, 42.

27

28

LAW OFFICES
COTCHETT,
PITRE
& McCARTHY

**MPA IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE**
**CV-0901609-WHA**                                                                                      14

**C.     Terra Has Sufficiently Pled Fraudulent Concealment**

In order to state a claim for fraudulent concealment under California law, a plaintiff must plead the following elements: (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage. *Marketing West, Inc. v. Sanyo Fisher (USA) Corp.*, 6 Cal.App.4th 603, 613 (1992).

As with the fraud claim, Defendant contends that the complaint fails to allege facts supporting the first element (concealment of material facts), the second element (duty to disclose), and fourth element (reliance).  Mtn. at 13-16.  As explained below, however, the complaint sufficiently sets forth facts establishing each of these elements.

**1.     NYLIM Concealed Material Facts**

First, Defendant contends that it had not concealed material facts because the information was actually disclosed in a mass of documents posted – at some point in time – on its website. Mtn. at 14.  Accordingly, Defendant argues that all Terra had to do was ignore the express statements made to it by its agents and, instead, to comb through every page of every document posted on its website and it would have found the truth.  But concealment does not require as much (especially in the context of a fiduciary relationship like this one) and Defendant failed to cite any authority suggesting otherwise.  The authority is otherwise.  *Vega v. Jones, Day, Reavis & Pogue,* 121 Cal.App. 4th  282, 295 (2004) (rejecting contention that publicly available information cannot form the basis for a concealment claim).

Second, Defendant again contends that concealed facts were immaterial.  But for the same reasons discussed above, this argument fails.  As indicated, materiality is an issue best addressed by the trier of fact, not on a 12(b)(6) motion and, contrary to Defendant's contention,

LAW OFFICES
COTCHETT,
PITRE
& McCARTHY

**MPA IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE
CV-0901609-WHA**                                                                    15

1   investors clearly would want their financial advisor to disclose its belief that the market was in

2   trouble, especially when specifically asked.

3                   **2.       NYLIM Had a Duty to Speak**

4           Concealment merely requires "[t]he suppression of a fact, by one who is bound to

5   disclose it, or who gives information of other facts which are likely to mislead for want of

6   communication of that fact." Cal. Civ. Code § 1710. One has a duty to speak where, as here,

7   "the defendant is in a fiduciary relationship with the plaintiff," "the defendant had exclusive

8   knowledge of the information," or "defendant makes partial representations but also suppresses

9   some material facts." *LiMandri v. Judkins*, 52 Cal.App.4th 326, 336 (1997).

10          <u>NLYIM had a duty to speak because of its fiduciary relationship with Terra</u>. Financial

11  advisors have a fiduciary relationship with the clients to whom they dispense advise. See

12  generally, *United States v. Williams*, 441 F.3d 716, 724 (9th Cir. 2006) (financial advisor deemed

13  "a fiduciary" the high duties of honesty and loyalty"). "Where a financial advisor holds "himself

14  out as an experienced professional, had far greater access to TLC's information than the

15  investors, gained a benefit by receiving a commission for every sale, was aware that the investors

16  relied on his advice, and he began advertising the opportunity to invest in TLC," he is a fiduciary.

17  *SEC v. TLC Invs. & Trade Co.*, 179 F. Supp. 2d 1149, 1154 (C.D. Cal. 2001). Accordingly, the

18  Court in *SEC v. TLC Invs. & Trade Co.* concluded that the advisor "therefore had a duty to

19  disclose all material information." *Id*.

20          Similarly, here, NYLIM served as Terra's financial advisor, holding itself out as an expert

21  in financial investments with unimpeded access to its own analysis as well as more generally that

22  of New York Life, received hundreds of thousands of dollars for its advisory role and steered

23  Terra into investments upon which it made further commissions. Because NYLIM was Terra's

24  financial advisor and served in the role described, NYLIM had a duty to speak fully and fairly in

25  response to inquiries of its client.

