IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRA INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>NEW YORK LIFE INVESTMENT MANAGEMENT, LLC,<br><br>Defendant.<br>_____/ | No. C 09-01609 WHA<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE** |

**INTRODUCTION**

In this contracts case, this is a motion to dismiss claims involving defendant's alleged fraudulent misconduct. Plaintiff Terra Insurance Company asserts that defendant New York Life Investment Management fraudulently misrepresented its opinions concerning the stability of the equity market. The complaint asserts the following claims: (1) fraudulent misrepresentation; (2) fraudulent concealment; (3) negligent misrepresentation; (4) breach of fiduciary duty; (5) breach of contract; (6) breach of implied covenant of good faith and fair dealing; and (7) negligence. Defendant moves to dismiss claims one, two, and three on the grounds that the complaint fails to state a claim under Rule 9(b). Defendant also moves to strike all statements by Gary Wendlandt, CEO of New York Life Investment Management, concerning the stability of the economy and the "quality tilt" program from the complaint. This order finds that the complaint pleads facts sufficient to state a claim with particularity under Rule 9(b). Accordingly, defendant's motion to dismiss these claims is **DENIED**. Because

1 these claims rely upon the statements concerning the "quality tilt" program, defendant's motion
2 to strike is **DENIED**.

## STATEMENT

This action arises from alleged fraudulent conduct by defendant in its role as plaintiff's investment advisor and mutual fund manager. Plaintiff Terra Insurance Company (Terra) is a professional liability insurer providing casualty insurance to engineering firms. Defendant New York Life Investment Management, LLC (NYLIM) is a subsidiary of New York Life Insurance Company (New York Life) and is an investment advisor and mutual fund manager.

In 1989, Terra retained Towneley Capital Management to serve as its investment advisor. NYLIM acquired Towneley in 2000 and subsequently stepped in as Terra's investment advisor. NYLIM had the authority to manage a fund that consisted of securities and cash and to make such purchases and sales of securities on behalf of the fund as it deemed appropriate. Pursuant to the parties' investment advisory agreement, NYLIM could invest up to 20% of the total portfolio assets in mutual funds managed and owned by itself. It was to receive quarterly payments of fees based on the average fair market value of the NYLIM mutual funds.

In August 2005, NYLIM informed Terra that it could no longer offer its advice on assets invested in third-party mutual funds. NYLIM requested that Terra sell its interest in third-party mutual funds and make additional investments in NYLIM mutual funds. Terra did so and, ultimately, the only funds held by Terra were owned and managed by NYLIM.

Beginning in 2007, Terra repeatedly expressed its concerns about the strength of the economy to NYLIM and asked for advice about diverting assets from the equity market to safer U.S. Treasury bonds. In June 2007, the CEO and CFO of Terra visited with NYLIM to discuss Terra's investment portfolio. They expressed concerns about the exposure posed by Terra's equity holdings in light of conditions in the U.S. economy. Two representatives of NYLIM dismissed those concerns and told Terra to maintain its equity holdings in NYLIM mutual funds. In November 2007, Terra sent a letter to NYLIM which proposed eliminating or materially reducing Terra's equity holdings. At a board meeting the following week, Terra again asked NYLIM representatives Joan Sabella and Veda Pai-Panadiker whether Terra should

1  eliminate its equity portfolio and transfer those assets to U.S. Treasury bonds until the economy
2  stabilized. Sabella rejected that advice and represented that "NYLIM market strategists had
3  internally concluded that the U.S. economy is 'fundamentally sound'" and that "it was
4  NYLIM's recommendation that Terra maintain its current equity position" (Compl. ¶ 41).
5  In fact, at that meeting, Sabella even advised Terra to increase its equity holdings in NYLIM
6  mutual funds, which Terra subsequently did. Finally, in March 2008, Terra again expressed its
7  concerns about its equity holdings and recommended to eliminate or materially reduce its stake.
8  In response, NYLIM representative William Knapp, who purportedly held a Ph.D in
9  Economics, stated that it was NYLIM's belief that the market was strong. NYLIM again
10 directed Terra to maintain its equity position so that it could continue to get paid a handsome
11 commission.