26          <u>NYLIM also had a duty to speak because the undisclosed information was not readily</u>

27  <u>available to Terra</u>. NYLIM's analysis of market conditions was something for which it had

28

LAW OFFICES
COTCHETT,
PITRE
& McCARTHY

**MPA IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE**
**CV-0901609-WHA**                                                                                    16

1   exclusive knowledge of (and was paid fees for), and was not otherwise readily discoverable by

2   others.  Under such circumstances, there was a duty to disclose.  *Goodman v. Kennedy*, 18 Cal.3d

3   335, 346 (1976) (duty to disclose "when one party to a transaction has sole knowledge or access

4   to material facts and knows that such facts are not known or reasonably discoverable by the other

5   party").  Terra did not know that NYLIM believed that the market was acting irrationally or that

6   it was prudent to convert assets from equities into more secure investments, including U.S.

7   Treasuries (the exact investment that Terra proposed to NYLIM).  Why would have it known

8   after all, given that NYLIM expressly advised Terra to the contrary?

9        Finally, under California law, NYLIM had a duty to speak because it had undertaken to

10  speak on these same matters.  Thus, even assuming *arguendo* that NYLIM did not have an

11  independent duty to fully disclose its internal analysis of the markets before it responded to

12  Terra's inquiries about market conditions,[2] it certainly did after it spoke:

> the rule has long been settled in this state that although one may be under no duty
> to speak as to a matter, 'if he undertakes to do so, either voluntarily or in response
> to inquiries, he is bound not only to state truly what he tells but also not to
> suppress or conceal any facts within his knowledge which materially qualify those
> stated.  If he speaks at all he must make a full and fair disclosure.'

16  *Marketing West* at 613 (internal citations omitted).  Here, Terra specifically inquired of its

17  investment advisor NYLIM as to its opinion of market conditions and whether it should move its

18  money out of equities and into more secure investments.  Complaint at ¶ 41, 42.  In response,

19  NYLIM spoke about these matters but did <u>not</u> disclose that its analysis showed that the market

20  was acting irrationally or otherwise unfavorable to investors.  *Id*.  Further, it failed to disclose

21  that it believed it was prudent to transfer equity assets into more secure U.S. Treasuries because

22  the market was acting irrationally.  *Id*.  (In fact, as discussed *supra*, it disclosed just the opposite.)

23            **3.     Terra Has Alleged Reliance For Purposes of Concealment**

24        NYLIM again argues that the concealment claim fails to allege reliance.  For the same

25

26   [2]     Even here, NYLIM's arguments are contradictory.  At one point, it says the information
27  about its investment decisions was readily available on its website, but later NYLIM asserts that
    it had no "legal duty" to disclose "non-public information" about the "handling of its fixed
    income portfolio."  MPA at 15.

28

LAW OFFICES
COTCHETT,
PITRE
& McCARTHY

**MPA IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE
CV-0901609-WHA**                                                                      17

1  reasons discussed above, its argument fails.  Reliance is a question of fact best left for the trier of

2  fact.  Further, the complaint clearly establishes that Terra relied upon the information presented

3  and, had it been aware of the concealed information, would have acted differently (the standard

4  for reliance in a concealment claim).

5       Indeed, as alleged, Terra approached NYLIM on more than one occasion to address its

6  concerns about the equity markets, each time inquiring whether should reallocate its equity funds

7  to U.S. Treasuries.  Complaint at ¶ 41, 42.  Not once did NYLIM mention that its internal

8  analysis indicated that the equity markets were going to go through a period of steep decline or

9  that it concluded it was prudent to move funds out of equity and into U.S. Treasury Bonds.  Id. at

10  ¶ 41,42, 43, 44.  Plainly, if Terra would have known this information, it would have moved its

11  money into more secure investments and adverted the losses suffered (just as NYLIM chose to do

12  with its own account).