12 Meanwhile, NYLIM allegedly knew that the market was unstable and actually advised
13 its parent company to divert a greater portion of its own assets into U.S. Treasury bonds. In
14 New York Life's 2007 Annual Report issued in February 2007, NYLIM's Vice Chairman and
15 Chief Financial Officer Gary Wendlandt issued a "special statement" where he alleged that:

> More than a year before the current credit crisis emerged, New
> York Life's investment management team . . . began closely
> monitoring what they believed to be an unfavorable market
> environment. Observing a trend toward weaker underwriting
> standards for all forms of debt, as well as investment returns that
> were not commensurate with the risk, they recommended a
> strategy that called for temporarily allocating a larger portion of
> the company's investments into safe U.S. Treasury bonds.

(Compl. ¶ 44). Gary Wendlandt referred to this program as the "quality tilt" whereby New York Life would temporarily divert its investable cash flow into U.S. Treasury bonds until the markets stabilized. Allegedly, these statements indicate that NYLIM and its senior investment officers advised Terra to maintain and increase its equity holdings given the supposed positive outlook of the economy when, in fact, NYLIM had already internally concluded that the economy was not stable and had directed its parent company to shift its own investments into safe U.S. Treasury bonds.

In November 2008, after more disagreements about Terra's equity portfolio, Terra contacted NYLIM and directed it to liquidate its mutual funds holdings immediately. Between

3

1 November 2007 and November 2008, Terra allegedly suffered losses of approximately three
2 million dollars.

3 Terra commenced this action in April 2009, alleging various contract and fraud-related
4 claims arising out of NYLIM's conduct between November 2007 and November 2008. NYLIM
5 filed this motion to dismiss Terra's claims of fraudulent misrepresentation, fraudulent
6 concealment, and negligent misrepresentation and motion to strike the allegations in the
7 complaint regarding Gary Wendlandt's statements about the "quality tilt."

**ANALYSIS**

**1.  LEGAL STANDARD.**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Material factual allegations of the complaint are taken as true and construed in the light most favorable to the nonmoving party, but courts are not bound to accept as true "a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949–50 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 1950. In order to defeat a Rule 12(b)(6) motion to dismiss, a claim must be factually supported and plausible on its face — conclusory legal allegations and speculative inferences do not suffice. *Ibid.*

Rule 9(b) requires that in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. A pleading is sufficient under Rule 9(b) if it "identifies the time, place, and nature of the alleged fraudulent activities." In cases of corporate fraud, however, the pleading standard is relaxed since the circumstances may make it difficult to attribute particular fraudulent conduct to each defendant as an individual. Rule 9(b) serves to give defendants notice of the specific fraudulent conduct against which they must defend. *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001).

Although materials outside of the pleadings should not be considered without converting the motion to dismiss to a motion for summary judgment, a district court may consider all

4

materials properly submitted as part of the complaint, such as exhibits. *In re Silicon Graphics Inc. Sec. Lit.*, 186 F.3d 970, 986 (9th Cir. 1999). A district court may also consider documents to which the complaint specifically refers and whose authenticity is not questioned, even if they are not physically attached to the complaint. *Ibid*. A district court may take judicial notice of its own orders and of records in a case before it as well as other matters of public record that are properly subject to judicial notice.

This order grants NYLIM's request for judicial notice. Exhibits 1 through 4 are quoted heavily in the complaint and the complaint necessarily relies on them. These include: the Investment Advisory Agreement between Terra Insurance Company and Towneley Capital Management, the investment guidelines and fee schedules to which the complaint refers in paragraph 31, and the 2007 Annual Report which includes the "special report" from Gary Wendlant to which the complaint refers in paragraph 43. Although Terra objects that stock market indices in exhibits 5 through 8 were not properly authenticated, the contents of those exhibits are not in dispute — Terra merely disputes the manner in which they were authenticated. Since the performance of stock market indices is public knowledge, this order takes judicial notice of exhibits 5 through 8.