13  _____**D.    NYLIM Is Liable for Negligent Misrepresentation**

14       The elements of negligent misrepresentation consist of "(1) a misrepresentation of a past

15  or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent

16  to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable

17  reliance thereon by the party to whom the misrepresentation was directed, and (5) damages."

18  *Fox v. Pollack*, 181 Cal.App.3d 954, 962 (1986).  NYLIM challenges only the allegations

19  supporting the second element (making a statement without reasonable grounds) and the fourth

20  element (justifiable).  As discussed more fully below, these challenges fail.

21           **1.    NYLIM Made its Misrepresentations "Without Reasonable Grounds"
                     for Believing Them to Be True**

22
23  Defendant asserts:

24  In order to state a claim, a plaintiff must allege facts showing that NYL
     Investments had 'no reasonable grounds' to believe in November 2007 and March
     2008 that the 'economy' was 'fundamentally sound' or that investors should
25  continue to invest in equities.  In other words, Terra must show that the only
     reasonable position for all investment advisors was to recommend that all clients
26  liquidate their entire equity portfolios.

27  Mtn. at 17.

28



LAW OFFICES
COTCHETT,
PITRE
& MCCARTHY

1    Defendant misstates the standard – it is <u>not</u> whether any grounds exist for the statement,

2    but rather whether the defendant had reasonable grounds itself for believing the statement to be

3    true.  One can always conceive of some grounds or facts which would justify a false statement,

4    especially in the financial realm where facts and statistics are abundant and often conflicting.

5    But that is not the issue.  Rather, it is whether NYLIM had reasonable grounds to believe that its

6    statements to Terra were true.

7    Here, NYLIM advised Terra that its <u>own analysis showed</u> that the markets were strong

8    and were expected increase in value 7-10%.  Complaint at ¶ 3.  Additionally, the Complaint

9    alleges that NYLIM had <u>concluded</u> that it was prudent to not only maintain but to actually

10   increase Terra's equity position and that it should not move its money into safer investments.  *Id*.

11   But through Terra's <u>own analysis</u> it reached completely <u>opposite conclusions</u>.  New York Life's

12   management implemented the strategy to divert its funds into U.S. Treasury Bonds in February

13   2007, before either of the two Terra Board meetings took place where NYLIM made the

14   misrepresentations that the economy was "fundamentally sound."  *Id*. at ¶ 43, 44.  According to

15   New York Life materials the company instituted the strategy based on their "belief that the

16   markets were acting irrationally" and in response to "unfavorable market environments."  *Id.*

17   Thus, New York Life had concluded before the two board meetings that the markets were

18   unsound and that assets should be withdrawn therefrom.  Accordingly, NYLIM did not have

19   reasonable grounds to believe that their statements were true, when only months before those

20   statements were made, New York Life had concluded that the economy was acting irrationally

21   and, in response, began diverting its funds into safer investments.

22   Further, "[w]hether a defendant had reasonable ground for believing his or her false

23   statement to be true is ordinarily a question of fact."  *Quality Wash Group V, Ltd. v. Hallak*, 50

24   Cal.App.4th 1687, 1697 (1996).

25              **2.      Terra Justifiably Relied on NYLIM's Misrepresentations**

26   Again, by misstating the elements for negligent misrepresentation, Defendant concludes

27   that the fifth element of this cause of action (reliance) can never be established when the second

28

LAW OFFICES
COTCHETT,
PITRE
& McCARTHY

**MPA IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE**
**CV-0901609-WHA**                                                                    19

1   element (reasonable grounds) is established:

2       . . . in any circumstance that "if Terra were able to make this showing, which
        would be impossible, it would never be able to establish justifiable reliance. If the
3       'economy' was so 'unsound' that no reasonable person could conclude that it was
        "sound," then Terra could not have justifiably relied upon statements to the
4       contrary.