### 2. INTENTIONAL MISREPRESENTATION.

The elements of an intentional misrepresentation claim are: (1) defendant misrepresents material facts; (2) with knowledge of the falsity of the representations or the duty of disclosure; (3) with intent to defraud or induce reliance; (4) which induces justifiable reliance by the plaintiff; (5) to his or her detriment. *Hahn v. Mirda*, 147 Cal. App. 4th, 740, 748 (2007). In order to prevail, the plaintiff must allege and prove that he or she actually relied upon the misrepresentations and, in the absence of fraud, would not have entered into the contract or transaction. *Mega Life & Health Ins. Co. v. Superior Court*, 172 Cal. App. 4th 1522, 1530 (2009).

This order finds that Terra has pled facts sufficient to state a claim under Rule 9(b) and accordingly denies NYLIM's motion to dismiss the intentional misrepresentation claim. The complaint alleges that NYLIM gave Terra advice about investment strategies that it knew

1  were imprudent. NYLIM allegedly told Terra on at least two occasions between June 2007 and
2  March 2008 that the markets were stable and that Terra should continue to maintain and
3  increase its equity holdings in NYLIM's own proprietary funds rather than transfer those
4  holdings into U.S. Treasury bonds. At the same time, however, NYLIM allegedly knew those
5  representations were false — that the markets were, in fact, not stable and that the most prudent
6  investment decision would be to increase holdings in U.S. Treasury bonds. Moreover, NYLIM
7  allegedly implemented the exact investment strategy for its parent company's account that it
8  advised Terra against. The complaint even includes clippings allegedly from NYLIM's website
9  where NYLIM discussed its quality tilt strategy and reasons for implementing it — namely, that
10 after observing "investment returns that were not commensurate with the risk, [NYLIM's
11 chairman Gary Wendlandt] recommended a strategy that called for temporarily allocating a
12 larger portion of the company's investments into safe U.S. Treasury bonds" (Compl. ¶¶ 43–44).
13 The complaint alleges which officers of NYLIM made the false representations, how those
14 representations were false, facts which indicate that NYLIM knew those representations were
15 false, that those representations were made in an attempt to induce Terra continue to maintain
16 its equity holdings, and that Terra was in fact induced to do so to its own detriment. These
17 allegations are sufficient to state a claim under Rule 9(b).

18       NYLIM's argument that there is no factual basis for the allegation that NYLIM
19 misrepresented the health of the economy between June 2007 and March 2008 is without merit.
20 NYLIM contends that there is a "fundamental disconnect between the quality tilt and the
21 propriety of the advice that NYL Investments allegedly was giving to Terra about its equity
22 porfolio" (Br. 11). Its argument is that the quality tilt and related discussions on its website
23 were concerned only with changes in the stability of the credit markets and had nothing to do
24 with the advice that it gave to Terra about the equity market. This is not appropriate to decide
25 as a matter of law on a Rule 12(b)(6) motion. The factual allegations, accepted as true and
26 construed in the light most favorable to Terra, are sufficient to state a claim.

27       NYLIM's argument that any statement about the health of the economy is an opinion
28 and cannot be a material fact is also without merit. Its reliance on *Neu-Visions* for the

6

1  proposition is inapposite. That decision held that a defendant's prediction of the future value of
2  property was an opinion and not a material fact because the defendant was not a professional
3  and because the plaintiff knew so. But the same decision went on to explain that when "a party
4  possesses or holds itself out as possessing superior knowledge or special information or
5  expertise regarding the subject matter and a plaintiff is so situated that it may reasonably rely on
6  such supposed knowledge, information, or expertise, the defendant's representation may be
7  treated as one of material fact." *Id.* at 37. Furthermore, "circumstances resulting in expressions
8  of opinion being treated as misrepresentations have been found where the one expressing the
9  opinion does not in fact entertain it." *Pacesetter Homes, Inc. v. Brodkin*, 5 Cal. App. 3d 206
10 (1970). This speaks directly to the facts in this case. Here, where NYLIM acted as Terra's
11 investment advisor, NYLIM held itself out as possessing superior knowledge about the strength
12 of the markets. A representative of NYLIM, who purportedly held a PhD. in Economics, even
13 gave a purportedly misleading presentation to Terra about the health of the economy. After
14 Terra expressed its fears about the stability of the market, the representative explained that the
15 economy was strong and that Terra should continue to maintain or increase its equity holdings
16 even though NYLIM allegedly believed the most prudent investment decision would be to
17 divert holdings to U.S. Treasury bonds. Given the parties' relationship, it was reasonable for
18 Terra to rely on such representations by NYLIM.