5   Mtn. at 17. By Defendant's "reasoning," there could never be a claim for negligent

6   misrepresentation. This argument highlights the flaw in its reasoning – the standard it is <u>not</u>

7   whether <u>any person</u> could conceive of <u>any grounds</u> justifying a statement, but rather whether

8   NYLIM itself had reasonable grounds for believing the statement to be true. As discussed above,

9   they did not. For the reasons previously discussed, however, Terra did justifiably rely upon the

10  misrepresentations of its financial advisor.

11      **E.      The Court Should Deny NYLIM's Motion to Strike**

12          Rule 12(f) provides that a "court may strike from a pleading...any immaterial,

13  impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). An "immaterial" matter is that which

14  has no essential or important relationship to the claim for relief. *Fantasy, Inc. v. Fogerty*, 984

15  F.2D 1524, 1527 (9th Cir. 1993) (reversed on other grounds in *Fogerty v. Fantasy, Inc.* 510 U.S.

16  517 (1994)). An "immaterial" matter "consists of statements that do not pertain, and are not

17  necessary to the issues in question." *Id.*  "Scandalous has been defined as allegations that cast a

18  cruelly derogatory light on a party." *Schwarzer, et al.,* Cal. Prac. Guide Fed. Civ. Proc. Before

19  Trial (The Rutter Group 2009) ¶ 9:388.

20          Motions to strike are generally disfavored and "should not be granted unless it is clear

21  that the matter to be stricken could have no possible bearing on the subject matter of the

22  litigation." *Colapriaco v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991).

23  Also due to their disfavored status courts often require a "showing of prejudice by the moving

24  party before granting the requested relief." *Cal. Dep't of Toxic Substances Control v. Alco Pac.*

25  *Inc.*, 217 F.Supp.2d 1028, 1033 (C.D. Cal. 2002).

26          In exercising its discretion to strike allegations, courts view the pleadings in the light

27  most favorable to the non moving party and "if there is any doubt as to whether the allegations

28

LAW OFFICES
COTCHETT,
PITRE
& McCARTHY

**MPA IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE
CV-0901609-WHA**                                                                20

1   might be an issue in the action, courts will deny the motion." *In re 2 TheMart.com Securities*

2   *Litigation*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000). This is especially true when, as here, the

3   moving party is unable to show prejudice therefrom. *Schwarzer* at ¶ 9:384.

4         Similar to its underlying motion to dismiss, Defendant seeks to strike from the complaint

5   all allegations regarding its "quality tilt" program, even though they form a basis of the alleged

6   misstatements and concealment of material information. The motion to strike claims that these

7   allegations are immaterial, impertinent, and scandalous within the meaning of Federal Rule of

8   Civil Procedure 12(f) and thus should be stricken from the complaint. As discussed above, in

9   order for a matter to be stricken it needs to have no possible bearing on the subject matter of the

10  litigation. *Colapriaco*, 758 F. Supp. at 1339

11        Since the crux of the complaint is that NYLIM had internally concluded that the financial

12  markets were acting irrationally and, in response instituted a strategy calling for the reallocation

13  of its investments into secure U.S. Treasuries, while at the same time recommending to Terra to

14  do just the opposite, these allegations are directly relevant to the causes of action pled. While it

15  is hardly surprisingly that it is these allegations that NYLIM seeks to strike, there is no legal

16  grounds to do so. If they are "scandalous," it is only because the conduct is so.

17        For all these reasons, the motion to strike the allegations regarding NYLIM's actions

18  should be denied.

19  **IV.**   **CONCLUSION**

20        For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendant's

21  motions to dismiss and motion to strike.

22  Date:  July 2, 2009            **COTCHETT, PITRE & McCARTHY**

23

24                          By:_____/s/_____

25                               MARK C. MOLUMPHY

26                   *Attorneys for Plaintiff Terra Insurance Company*
                     *(A Risk Retention Group)*

27

28

LAW OFFICES
COTCHETT,
PITRE
& McCARTHY

**MPA IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE**
**CV-0901609-WHA**                                         21