19 NYLIM also argues that Terra cannot establish the element of justifiable reliance
20 because it has not alleged sufficient facts to establish that it would have treated its equity
21 positions any differently had it known of the quality tilt strategy. This argument misconstrues
22 the complaint. The complaint alleges that NYLIM withheld material information relating to the
23 stability of the equities market and falsely represented that Terra should leave its investments in
24 NYLIM's own proprietary funds rather than convert them into U.S. Treasury bonds.
25 Terra refers to NYLIM's quality tilt strategy only to support its allegation that NYLIM knew at
26 the time that U.S. Treasury bonds were the best investment choice for Terra given the state of
27 the economy.
28

7

1   This order rejects NYLIM's arguments and finds that Terra has pled sufficient facts to
2   state a claim of intentional misrepresentation under Rule 9(b). Accordingly, NYLIM's motion
3   to dismiss this claim is denied.

### 3. FRAUDULENT CONCEALMENT.

The elements of a claim for fraudulent concealment in California are: "(1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." *Lovejoy v. AT&T Corp.*, 119 Cal. App. 4th 151, 157–58 (2004). Fraud or deceit may consist of the suppression of a fact by one who is bound to disclose it or who gives information of other facts which are likely to mislead for want of communication of the fact. *Hoey v. Sony Electronics, Inc.*, 515 F. Supp. 2d 1099, 1104 (N.D. Cal. 2007).

This order finds that Terra has pled facts sufficient to state a claim under Rule 9(b) and accordingly denies NYLIM's motion to dismiss the fraudulent concealment claim. This claim is based on the same facts as the intentional misrepresentation claim above. Terra's theory is that NYLIM intentionally concealed that the credit markets were acting irrationally, that "investment returns [in the equities market] were not commensurate with the risk," and that the most prudent investment decision would be to increase holdings in U.S. Treasury bonds. As above, the complaint contains sufficient allegations to satisfy each element of this claim under Rule 9(b).

NYLIM's argument that it was not under a duty to disclose information about its parent company, New York Life's, investments misses the point entirely. *First*, Terra is not alleging that NYLIM had a duty to disclose the quality tilt statements or investment information about New York Life. Rather, Terra relies on the quality tilt statements merely to establish that NYLIM had actual knowledge that investment returns in the equity markets were not commensurate with the risks. Although the statements concern NYLIM's parent company, they

8

were issued by NYLIM's chairman Gary Wendlandt, thus indicating that NYLIM's true opinions about the health of the economy were different than those that it expressed to Terra. *Second*, NYLIM had a fiduciary relationship with Terra as its investment advisor and it had a duty as such to provide Terra with accurate investment information. *Third*, NYLIM created a duty to disclose its true opinion that the markets were unstable when it made its allegedly false representations between June 2007 and March 2008 that Terra should maintain or increase its equity holdings — NYLIM told Terra that the equity markets were sound even though it possessed information that suggested the contrary.

NYLIM's argument that Terra cannot show it would have acted differently had it known the true facts is without merit. Terra requested two meetings with NYLIM between June 2007 and March 2008 because Terra was concerned about the health of the economy. Terra expressed its desire to divert all of its holdings to U.S. Treasury bonds until the markets stabilized. Allegedly, the only reason Terra maintained its equity holdings in NYLIM's proprietary funds is because of NYLIM's false representations at those meetings that it should do so. This is a matter of fact that is inappropriate for a Rule 12(b)(6) motion.

This order rejects NYLIM's arguments and finds that Terra has pled sufficient facts to state a claim of fraudulent concealment under Rule 9(b). Accordingly, NYLIM's motion to dismiss this claim is denied.

### 4. NEGLIGENT MISREPRESENTATION.

To state a claim for negligent misrepresentation in California, the complaint must allege the following elements: (1) the defendant must have made a representation as to a past or existing material fact; (2) the representation must have been untrue; (3) regardless of his actual belief the defendant must have made the representation without any reasonable ground for believing it to be true; (4) the representation must have been made with the intent to induce plaintiff to rely upon it; (5) the plaintiff must have been unaware of the falsity of the representation, he must have acted in reliance upon the truth of the representation and he must have been justified in relying upon the representation; and (6) as a result of his reliance upon

9

1  the truth of the representation, the plaintiff must have sustained damage. *Friedman v. Merck &*
2  *Co.*, 107 Cal. App. 4th 454, 475–76 (2003).

3        The complaint pleads facts sufficient to state a claim under Rule 9(b). The complaint
4  alleges that when NYLIM made representations to Terra about the health of the economy
5  between June 2007 and March 2008, it had already internally concluded that the markets were
6  unstable and that the most prudent investment decision would be to divert holdings into U.S.
7  Treasury bonds. As discussed above, the complaint alleges these facts with the requisite
8  particularity under Rule 9(b).

9        NYLIM's argument that "Terra must show that the only reasonable position for all
10 investment advisors was to recommend that all clients liquidate their entire equity portfolios"
11 misstates the legal standard for this claim. Rather, the standard for reasonableness is whether
12 NYLIM had reasonable grounds to believe that its statement that the Terra should maintain or
13 increase its equity holdings was true. Further, this is generally a question of fact. *Quality Wash*
14 *Group V, Ltd. v. Hallak*, 50 Cal. App. 4th 1687, 1697 (1996). Since NYLIM had allegedly
15 already internally concluded that the opposite was true — that the markets were unstable and
16 that the most prudent investment decision would be to divert holdings into U.S. Treasury bonds
17 — it had no reasonable grounds to urge Terra not to divert its holdings into U.S. Treasury
18 bonds.

19       NYLIM's argument that Terra is unable to establish justifiable reliance is also without
20 merit. NYLIM was Terra's investment advisor. Terra requested two meetings with NYLIM
21 where Terra expressed its concerns about the market and indicated that it wished to divert its
22 holdings into U.S. Treasury bonds. Terra, however, deferred its decisions to NYLIM since
23 NYLIM was hired for the purpose of analyzing the markets and recommending prudent
24 investment strategies. One of NYLIM's employees who held himself out as holding a Ph.D in
25 Economics gave a detailed presentation about the strength of the economy. These statements
26 and presentations were made in order to induce Terra to maintain its equity holdings with
27 NYLIM so that NYLIM could continue to get paid a handsome commission. In light of these
28

allegations in the complaint, it is absurd to argue that Terra cannot establish justifiable reliance as a matter of law.

This order finds that Terra has pled sufficient facts to state a claim of fraudulent concealment under Rule 9(b). Accordingly, NYLIM's motion to dismiss this claim is denied.

### 5. MOTION TO STRIKE "QUALITY TILT" ALLEGATIONS.

NYLIM's motion to strike the quality tilt allegations from the complaint is denied. The quality tilt statements are central to the claims sounding in fraud since the statements indicate that NYLIM held an opinion about the strength of the market and prudent investment choices which was different than the opinions that it expressed to Terra between June 2007 and March 2008.

### CONCLUSION

The complaint alleges facts sufficient to state claims for fraudulent concealment, fraudulent misrepresentation, and negligent misrepresentation under Rule 9(b). NYLIM's motion to dismiss these claims is thus **DENIED**. Furthermore, since those claims necessarily rely upon Gary Wendlandt's statements surrounding the quality tilt program, NYLIM's motion to strike those statements is **DENIED**.

**IT IS SO ORDERED.**

Dated: July 30, 2009

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE