1  FRANK M. PITRE (100077)
   fpitre@cpmlegal.com
2  MARK C. MOLUMPHY (168009)
   mmolumphy@cpmlegal.com
3  NIKI B. OKCU (229345)
   nokcu@cpmlegal.com
4  **COTCHETT, PITRE & McCARTHY**
   840 Malcolm Road, Suite 200
5  Burlingame, CA 94010
   Telephone: (650) 697-6000
6  Fax: (650) 697-0577

7  *Attorneys for Plaintiff Terra Insurance Company*
   *(A Risk Retention Group)*

8

9                    **UNITED STATES DISTRICT COURT**

10                   **NORTHERN DISTRICT OF CALIFORNIA**

11                       **SAN FRANCISCO DIVISION**

12

13 **TERRA INSURANCE COMPANY**          ) Case No.  CV-09-1609-WHA
   **(A Risk Retention Group),**        )
14                                       )
                        **Plaintiff,**   ) **MEMORANDUM OF POINTS AND**
15                                       ) **AUTHORITIES IN SUPPORT OF**
              **vs.**                    ) **PLAINTIFF TERRA INSURANCE**
16                                       ) **COMPANY'S OPPOSITION TO**
                                         ) **DEFENDANT'S MOTION FOR SUMMARY**
17 **NEW YORK LIFE INVESTMENT**         ) **JUDGMENT OR, IN THE ALTERNATIVE,**
   **MANAGEMENT LLC, and Does 1-10,**  ) **FOR PARTIAL SUMMARY JUDGMENT**
18                                       )
                                         ) Date:   May 6, 2010
19                     **Defendants.**   ) Time:   8:00 a.m.
                                         ) Courtroom 9, 19th Floor
20                                       ) Honorable William H. Alsup
                                         )
21 _____ )

22

23

24

25

26

27

28

LAW OFFICES
COTCHETT,
PITRE &
McCARTHY

# TABLE OF CONTENTS

PAGE No.

I.     INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    STATEMENT OF ISSUES TO BE DECIDED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.   STATEMENT OF RELEVANT FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    Terra's Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.    Terra Hired NYLIM as Its Investment Advisor in 2000. . . . . . . . . . . . . . . . . . . 3

    C.    NYLIM Knew Terra's Investment Goals and Risk Tolerance. . . . . . . . . . . . . . 4

    D.    NYLIM Forced Terra to Liquidate Its Third Party Mutual Funds. . . . . . . . . . . . 5

    E.    NYLIM Misled Terra Regarding Its Concerns About Mounting U.S. and Global Debt Problems and Its Impact on Terra's Decision Whether to Change Investment Strategy for Mutual Fund Holdings. . . . . . . . . . . . . . . . . . . . . . . . 6

    F.    At the November 2007 Board Meeting NYLIM Failed to Fully and Reasonably Disclose Its Analysis of Financial Markets and Its Widespread Ramifications in Response to Terra's Concerns. . . . . . . . . . . . . . . . . . . . . . . . 6

    G.    At the March 2008 Board Meeting, NYLIM Continues to Mislead Terra Concerning Its Observations About Factors in Credit and Financial Markets and Their Ramifications. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    H.    The Degradation of Terra's Equity Portfolio and the Termination of the Parties' Agreement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    I.     The Quality Tilt Program Was Developed by NYLIM and NYLIC in Collaboration Beginning in Late 2006. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    J.    NYLIM Concealed Critical Information Relating to Terra's Investment Decisions Despite Terra Raising the Same Concerns Over Monetary Debt. . . . . 11

    K.    Credit and Equity Markets Are Interlinked. . . . . . . . . . . . . . . . . . . . . . . . . . 12

IV.   LEGAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    A.    Legal Standard on a Motion for Summary Judgment. . . . . . . . . . . . . . . . . . . 13

    B.    NYLIM Owed a Fiduciary Duty to Terra. . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    C.    NYLIM Has Failed to Demonstrate that There Are No Triable Issues of Material Fact on Terra's Fraud, Negligent Misrepresentation and Breach of Fiduciary Duty Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        1.    NYLIM's Contention That it Had No Duty to Disclose Information that Was Material to Terra, Because Such Disclosure Would Involve Disclosure of Confidential Investment Strategies of Another Client, is Specious . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF TERRA INSURANCE COMPANY'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ; Case No. 09-CV-01609-WHA**    i

2.    Scienter. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

3.    The Materiality of the Misrepresentations and Omissions Is a Jury Question. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

4.    Terra Could Justifiably Rely on Opinions. . . . . . . . . . . . . . . . . . . . . . . 20

5.    There Are Material Disputed Facts Which Preclude Summary Judgment on the Issue of Causation.. . . . . . . . . . . . . . . . . . . . . . . . . . . 22

D.    NYLIM Has Failed to Demonstrate that There Are No Triable Issues of Material Fact on Terra's Breach of Contract and Implied Covenant Claims. . . . 23

E.    NYLIM Has Failed to Demonstrate that There Are No Triable Issues of Material Fact on Terra's Negligence Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

F.    There Is a Genuine Issue of Fact Regarding Terra's Punitive Damages Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

V.    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF TERRA INSURANCE COMPANY'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ; Case No. 09-CV-01609-WHA                    ii

1

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE Nos.</u>

2

## <u>CASES</u>

3
*Alliance Mortgage Co. v. Rothwell*
   10 Cal. 4th 1226 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

4

*Anderson v. Liberty Lobby, Inc.*
5   477 U.S. 242 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

6
*Barrett v. Bank of America*
   183 Cal.App.3d 1362 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
7

*Basic, Inc. v. Levison*
8   485 U.S. 224 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

9
*Bily v. Arthur Young & Co.*
   3 Cal.4th 370 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
10

*Blankenheim v. E.F. Hutton, Co., Inc.*
11   217 Cal.App.3d 1463 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

12
*Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC*
   162 Cal.App.4th 858 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
13

*Byrum v. Brand*
14   219 Cal.App.3d 926 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

15
*Celotex Corp. v. Cattrett*
   477 U.S. 317 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
16

*Charpentier v. Los Angeles Rams Football Co.*
17   75 Cal.App.4th 301 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

18
*Dyke v. Zaiser*
   80 Cal.App.2d 639 (1947). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
19

*Eisenbaum v. Western Energy Resources, Inc.*
20   218 Cal.App.3d 314 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

21
*Engalla v. Permanente Medical Group, Inc.*
   15 Cal.4th 951 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
22

*EPIS, Inc. v. Fid. & Guar. Life Ins. Co.*
23   156 F.Supp.2d 1116 (N.D. Cal. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

24
*Estate of Hammer*
   19 Cal.App.4th 1621 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
25

*Fox v. Pollack*
26   181 Cal.App.3d 954 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

27
*Gilberd v. Dean Witter Reynolds, Inc.*
   No. C-91-3254 1992 U.S. Dist. Lexis 12388 (N.D. Cal. Aug. 11, 1992). . . . . . . . . . . . 18

28

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF TERRA INSURANCE
COMPANY'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ; Case No. 09-CV-01609-WHA**          iii

*Giles v. General Motors Acceptance Corp.*
    494 F.3d 865 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga*
    175 Cal.App.4th 1306 ( 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Hoch v. Allied-Signal, Inc.*
    24 Cal.App.4th 48 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*In Re Arlen W. Hughes*
    Exchange Act Release No. 34-4048 (February 18, 1948). . . . . . . . . . . . . . . . . . . . . . . 19

*Ladd v. County of San Mateo*
    12 Cal.4th 913 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Mercer v. Elliott*
    208 Cal.App.2d 275 (1962). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells*
    86 Cal.App.4th 303 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Nolin v. National Convenience Stores, Inc.*
    95 Cal.App.3d 279 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

*Okun v. Morton*
    203 Cal.App.3d 805 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Persson v. Smart Inventions, Inc.*
    125 Cal.App.4th 1141 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 22

*Raven's Cove Townhomes, Inc. v. Knuppe Development Co.*
    114 Cal.App.3d 783 (1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*SEC v. Capital Gains Research Bureau, Inc.*
    375 U.S. 180 (1963). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Stokes v. Henson*
    217 Cal.App.3d 187 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*
    809 F.2d 626 (9th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Taylor v. Superior Court*
    24 Cal.3d 890 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Twomey v. Mitchum, Jones & Templeton, Inc.*
    262 Cal.App.2d 690 (1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Williams*
    441 F.3d 716 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Warren v. Merrill*
    143 Cal.App.4th 96 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF TERRA INSURANCE COMPANY'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ; Case No. 09-CV-01609-WHA**                                                         iv

*Wilke v. Coinway, Inc.*
  257 Cal.App.2d 126 (1967). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Wyatt v. Union Mortg. Co.*
  24 Cal.3d 773 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25


**STATUTES**

Civ. Code § 2332. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

Civ. Code § 3294 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Civ. Code § 3294(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Civ. Code § 3294(c)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Civ. Code § 3294(c)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Fed. R. Civ. P. 56(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Fed. R. Civ. P. 56(c)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13


**OTHER AUTHORITIES**

5 Witkin, *Summary of California Law*, Torts (10th ed. 2005). . . . . . . . . . . . . . . . . . . . . . . 18, 21

6 Witkin, *Summary of California Law*, Torts (10th ed. 2005). . . . . . . . . . . . . . . . . . . . . . . . 21

BAJI No. 12.32. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20

*California Jury Instructions – Civil* (CACI) (Spring 2010 ed.). . . . . . . . . . . . . . . . . . . . . . . . 14

Regulation of Investment Advisers, T. Lemke and G. Lins (2009). . . . . . . . . . . . . . . . . . . . . 17

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF TERRA INSURANCE COMPANY'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ; Case No. 09-CV-01609-WHA**  v

# I.    INTRODUCTION

This action arises from the fraudulent and deceptive conduct by Defendant New York Life Investment Management LLC ("NYLIM"), which served in the <u>fiduciary</u> capacity as Plaintiff Terra Insurance Company's ("Terra's") registered investment adviser.  The Complaint asserts seven causes of action against NYLIM: (1) fraudulent misrepresentation; (2) fraudulent concealment; (3) negligent misrepresentation; (4) breach of fiduciary duty; (5) breach of contract; (6) breach of implied covenant of good faith and fair dealing; and (7) negligence.

NYLIM has moved for summary judgment of each cause of action.  Unfortunately, having realized that its arguments required resolution of inherently fact-intensive questions ill-suited for summary judgment, NYLIM mischaracterizes Terra's claims and the evidence relevant to resolving them.

First, NYLIM asserts that: **(1) it had no legal duty to disclose the investment opinions or investment strategies of its parent, New York Life Insurance Company ("NYLIC"), or any other client, which were confidential; and that (2) it discharged its duty owed to Terra by – allegedly – supplying general information about the economy in 2007-2008.** *NYLIM misses the point*.

Terra does ***not*** contend that NYLIM had a duty to disclose confidential opinions held by other clients.  Rather, Terra contends that NYLIM, as its financial advisor, had a fiduciary duty to disclose all material information relevant to its advice, including any concerns or conclusions it had about existing market conditions.  Here, responding directly to specific questions raised by Terra management, NYLIM concealed its conclusion that financial and credit markets were acting "irrationally" and, instead, told Terra the exact opposite, i.e, that Terra should **increase** its holdings in NYLIM's proprietary mutual funds based on its analysis of market conditions.  Remarkably, at the same time, NYLIM was advising its parent, NYLIC, to divert its investable cash into traditionally safe and reliable U.S. Treasury bonds based on the **same** concerns raised by Terra. (Declaration of Niki Okcu, Ex. 7; Ex. 22 at 305:3-307:9 (Wendlant); Declaration of Travis Wall

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF TERRA INSURANCE COMPANY'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ; Case No. 09-CV-01609-WHA**                1

1   ("Wall Decl.") Ex. 59 at 4526-4529.)[1]

2       Moreover, while NYLIM now tries to distance itself from its parent, it secured Terra as a

3   client by touting its relationship with NYLIC and the extensive experience and research capabilities

4   it had in managing nearly $250 billion of assets, the vast majority were with NYLIC.  (Wall Decl.

5   Ex. 2; Ex. 7; Ex.16 at 51:16-19 (Elavia).)  Given its well-recognized fiduciary duties as a Registered

6   Investment Advisor, NYLIM's present claim that – as a matter of law – it had no obligation to

7   disclose concerns over a "full scale credit crisis" and "irrationality" in credit markets beginning in

8   February 2007, even after Terra raised the same concerns a few months later, borders on absurd.

9   (Wall Decl., Ex. 59 at 4522, 4526-4528.)

10      These facts state a classic claim for breach of fiduciary duty.  At a minimum, the nature of

11  the information disclosed to Terra and whether it would have been material to Terra's investment

12  decisions, are hotly-contested **factual** issues which cannot be resolved without weighing conflicting

13  evidence and assessments of credibility that would be inappropriate on a summary judgment.

14  Consequently, NYLIM's motion should be denied in its entirety.

15  **II.    STATEMENT OF ISSUES TO BE DECIDED**

16      Whether, under the circumstances presented, NYLIM had a duty as an investment advisor

17  to disclose information  that would have been material to Terra's investment decision in to hold –

18  and in fact, increase – its position in NYLIM proprietary mutual funds.

19  **III.   STATEMENT OF RELEVANT FACTS**

20      **A.    Terra's Background**

21      Terra is one of the oldest and most established professional liability insurers in the United

22  States offering professional liability coverage to engineering firms practicing in the geosciences and

23  civil engineering disciplines.  (Ex.8 at 12081.)  Terra is structured as a "risk retention group" under

24  Federal risk retention statutes, which means it is exclusively owned by its policyholders.  (Ex. 8 at

25  12081; Ex. 11 at 37:20-25 (Coduto).)  This is important to Terra's operating philosophy, because

26

27

28  [1]      Except as otherwise noted, all references to exhibits refer to exhibits attached to the
        Declaration of Niki Okcu.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF TERRA INSURANCE
COMPANY'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ; Case No. 09-CV-01609-WHA          2**

while Terra's goal is to remain profitable, it achieves that goal through devotion to the business needs of its owner/insureds. (Ex.11 at 121:23-122:1(Coduto).)

Terra policyholders pay premiums which are invested and then either used to pay claims, or returned to policyholders. (Ex. 8 at 12081; Ex. 11 at 37:20-25 (Coduto).) Terra's board is made up of seven directors; and all of the board members, with the exception of one part time member, Andrew Sargeant, are engineers. (Ex. 10 at 18:22-19:22 (Sargeant); Ex. 11 at 54:24-55:7 (Coduto).) Terra's Board uses the expert assistance of professional financial advisors to help manage its funds. (Ex. 11 at 311:16-23 (Coduto); Ex. 12 at 145:23-146:19 (Arditti); Ex. 14 at 175:6-21 (Witham); Ex. 18 at 118:15-119:19 (Longo); Ex. 19 at 44:21-45:3, 77:1-7 (Parrello).) Terra's investment guidelines can only be changed by the board. (Wall Decl., Ex. 76 at 53:13-54:19 (Witham).)

Terra is rated "A, Excellent" by A.M. Best Company and has achieved an implied Best rating of "A++, Superior" based on a Best Capital Adequacy Ratio analysis. This is the highest qualitative rating given by A.M. Best. (Ex. 9 at AMBT 052.)

**B.    Terra Hired NYLIM as Its Investment Advisor in 2000**

In 1989, Terra retained a small firm, Towneley Capital Management, to serve as its investment advisor. (Wall Decl., Ex. 1.) Wes McCain and Joan Sabella were Terra's portfolio managers. (Ex.11 at 69:1-17 (Coduto).) In 2000, Towneley was acquired by NYLIM. (Wall Decl., Ex. 2.) McCain and Sabella joined NYLIM as part of the acquisition. *Id.* McCain left NYLIM in 2004, while Sabella stayed on with the company. She was Terra's account manager until her illness in the Fall of 2008. (Ex.11 at 70:14-71: 22 (Coduto).)

NYLIM is an indirect, wholly-owned subsidiary of NYLIC. (Wall Decl., Ex. 60 at Terra 005348.) **By its own admission**, it is a premier institutional investment management firm that provides asset management and advisory services to a variety of clients, including to its affiliate parent company NYLIC. *Id; (see also* Wall Decl., Ex. 71.) The company ranks among the largest asset management firms in the United States. It delivers investment performance through a variety of products to both retail and institutional clients. (Wall Decl., Ex. 59 at NYLIM 4532.) "New York Life Investment Management LLC (NYLIM) and its affiliates are responsible for managing $249 billion of assets [one half of which is NYLIC's] which include money invested in [the

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF TERRA INSURANCE COMPANY'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ; Case No. 09-CV-01609-WHA                    3

1   company's] life insurance and fixed annuity products." (Ex. 7.) Over 50% of the assets managed

2   by NYLIM are as the benefit of its affiliate companies, including NYLIC and New York Life

3   Insurance and Annuity. (Ex. 16 at 51:16-19 (Elavia).)

4        As an investment advisor, NYLIM develops specific investment policies and objectives to

5   suit its clients' risk tolerance and investment needs. (Wall Decl., Ex. 60.) It also provides specific

6   investment strategies, created after assessing relative and absolute value within the market place.

7   *Id.* In pursuing a client's objectives, NYLIM assesses the market place and provides advice on what

8   to do for its client. *Id.*

9        In 2000, when NYLIM acquired Towneley, NYLIM asked Terra to hire it to serve as its new

10   advisor, by touting itself as **one of the largest and most successful firms in the country, with**

11   **unique expertise based on its experience and proprietary research and analytical methods**.

12         **As the dedicated asset management arm of New York Life Insurance Company**,
     NYLIM oversees MainStay Management, the investment adviser to the Mainstay
13     family of mutual funds, as well as McKay Shields, Madison Square Advisors, and
     Monitor Capital Advisors. NYLIM is committed to maintaining the excellence and
14     integrity of its asset management services, **while providing all the benefits and**
     **leverage of an institution with $117 billion assets under management**. (Emphasis
15     supplied.)

16   (Wall Decl., Ex. 2.) Specifically, NYLIM heavily promoted its ability to give investor clients a

17   highly successful **team approach** towards investment management, based on its bottom-up,

18   value-driven stock selection process and in-depth portfolio analysis. *Id.* NYLIM claimed that **its**

19   **global research capabilities** differentiated it from competitors and was a key factor in achieving

20   results for its clients. Based on these representations, Terra hired NYLIM. (Ex. 12 at 116:19-117:8

21   (Arditti); Ex. 14 at 170:12-173:4 (Witham).) The Investment Advisory Agreement ("Agreement")

22   Terra had with Towneley was then assigned to NYLIM. (Wall Decl., Ex. 2.)

23        **C.    NYLIM Knew Terra's Investment Goals and Risk Tolerance**

24        NYLIM acted as Terra's investment advisor over funds held in its custodial account, which

25   consisted of securities and cash, with authority to manage the funds and to make such purchases and

26   sales of securities as NYLIM deemed appropriate and consistent with Terra's stated investment

27   objectives. (Wall Decl., Exs. 1, 5 & 8.)

28

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

---

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF TERRA INSURANCE
COMPANY'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ; Case No. 09-CV-01609-WHA          4**

1    Terra's Investment Objective was the "Preservation of capital in nominal terms and interest

2 income" – consistent with its charter and obligations as an insurance company. (Wall Decl., Exs. 2

3 & 8.)   The Agreement set certain maximum limits on various types of investments, including

4 investments in equity-based mutual funds. *Id.*   Other permitted investments included corporate

5 bonds, municipal bonds, U.S. government securities, U.S. Treasuries, money-market funds, and U.S.

6 government agency fixed-interest bonds. *Id.*  The Agreement provided that NYLIM would receive

7 quarterly payments of fees based on the average fair market value of the fund.  *Id.*

8    From 2006 to 2008, approximately 80 to 85 percent of Terra's portfolio was invested in

9 fixed-income securities, cash and cash equivalents, while the remaining 15 to 20 percent or so of the

10 portfolio was invested in equity and balanced mutual funds owned by NYLIM. (Ex. 21 at 45:11-19

11 (DeJidas); Wall Decl., Exs. 9 & 14.)

12    **D.    NYLIM Forced Terra to Liquidate Its Third Party Mutual Funds**

13    As of December 1, 2005, approximately one-half of Terra's equity investments were in

14 Mainstay Mutual funds managed by NYLIM and approximately one-half of those investments were

15 in mutual funds managed by third parties. (Ex. 1 at Terra 8206; Wall Decl., Ex. 8.)

16    In 2005, NYLIM informed Terra that it could no longer offer its advice on assets invested

17 in third-party mutual funds, and that if Terra wanted NYLIM to continue on as its investment

18 advisor,  it would have to sell its third-party mutual funds.  (Wall Decl., Ex. 7; Ex. 11 at 137:24-

19 139:9 (Coduto).) Essentially, NYLIM forced Terra into a position where Terra had to sell its interest

20 in third-party mutual funds and make additional investments in NYLIM proprietary mutual funds.

21 (Ex. 11 at 141:24-142:6 (Coduto); Ex. 12 at 78:10-79:5 (Arditti); Ex. 14 at 214:18-215:25

22 (Witham); Ex. 18 at 75:13-77:23 (Longo); Ex. 19 at 46:15-47:3 (Parrello); and Ex. 20 at 36:8-17,

23 37:12-38:6 (Charles).)

24    On December 5, 2005, Terra signed new investment guidelines authorizing all of its equity

25 investments to be in Mainstay funds owned and managed by NYLIM. (Wall Decl., Ex. 8.)  The only

26 funds held by Terra from 2005 forward were funds, owned and managed by NYLIM.  (Wall Decl.,

27 Exs. 53 & 55.)  All of Terra's equity investments were in Mainstay funds until Terra directed

28 NYLIM to liquidate all mutual fund investments in November 2008.  *Id.*  **NYLIM, by its own**

LAW OFFICES
COTCHETT,
PITRE &
McCARTHY

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF TERRA INSURANCE COMPANY'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ; Case No. 09-CV-01609-WHA**          5

1  **admission, earned more money from managing Terra's investment in NYLIM-owned**

2  **proprietary mutual funds than third-party mutual funds.** (Ex. 25; Ex. 13 at 144:18-151:6 (Pai-

3  Panandiker); Ex. 27 at 122:13-23 (Chung).)

4        E.    **NYLIM Misled Terra Regarding Its Concerns About Mounting U.S. and Global Debt Problems and Its Impact on Terra's Decision Whether to Change**

5             **Investment Strategy for Mutual Fund Holdings**

6      In June 2007, Terra officers, including President and CEO David Coduto and Chief Financial

7  Officer Hal S. Arditti, visited with NYLIM and met with Sabella and another NYLIM representative,

8  Veda Pai-Panandiker, to discuss Terra's investment portfolio. (Ex. 11 at 184:23-185:25, 191:8-

9  192:2, 196:2-197:23, 198:13-200:8, 201:8-19, 204:8-205:19 (Coduto); Ex 12 at 103:4-13, 110:8-22,

10  111:23-115:9 (Arditti).)   Coduto and Arditti expressed Terra's increasing concerns about its

11  exposure from equity holdings given deteriorating conditions in the U.S. economy. *Id.*  Sabella and

12  Pai-Panandiker dismissed the concerns and told Terra to maintain its holdings. *Id.*   Terra would

13  later learn that NYLIM had serious concerns about financial and credit markets and the deteriorating

14  economic conditions dating back to 2006, even though it dismissed similar concerns raised by Terra.

15  ( Wall Decl., Ex 59 at NYLIM 4522; Ex.7.)

16        F.    **At the November 2007 Board Meeting NYLIM Failed to Fully and Reasonably Disclose Its Analysis of Financial Markets and Its Widespread Ramifications in**

17             **Response to Terra's Concerns**

18      On November 13, 2007, Terra held a board meeting, which was attended by NYLIM

19  representatives Sabella and Veda Pai-Panadiker. (Wall Decl., Ex. 16.)  Approximately one week

20  prior to a scheduled Terra board meeting to be attended by NYLIM representatives, Terra sent

21  NYLIM written discussion points on Terra's concerns about the economy. (Wall Decl., Exs. 12 & 13;

22  Ex. 11 at 200:10-201:7, 220:4-25 (Coduto).)  Terra provided a list of concerns to Ms. Sabella prior

23  to the board meeting, including the following: 1) National Debt 8.5 trillion; 2) Trade deficit = 800

24  BB; 3) Unfunded S[ocial] S[ecurity] benefits over next 15 years = 42 Trillion; 4) Prescription Drug

25  Benefits = 48 Trillion; 5) New Estimates of the Iraq war over next 10 years = 1.42 Trillion; 6)

26  Dollar at new lows against many foreign currencies like the Euro, Rupi, and Canadian Dollar to

27  name a few; 7) Cost of Oil; and 8) Record high prices for commodities.  In fact, Coduto had begun

28  expressing these concerns as early as June 2007.  (Ex. 11 at 184:23-185:25, 191:8-192:2, 196:2-

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

197:23, 198:13-200:8, 201:8-19, 204:8-205:19 (Coduto); Ex. 12 at 103:4-13, 110:8-22, 111:23-115:9 (Arditti).)  Further, at the October 2007 Terra shareholder meeting and the November 2007 board meeting, Coduto raised additional concerns including: 1) a bear market of epic proportions occurring between November 2007-2008; 2) an economic downturn; 3) failure of investment banks that purchased U.S. mortgage; 4) backed securities, including the U.K Bank Northern Rock; 5) failure of NetBank due to collateralized debt obligations; 6) concerns over debt issues and collateralized debt obligations in general; 7) massive world wide debt; 8) derivatives and securitization; and 9) cost of war.  (Ex. 6; Ex. 11 at 213:2-219:22, 229:9-230:17 (Coduto); Wall Decl., Exs. 13 & 16.)  All of the forgoing were shared with Ms. Sabella.  (Ex. 11 at 227:8-231:23 (Coduto).)  Terra would later learn that these concerns were similar to the concerns NYLIM had about a crisis in the financial and credit markets during the same time frame.  (Wall Decl., Ex. 59; Ex.7.)

Terra asked Sabella and Pai-Panandiker whether Terra should eliminate or materially reduce its equity portfolio given current economic conditions and then transfer the balance into cash or U.S. Treasuries for "an extended period of time until the financial markets and the overall economy stabilized."  (Wall Decl., Ex. 16;  Ex.11 at 227:15-20 (Coduto).)  Terra's proposed changes to its investment portfolio were based on and consistent with its investment objective, namely to preserve capital.  (Ex. 11 at 232:16-233:15 (Coduto); Ex. 17 at 50:22-51:16, 164:14-165:7 (Dunne); Ex.26 at 5.)

Terra asked for Sabella's recommendation; NYLIM advised Terra that "NYLIM market strategists felt the U.S. economy to be fundamentally sound and recommended against" selling its NYLIM managed mutual funds. (Wall Decl., Ex. 16; Ex. 11 at 231:1-17 (Coduto); Ex. 12 at 139:10-140:19 (Arditti); Ex. 17 at 90:10-91:2 (Dunne); Ex. 18 at 118:15-121:3, 124:15-125:3 (Longo); Ex. 19 at 66:17-68:16 (Parrello); Ex. 20 at 72:5-11, 72:21-74:3 (Charles); Ex. 21 at 61:15-22, 62:15-63:7, 70:3-14, 79:1-8 (DeJidas).)  Sabella promised to bring an expert economist to the next Terra board meeting to support her and NYLIM's statements that the economy was "fundamentally sound" and to further address the specific concerns of Coduto and board members.  (Ex. 11 at 280:11-281:22 (Coduto); Ex. 14 at 89:23-90:8 (Withiam); Ex. 17 at 90:20-91:2, 96:21-97:21, 137:3-20 (Dunne); Ex. 19 at 68:22-69:6 (Parrello); Ex. 20 at 75:9-18 (Charles); Ex. 21 at 63:25-64:4 (DeJidas).)  She

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF TERRA INSURANCE COMPANY'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ; Case No. 09-CV-01609-WHA     7**

then advised Terra to sell its NYLIM Mainstay international funds and replace them with NYLIM's MainStay ICAP International Funds, and also to purchase additional NYLIM-managed mutual funds.  (Ex. 12 at 141:13-143:14 (Arditti); Ex. 17 at 94:23-95:23, 96:21-97:13 (Dunne); Ex. 21 at 66:18-67:13 (DeJidas).)  Terra followed the advice of its professional investment advisor. *Id.*

### G.     At the March 2008 Board Meeting, NYLIM Continues to Mislead Terra Concerning Its Observations About Factors in Credit and Financial Markets and Their Ramifications

In March 2008, Terra held a board meeting.  (Wall Dec., Exh. 30.)  Two NYLIM representatives attended the meeting, Sabella and William Knapp.  *Id.*  Sabella brought Knapp with her to present the board with his economic analysis and forecasts.  Knapp was described as an economist, with a Ph.D. in Economics, the managing director of NYLIM's Investor's Group, and the firmwide Investment Strategist. (Ex. 11 at 279:5-14 (Coduto); Ex. 20 at 104:16-23 (Charles).) Terra again reiterated its concerns about its equity holdings.  (Wall Decl., Ex. 30; Ex.11 at 288:10-24 (Coduto); Ex. 17 at 150:15-151:2 (Dunne).)

**In response, Knapp gave a standard one-size-fits-all presentation about the 2008 economic forecast and market outlook, representing that it was NYLIM's belief that "the U.S. economy is fundamentally sound" and that "everyone should buy houses."** (Wall Decl., Ex. 28; Ex. 11 at 292:17-293:25 (Coduto); Ex. 12 at 186:16-22, 189:11-190:23 (Arditti); Ex. 17 at 158:24-159:8, 161:12-25 (Dunne); Ex. 18 at 166:4-167:14, 187:12-188:17 (Longo); Ex. 19 at 94:1-95:10 (Parrello); Ex. 20 at 105:19-106:11, 123:2-8 (Charles); Ex. 21 at 102:14-103:10 (DeJidas).) Mr. Knapp's presentation, while optimistic about the future of the economy, did not provide the specific guidance Terra had requested from NYLIM based on NYLIM's experience and capabilities regarding certain macroeconomic factors that had deviated from historical norms.  (Ex. 11 at 289:15-20 (Coduto).)

NYLIM also presented Terra with similar written reports supporting NYLIM's purported "Market Outlook," prepared by Knapp and Tony Elavia, the Chief Investment Officer and Senior Managing Director of NYLIM's Equity Investor's Group which included written projections that S&P would grow by 7 to 10 percent in 2008.  (Wall Decl., Ex. 26 at Terra 007944-50; and Exs. 27 & 28.)  (*See also* Ex. 11 at 293:22-25 (Coduto).)  Based on these oral and written reports, NYLIM

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF TERRA INSURANCE COMPANY'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ; Case No. 09-CV-01609-WHA        8**

directed Terra to maintain its current equity position.  (Ex. 11 at 286:24-287:5 (Coduto); Ex. 12 at 190:24-191:4 (Arditti); Ex. 17 at 157:6-15 (Dunne); Ex. 19 at 105:17-106:19 (Parrello); Ex. 20 at 103:22-104:7 (Charles); Ex. 21at 106:3-107:18 (DeJidas).)  Terra again followed NYLIM's advice and recommendation.  (Wall Decl., Ex. 30; Ex. 11at 293:15-25 (Coduto); Ex. 17 at 165:21-166:4 (Dunne).)

### H.   The Degradation of Terra's Equity Portfolio and the Termination of the Parties' Agreement

On October 31, 2007, the market value of the mutual funds held by Terra was approximately $4.97 million.  (Wall Decl., Ex. 21.)  In November and December 2007, based on the advice from NYLIM representatives, Terra increased its net position in the mutual funds by approximately $0.64 million to $5.61 million.  (Ex. 12 at 141:13-143:14 (Arditti); Ex. 17 at 94:23-95:23, 96:21-97:13 (Dunne); Ex. 21 at 66:18-67:13 (DeJidas).)  As of March 31, 2008, the market value of the mutual funds held by Terra was approximately $4.63 million.  (Wall Decl., Exh. 27.)  By September 2008, however, the value of Terra's equity holdings in the NYLIM owned and managed mutual funds had greatly deteriorated.  Terra asked for NYLIM's guidance for preserving what remained of its assets.  NYLIM merely responded that it would do whatever Terra wanted it to do. (Ex. 11 at 319:17-320:5 (Coduto).)  In a subsequent call, NYLIM's representative said, **"At any given time, we give it our best guess."** (Ex. 11 at 316:2-24 (Coduto); Wall Decl., Ex. 47.)  On October 20, 2008, Terra finally sent a letter and reiterated its request for help.  NYLIM didn't respond at all.  (Wall Decl., Ex. 51.)

A month later, on November 10, 2008, Terra contacted NYLIM and directed it to liquidate its mutual fund holdings immediately with the proceeds to be maintained as cash, resulting in losses in excess of $2 million.  (Wall Decl., Ex. 53; Ex. 26 at Report Ex. 5a (Revised).)  The next day amazingly, NYLIM sent Terra a letter and gave notice of NYLIM's decision to terminate the Agreement.  (Wall Decl., Ex. 54.)  On November 13, 2008, Terra liquidated all of its mutual funds and received proceeds of approximately $3.1 million.  (Wall Decl., Ex. 55.)

### I.   The Quality Tilt Program Was Developed by NYLIM and NYLIC in Collaboration Beginning in Late 2006

Beginning in the fall of 2006, **Gary Wendlandt, NYLIM Chairman and NYLIC Chief Investment Officer**, began expressing certain concerns about the financial markets.  (Ex. 22 at

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF TERRA INSURANCE COMPANY'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ; Case No. 09-CV-01609-WHA                    9

230:17-232:19 (Wendlandt).)  In his view, there was too much easy credit available to fund projects like leveraged buyouts for residential real estate construction. *Id.* Wendlant's concern was that if companies continued to use increased amounts of debt for investment purposes, it would pose a problem downstream for financial and credit markets. *Id.* Wendlandt was particularly concerned that if companies continued to burden themselves with increased amounts of debt on their balance sheets, they were simultaneously increasing their risk of default on the bonds they issued, which in turn might result in bankruptcy, and in turn cause ramifications.  (Ex. 2; Ex. 22 at 233:7-234:11 (Wendlandt).)

In response, Wendlandt started devising a strategy to place more of NYLIC's investments in traditionally safe, reliable U.S. Treasury bonds and less in corporate debt.  Wendlandt, would later call this strategy Quality Tilt, because it would position the company away from what they perceived as an **unhealthy level of risk**.  (Ex. 7.)  On January 7, 2007, Wendlandt sent Arthur Seter, Senior Vice President and Deputy Chief Investment Officer at NYLIC, a memo regarding the Quality Tilt Program.  (Ex. 3.)  This memo contained an analysis of the financial markets and the Quality Tilt Program.  (Ex. 22 at 250:13-251:8 (Wendlandt).)  In the memo, Wendlandt wrote: "financial markets appear to be moving towards the extremes of optimism with deteriorating risk/reward trade-offs for additional investors."  He concluded that "this was unlikely to have a happy ending."  *Id.*

Wendlandt subsequently sent an email and shared this memo with Tom McArdle, head of Portfolio Consulting Group at NYLIM. (Ex. 4; Ex. 22 at 252:3-14 (Wendlandt).)  Wendlandt shared the email with other individuals at NYLIM, including Linda Livornasi (Managing Director, Portfolio Analysis Group), Richard Schwartz (Senior Vice President of NYLIM); Jae Yoon (head of NYLIM's Investment Consulting Group for NYLIM Mutual Funds & Analytical Work).  (Ex. 4; Ex. 22 at 252:15-256:11 (Wendlandt).)

On January 11, 2007, the President and CEO of NYLIM sent a memo to Seter and Wendlandt and complimented them for the Quality Tilt Program and described the strategy **as "brilliant" and "prescient."**  (Ex. 5; Ex. 22 at 256:19-258:13 (Wendlandt).)  Jae Yoon, head of NYLIM's Investment Consulting Group, commented that Wendlant should "start the program."  (Ex. 22 at 258:14-25 (Wendlandt).) By January 2007, the highest levels of NYLIM officers and directors,

LAW OFFICES
COTCHETT,
PITRE &
McCARTHY

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF TERRA INSURANCE COMPANY'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ; Case No. 09-CV-01609-WHA**          10

including the president and CEO of NYLIM and head of its Investment Consulting Group, were

aware of and supported the Quality Tilt Program.  (Ex. 22 at 259:8-17 (Wendlandt).)

    J.    **NYLIM Concealed Critical Information Relating to Terra's Investment Decisions Despite Terra Raising the Same Concerns Over Monetary Debt**

    The Quality Tilt Program, as described in NYLICs' Annual Report 2007, highlights a

number of adverse credit and financial market conditions.  In the Annual Report, Wendlandt

discussed a number of credit market observations he made prior to the enactment of the Quality Tilt

Program in 2007, including the following:

> Over the last few years, loan issuance—for real estate, home equity, consumer credit, leveraged buyout activity, and so on—skyrocketed, while underwriting standards for approving loans weakened substantially.
> ***
> In the rush to originate loans, proper underwriting procedures were often sidestepped, meaning many loans were funded without income and asset verification or other critical documentation.
> ***
> These bad lending practices were exacerbated by the rise of loan securitization— the repackaging of loans into "trading" vehicles, such as mortgage backed securities and collateralized debt obligations ("CDOs") … [which allowed] lenders to quickly package and resell loans in the securitization market, essentially leaving them with … little reason to pay careful attention to the quality of the loans they were originating.
> ***
> Credit market cycles run a predictable course, beginning with irrational optimism and ending with large defaults and write-offs. New York Life has, since its founding, witnessed many of these cycles, and as a result of this long experience, we know better than to get caught up in the frenzy.
> ***
> Based on our belief that the markets were acting irrationally, in February 2007, New York Life management approved a proposal to divert a portion of the Company's investable cash flow from our normal credit market investments into U.S. Treasurys.

(Wall Decl. Ex. 59 at NYLIM 4526-4527.)  These concerns and observations were similar to those

raised by Coduto about the financial and credit markets at or about the same time.  See supra pg 6-7.

    **In February 2008,** NYLIM publicly admitted that as early as 2006, due to concerns about

economic trends, including the financial and credit markets, it advised its parent company, NYLIC,

to divert a portion of its own assets into U.S. Treasury bonds based on these concerns:

> New York Life Investment Management LLC (NYLIM)  and its affiliates are responsible for managing $249 billion of assets, which includes the money invested in our life insurance and fixed annuity products.
>
> Throughout 2006 and early 2007, the investment experts at NYLIM noted several trends suggesting the prices of most debt securities — including corporate bonds,

which typically represent the lion's share of New York Life's investment portfolio — did not adequately reflect the degree of risk in the market. In response, NYLIM placed more of the Company's investments in traditionally safe, reliable U.S. Treasury bonds and less in corporate debt — despite knowing that the move could result in a lower investment yields. Gary Wendlandt, New York Life's Vice Chairman and Chief Investment Officer, called the subsequent move a "quality tilt," because it would position the Company away from what they perceived as an unhealthy level of risk. "At a point when you are no longer being rewarded adequately for the risks of a particular investment, you get out. **We subscribe to the idea that what you don't own can't hurt you,"** Wendlandt says.

(Ex. 7.)  Despite the fact that Terra had raised the **same** concerns, during the same time period, NYLIM and its senior investment officers never advised Terra about its conclusions, its assessment of factors in financial and credit markets, or the Quality Tilt strategy.  Rather, NYLIM failed to disclose critical facts and information and advised Terra to maintain and increase its equity holdings given NYLIM's supposed positive outlook on the economy. (Ex. 12 at 141:13-143:14 (Arditti); Ex. 17 at 94:23-95:23, 96:21-97:13 (Dunne); Ex. 21at 66:18-67:13 (DeJidas).)

## K.    Credit and Equity Markets Are Interlinked

NYLIM contends that knowledge of the Quality Tilt Program would be **immaterial** in a choice to modify the allocation between equities and fixed income because the Program was limited to certain types of fixed income securities, U.S. Treasuries and Corporate Bonds, as opposed to equities.  NYLIM argues that factors affecting the equity and fixed income markets are not the same, so there is not a strong relationship between the price movements of equities and bonds. NYLIM contends there was no duty to disclose the strategy behind the Quality Tilt Program, or its underpinnings.  Simply put, NYLIM is wrong.

Credit and equity markets are interlinked.  Many of the same economic factors underlying the credit crisis were relevant to both equity and fixed income investments, as the relevant economic indices show.  Corporate earnings affect stock and bond prices.  Corporations generally raise cash to invest in long-term assets in two primary ways—by issuing equity or by issuing debt.  (Ex. 24 at 5-8.)  Equity consists largely of common stock; debt, on the other hand, can take many forms, but generally represents a creditor loan.  *Id.*  Both common stock and corporate bonds represent contractual claims to the future cash flows generated by corporate assets.  *Id.*  Although they have dissimilar payout structures due to varying risk exposures and expected returns, at their core, their

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF TERRA INSURANCE COMPANY'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ; Case No. 09-CV-01609-WHA**          12

1  market prices are determined by a commonality: investors' perception of corporate asset value. *Id.*

2  Consequently, given their ties to the underlying corporate assets, there is a correlation between high-

3  grade corporate bonds and large stocks, and hence a link between equity and credit markets. *Id.*

4  Thus, NYLIM's concerns relating to the credit markets are material to equity markets in general, and

5  validate the concerns expressed by Terra.

6  **IV.   LEGAL ARGUMENT**

7       **A.    Legal Standard on a Motion for Summary Judgment**

8       The Court can only grant summary judgment "if the pleadings, the discovery and disclosure

9  materials on file, and any affidavits show that there is no genuine issue as to any material fact and

10 that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).  Material facts

11 are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S.

12 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a

13 reasonable jury to return a verdict for the nonmoving party.  *Id.*

14      The party moving for summary judgment bears the initial burden of identifying those

15 portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue

16 of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986).  In judging evidence at the

17 summary judgment stage, the Court does not make credibility determinations or weigh conflicting

18 evidence, and draws all inferences in the light most favorable to the nonmoving party.  *See T.W.*

19 *Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987).

20 Similarly, all factual controversies that arise due to the parties' submission of contrary evidentiary

21 facts are resolved in favor of the nonmoving party. *See Giles v. General Motors Acceptance Corp.*,

22 494 F.3d 865, 872 (9th Cir. 2007).  None of the requirements of Rule 56(c) are satisfied here, and

23 Tera respectfully requests that the Court deny NYLIM's Motion in its entirety.

24      **B.    NYLIM Owed a Fiduciary Duty to Terra**

25      It is undisputed that NYLIM had a fiduciary duty to Terra.  A fiduciary relationship "may

26 be said to exist whenever trust and confidence is reposed by one person in the integrity and fidelity

27 of another." *Eisenbaum v. Western Energy Resources, Inc.*, 218 Cal.App.3d 314, 322 (1990).  As

28 NYLIM admits, an investment advisor owes a fiduciary duty to its client. Def. Brief at 13:3-5 citing

LAW OFFICES
COTCHETT,
PITRE &
McCARTHY

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF TERRA INSURANCE COMPANY'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ; Case No. 09-CV-01609-WHA          13**

1   *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 191 (1963); *see also United States v.*

2   *Williams*, 441 F.3d 716, 724 (9th Cir. 2006); *Byrum v. Brand*, 219 Cal.App.3d 926 (1990).

3        A fiduciary's duties include those of honesty and loyalty. *Williams*, 441 F.3d at 724. The

4   duty of loyalty is one of undivided loyalty. *California Jury Instructions – Civil* (CACI) 4102

5   (Spring 2010 ed.). A fiduciary also must act with utmost good faith. *Id.* at 4100. NYLIM must also

6   put Terra's interests ahead of its own interests. *See Warren v. Merrill*, 143 Cal.App.4th 96, 108-109

7   (2006). NYLIM focuses on the fiduciary duties it owes to NYLIC, yet ignores the same duties it

8   owed to Terra. This is symptomatic of the manner in which it did business, and is fatal to its

9   argument.

10    **C.**    **NYLIM Has Failed to Demonstrate that There Are No Triable Issues of Material Fact on Terra's Fraud, Negligent Misrepresentation and Breach of**

11            **Fiduciary Duty Claims**

12        Under California law, the tort of intentional misrepresentation based fraud or deceit requires

13   proof of the following elements: "(a) misrepresentation **(false representation, concealment, or**

14   **nondisclosure);** (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance;

15   (d) justifiable reliance; and (e) resulting damage." *Engalla v. Permanente Medical Group, Inc*., 15

16   Cal.4th 951, 974 (1997) (emphasis added). A claim for negligent misrepresentation requires all the

17   same elements with the exception of scienter. *Fox v. Pollack*, 181 Cal.App.3d 954, 962 (1986).

18        NYLIM has failed to demonstrate that there are no triable issues of fact as to Terra's fraud,

19   negligent misrepresentation, and breach of fiduciary duty claims. **To the contrary,** the record is

20   replete with evidence that NYLIM made material misrepresentations and omissions to Terra

21   regarding its own conclusions about credit and financial markets, which were raised by Terra, and

22   that NYLIM failed to disclose that a shift from risky investments into safe U.S. Treasury bonds was

23   an asset allocation strategy NYLIM advocated due to these concerns. (Ex. 7; Wall Decl., Ex. 59.)

24   Given that Terra had **contemporaneously raised similar concern and proposed a shift out of even**

25   **riskier securities** (i.e., equities) into similarly safe investments (e.g., U.S. Treasury securities), this

26   information was material to Terra's investment decision and should have been disclosed. Each Terra

27   board member testified that this information was material. (Ex.17 at 202;16-204;14 (Dunne); Ex.

28

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

18 at 224:15-226:12, 235:17-236:5 (Longo); Ex. 20 at 173:6-174:4 (Charles); Ex. 21 at 168:3-172:1 (DeJidas).)

NYLIM argues that it never promised to provide information about NYLIC's investments or its views on the economy, citing to the Agreement between Terra and NYLIM.  Def. Brief at 13:26-28.  NYLIM defines its duties too narrowly.  The issue is not whether NYLIM had an obligation to disclose NYLIC's investments or investment strategies, the issue is whether there were material facts or information of which NYLIM was aware, which required disclosure.  As a fiduciary, NYLIM had the duty to disclose all material information when advising Terra about its investments.  *See Twomey v. Mitchum, Jones & Templeton, Inc.*, 262 Cal.App.2d 690, 709-715 (1968).  A fiduciary who has a conflict of interest or fails to disclose all facts breaches its fiduciary duty.  *See e.g. Raven's Cove Townhomes, Inc. v. Knuppe Development Co.,* 114 Cal.App.3d 783, 799 (1981) ("Thus, a developer and his agents and employees who also serve as directors of an association, like the instant one, may not make decisions for the Association that benefit their own interests at the expense of the association and its members."); *Estate of Hammer*, 19 Cal.App.4th 1621, 1638 (1993) (executor of estate is fiduciary and has duty to disclose all the facts and to refrain from taking an unfair advantage of the beneficiaries).

In this case, Terra contends that NYLIM had an obligation to tell Terra of its assessment that the "markets were acting irrationally," that it believed that it was an "unfavorable market environment," and that it believed that the prudent course was to withdraw from the equity markets and invest instead in cash or cash equivalents.  Therefore, there are clearly material facts in dispute precluding summary judgment on the fraudulent misrepresentation, concealment, negligent misrepresentation and breach of fiduciary duty claims.

          **1.**    **NYLIM's Contention That it Had No Duty to Disclose Information that Was Material to Terra, Because Such Disclosure Would Involve Disclosure of Confidential Investment Strategies of Another Client, is Specious**

NYLIM argues that it could not provide information about the Quality Tilt Program to Terra because such disclosure would have resulted in the disclosure of confidential investment opinions or strategies of its parent.  This argument is flawed on many levels.  First, Terra's contention **is not**

that NYLIM engaged in wrongful or deceptive conduct because it failed to disclose confidential investment strategies of its parent or the specifics of the Quality Tilt Program.  Rather, Terra contends that NYLIM acted wrongfully because it failed to provide the factual underpinnings of a change in investment strategy from certain bond investments to safe liquid U.S. Treasuries, due to concerns over a "full scale credit crisis" and "irrationality" in credit markets beginning in February 2007 (Wall Decl., Ex. 59 at Terra 4522, 4526-4528.)  NYLIM cannot seriously argue that its assessment of the financial and credit markets and its opinions about what a prudent investor should do based on those concerns constitutes confidential information.  In fact, this is the exact type of information NYLIM was required to furnish as an investment advisor.  Moreover, NYLIM could have made a disclosure to Terra without going into extensive detail.  The disclosure could have simply been that adverse market conditions were driving certain investors, including NYLIC, to partially and temporarily rebalance their credit portfolio, in favor of higher U.S. Treasuries, but that their outlook about the equities was unchanged. (Ex. 23 at 8.)  This information should have been disclosed in November 2007, more than six months after the Quality Tilt Program was implemented.

Moreover, the Quality Tilt Program was made public as early as February 2008.  (Ex. 7.)  The 2007 New York Life Annual Report published in March 2008 contained extensive information and disclosures about the program.  (Wall Decl., Ex 59 at Terra 4527-4528.  Thus, by the March 2008 Terra board meeting, the Quality Tilt Program and the market analysis behind the Program was out in the open and NYLIM cannot claim that it was proprietary or confidential.  NYLIM  relies upon *Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC*, 162 Cal.App.4th 858, 888 (2008) to support the proposition that an agent has an obligation to maintain the confidences of its principal. *Blickman*, however, does not support Defendant's position. *Blickman* involved a lessee who claimed that the lessor owed him a duty, after the lease was signed, to disclose information about the lessor's principal's financial condition. *Id.* at 855.  The court rejected this claim, finding that the lessor in the case did *not* owe a fiduciary duty to the lessee (and thus owed no duty to disclose), while it *did* owe a duty to its principal to maintain its confidences. *Id.* at 872-88.  In the instant case, however, it is undisputed that NYLIM owed a fiduciary duty to Terra, and thus *Blickman* is distinguishable.

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF TERRA INSURANCE COMPANY'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ; Case No. 09-CV-01609-WHA**          16

1   NYLIM also argues that it had no obligation to provide information about the Quality Tilt

2   Program because the Program was developed by NYLIC, and not NYLIM.  The evidence in the

3   record belies this contention.  The Quality Tilt Program was not devised in isolation by NYLIC.

4   (Ex. 22 at 259:8-17 (Wendlandt).) Rather, the concept was created by an individual, Wendlandt, who

5   held significant positions at both NYLIC and NYLIM, and developed in collaboration with high

6   level officers and analysts at NYLIM. *Id.*  (See also Ex. 15 at 65:24-66:10 (McArdle).) Wendlandt

7   shared his research, analysis and opinions about the Program with individuals at NYLIM, including

8   with its highest level officers and managing directors, and sought their input and approval prior to

9   moving forward with implementation of the Program. *Id.*  NYLIM provided supporting information

10  to Wendlandt and Seter; there was regular communication between Wendlandt, Sutter and NYLIM

11  representatives including McCardle (Ex. 15 at 66:20-70:8 (McArdle.).  NYLIM's contributions led

12  to the development of the Quality Tilt Program.  (*Id.*) Thus, NYLIM by virtue of having

13  Mr. Wendlendt as its Chairman and by virtue of the fact that its highest level employees and

14  executives had knowledge of the Program; had knowledge of the research and reasons behind the

15  Program; and provided input and advice on the Program; NYLIM was obligated as a fiduciary to

16  make disclosures to Terra that were material to Terra's investment decisions.  As discussed below

17  in more detail, the knowledge of NYLIM's agents are imputed to NYLIM.  *See* Civil Code § 2332.

18         Finally, to the extent there was any conflict between any obligations NYLIM owed to

19  NYLIC and Terra, this conflict was self imposed and voluntarily assumed by NYLIM.  The benefit

20  NYLIM gained from fees and revenues it earned from managing Terra's portfolio was offset by its

21  duty to disclose.  As a fiduciary, "... and advisor has an affirmative duty of utmost good faith to act

22  solely in the best interests of the client and to make full and fair disclosure of all material facts,

23  particularly  where the adviser's interest's may conflict with the clients."  Regulation of Investment

24  Advisers, T. Lemke and G. Lins (2009), at p. 169.  Thus, NYLIM is not excused from its fiduciary

25  obligations because it chose to place itself in a position of potential conflict.

26              **2.     Scienter**

27         NYLIM argues that since Sabella and Knapp are the only individuals who made any direct

28  misrepresentations to Terra, there can be no evidence of scienter because there is no evidence that

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF TERRA INSURANCE
COMPANY'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ; Case No. 09-CV-01609-WHA**          17

1   they had ever heard of Quality Tilt Program.  Def. Brief at 18:5-12.  This argument has no merit.

2   It is well known that a  corporation can only act through its officers and employees and any act or

3   omission of an officer or employee within the scope of employment is in law the act or omission of

4   the corporation.  BAJI No. 12.32; 5 Witkin Summary of Cal. Law (10th ed. 2005) Torts, §§ 32, 33.

5   Common agency principals hold that knowledge of any agent of a corporation is imputed to the other

6   agents and principals.  *See* Civil Code § 2332.  Here, it is undisputed that the highest levels of

7   NYLIM officers and directors, including the President and CEO of NYLIM and head of its

8   Investment Consulting Group, were aware of and supported the Quality Tilt Program.  (Ex. 22 at

9   259:8-17 (Wendlandt).)  Furthermore, the Chairman of its board was the architect behind the

10  Program.  (Ex. 15 at 65:24-66:10 (McArdle).)  Thus, their knowledge is imputed to NYLIM, and it

11  is immaterial whether Sabella and Knapp knew, because Terra only seeks to hold NYLIM liable.  It

12  cannot be over-emphasized that NYLIM was the Registered Investment Advisor under contract with

13  Terra.

14          A similar argument was rejected by Judge Thelton Henderson in *Gilberd v. Dean Witter*

15  *Reynolds, Inc.*, No. C-91-3254 1992 U.S. Dist. Lexis 12388 (N.D. Cal. Aug. 11, 1992).  In *Gilberd*,

16  the plaintiff gave up his job to accept an offer by Dean Witter.  Unbeknownst to the Dean Witter

17  employees who made the offer to plaintiff, other officers of Dean Witter had decided to reorganize

18  the company and eliminate the position.  *Id*. at *2.  Dean Witter contended that since none of its

19  employees who spoke with the plaintiff had any knowledge of or information that the position was

20  going to be eliminated, no negligent misrepresentations were made.  *Id.* at *11-12.  The court

21  disagreed, finding that the issue was whether Dean Witter, not the individual employees, made the

22  misrepresentation to plaintiff, and concluded that Dean Witter had made the misrepresentation:

23          In the present case, **knowledge of the impending reorganization was intentionally
            kept secret within the company. Most Dean Witter employees, including those**

24          **who hired plaintiff, were in the dark. Under agency theory, the statements of the
            agents who hired plaintiff could be imputed to the Dean Witter officers who**

25          **made the reorganization decision. Likewise, the knowledge of the officers who
            decided to eliminate plaintiff's position could be imputed to the agents who**

26          **hired plaintiff.** Whether those agents ought to have communicated with one another
            about the impended reorganization is a material fact in dispute which obviously

27          requires a jury. **Summary judgment is therefore DENIED**.

28  *Id.* at *12-13 (emphasis added); *see also Barrett v. Bank of America*, 183 Cal.App.3d 1362, 1370

LAW OFFICES
COTCHETT,
PITRE &
McCARTHY

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF TERRA INSURANCE
COMPANY'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ; Case No. 09-CV-01609-WHA          18

(1986) ("In fraud cases, a principal may be liable where he intentionally misinforms or withholds information from the agent and the agent thereupon innocently misrepresents.").

Accordingly, there are material facts in dispute regarding scienter, which preclude summary judgment on the misrepresentation, concealment, negligent misrepresentations and breach of fiduciary duty claims.

### 3.   The Materiality of the Misrepresentations and Omissions Is a Jury Question

California courts assess materiality as an inherently factual issue, from that perspective of a "reasonable person":

> [R]eliance upon a fraudulent misrepresentation is not justifiable unless the matter misrepresented is material. . . . The matter is material if . . . a reasonable [person] would attach importance to its existence or nonexistence. . . . But materiality is a jury question, and a 'court may [only] withdraw the case from the jury if the fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it.'

*Charpentier v. Los Angeles Rams Football Co.*, 75 Cal.App.4th 301, 312-313 (1999) (quoting Restatement (Second) of Torts § 538) (emphasis added); *see also Okun v. Morton*, 203 Cal.App.3d 805, 828 (1988) ("A misrepresentation of fact is material if it induced the plaintiff to alter his position to his detriment."). Additionally, according to the California Jury Instruction "[a] [fact/promise] is also important if the person who [represents/makes] it knows that the person to whom the [representation/promise] is made is likely to be influenced by it even if a reasonable person would not." *California Jury Instructions – Civil* (CACI) 1905 (Spring 2010 ed.). Applying these standards to this case, **facts are material if a reasonable investor would consider them to be important.** *See Basic, Inc. v. Levison*, 485 U.S. 224, 240 (1998) ("As we clarify today, materiality depnds on the significance the reasonable investor would place on the withheld or misrepresented information.); *Persson v. Smart Inventions, Inc.*, 125 Cal.App.4th 1141, 1163 (2005) ("[A] face is material . . . 'if there is a substantial likelihood that, under all the circumstances, a reasonable investor would consider it important in reaching an investment decision.'"); *see also In Re Arlen W. Hughes*, Exchange Act Release No. 34-4048 (February 18, 1948).

Here, NYLIM made material misrepresentations and omissions to Terra that any other reasonable investor in Terra's position would consider important. A reasonable investor would find

LAW OFFICES
COTCHETT,
PITRE &
McCARTHY

1  it important to know that its financial advisor, to whom it pays money for financial advice regarding

2  market conditions and who serves as a fiduciary, believed that the "markets were acting irrationally,"

3  believed that it was an "unfavorable market environment," and believed that a prudent course was

4  reallocate some portion of their investment portfolio and invest instead in cash or cash equivalents.

5  Likewise, a reasonable investor would find it important not to be misled by its own financial advisor

6  when it specifically seeks advice on market conditions and specifically queries whether it should

7  convert its assets to a safer investment.  **In fact, each Terra board member testified that they**

8  **viewed the market concerns, expressed by NYLIM, which formed the basis for the Quality Tilt**

9  **program, to be material.**  (Ex. 17 at 202:16-204:14 (Dunne); Ex. 18 at 224:15-226:12, 235:17-

10  236:5 (Longo); Ex. 20 at 173:6-174:4 (Charles); Ex. 21 at 168:3-172:1 (DeJidas).)

11       Thus, this information was material and should have been disclosed to Terra.  The disclosure

12  did not have to be detailed or extensive, it could have simply been in the form of an acknowledgment

13  that adverse market conditions were driving certain investors, including NYLIC, to partially and

14  temporarily reallocate their portfolios in favor of higher U.S. Treasuries, but that their outlook about

15  the equities was unchanged.  Consequently, there are material facts in dispute precluding summary

16  judgment on the misrepresentation, concealment, negligent misrepresentation, and breach of

17  fiduciary duty claims.

18          **4.**      **Terra Could Justifiably Rely on Opinions**

19       NYLIM incorrectly argues, relying on *Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells*,

20  86 Cal.App.4th 303 (2000) that: "Opinions about the economy or forecasts about future economic

21  performance cannot support a claim for intentional misrepresentation."  Def. Brief at 19.  NYLIM,

22  however, omits from its brief the key language from *Neu-Visions*, which is applicable to this case:

> It is also clear, as emphasized by plaintiffs, that exceptions exist when one party
> states an opinion as a fact, or "when one party possesses [or holds [himself] [herself]
> out as possessing] superior knowledge or special information regarding the subject
> of a representation, and the other party is so situated that [he] [she] may reasonably
> rely upon such supposed superior knowledge or special information, a representation
> made by the party possessing [or holding [himself] [herself] out as possessing] such
> knowledge or information will be treated as a representation of fact although if made
> by any other person it might be regarded as an expression of opinion."

*Neu-Visions*, 86 Cal.App.4th at 308 citing BAJI No. 12.32 (alterations in original); *see also Bily v.*



LAW OFFICES
COTCHETT,
PITRE &
McCARTHY

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF TERRA INSURANCE
COMPANY'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ; Case No. 09-CV-01609-WHA    20

1   *Arthur Young & Co.*, 3 Cal.4th 370, 408 (1992); *Mercer v. Elliott*, 208 Cal.App.2d 275, 280 (1962);

2   5 Witkin, Summary of California Law, Torts §§ 775, 777 (10th ed. 1995).

3       In *Dyke v. Zaiser*, 80 Cal.App.2d 639 (1947), the defendant, Zaiser, made representations to

4   the plaintiff about the past income of his business and expressed his opinion about anticipated future

5   income to induce the plaintiff to lease his store. At the time, Zaiser knew about imminent events

6   which would be adverse to the business. The court held that his opinions were actionable fraud. *Id.*

7   at 652.

8       NYLIM argues that Terra could not have relied on the opinions expressed by NYLIM about

9   the economy (see Defts. Brief at p. 19) as if NYLIM was merely making flip comments about the

10  economy. NYLIM's position is silly. NYLIM did not present its opinions about the economy as

11  pie-in-the-sky conjecture, but rather in the context as Terra's investment advisor and based on its self

12  touted experience, expertise and research capabilities. **NYLIM's position as a fiduciary makes**

13  **it reasonable for Terra to rely on its opinions.** 6 Witkin, *Summary of California Law*, Torts § 777

14  (10th ed. 2005).

15      Furthermore, reliance is a **jury question** except in the **rare** case where the undisputed facts

16  leave **no room** for a reasonable difference of opinion. *Alliance Mortgage Co. v. Rothwell*, 10 Cal.

17  4th 1226, 1239 (1995); *Blankenheim v. E.F. Hutton, Co., Inc.*, 217 Cal.App.3d 1463, 1475 (1990).

18  Moreover, reliance is plaintiff specific. "'What would constitute fraud in a given instance might not

19  be fraudulent when exercised toward another person. The test of the representation is its actual

20  effect on the particular mind . . .'" *Id.* quoting *Wilke v. Coinway, Inc.*, 257 Cal.App.2d 126, 138

21  (1967).

22      NYLIM intended for Terra to rely on its misrepresentations in order for Terra to maintain

23  its equity position in the NYLIM proprietary mutual funds and for NYLIM to thereby benefit from

24  additional advisory fees. Terra, in reliance on the statements of its financial advisor, maintained its

25  equity position in NYLIM mutual funds. (Ex. 12 at 141:13-143:14 (Arditti); Ex. 17 at 94:23-95:23,

26  96:21-97:13 (Dunne); Ex. 21 at 66:18-67:13 (DeJidas).) Therefore, there are material facts in

27  dispute precluding summary judgment on the misrepresentation, concealment and negligent

28  misrepresentation claims.

LAW OFFICES
COTCHETT,
PITRE &
McCARTHY

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF TERRA INSURANCE COMPANY'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ; Case No. 09-CV-01609-WHA**    21

### 5. There Are Material Disputed Facts Which Preclude Summary Judgment on the Issue of Causation

In its argument about the concealment and breach of fiduciary claims, NYLIM contends, without citing to any legal authority, that Terra cannot establish causation.  Def. Brief at 20:11, 21:25.  There are, however, material facts in dispute regarding causation.

Under the concealment claim, NYLIM contends that "Under the circumstances, there is no basis to infer that a reasonable, long-term institutional investor would have liquidated its equities *if only* it had learned about the "tilt" in New York Life's fixed income portfolio."  Def. Brief at 20:14-16 (italics in original).  In *Persson v. Smart Inventions, Inc.*, 125 Cal.App.4th 1141 (2005), two men founded a corporation as 50% shareholders each.  The company was successful, but the men did not get along.  They then began discussing the defendant shareholder buying out the plaintiff.  They agreed on a price and signed an agreement, but on the day of the signing, the corporation began advertising a new product about which the plaintiff was unaware, but of which the defendant had been aware for several months.  The product was very successful.  *Id.* at 1149.  Plaintiff sued for fraud based upon concealment and other claims.  *Id.* At 1146.  Defendant lost after a jury trial and appealed on a number of grounds.  The court held that there was sufficient evidence to support causation in the concealment claim because the plaintiff was deprived of information he should have had in making his evaluation of the price at which to sell, and from this deprivation it was reasonable to conclude the concealment was a proximate cause of the damages.  *Id.* at 1166-67.

In this case, each Terra board member testified that NYLIM's concerns about the financial markets, credit crisis, and its belief that a shift from risky investments into safe U.S. Treasury bonds was an asset allocation strategy NYLIM advocated due to concerns it had about the economy, would have been material to Terra's investment decisions and would have caused Terra to eliminate and/or materially reduce its equity position.  (Ex. 17 at 202;16-204;14 (Dunne); Ex. 18 at 224:15-226:12, 235:17-236:5 (Longo); Ex. 20 at 173:6-174:4 (Charles); Ex. 21 at 168:3-172:1 (DeJidas).)  Consequently, there are material facts which preclude summary judgment on the issue of causation.

With the fiduciary duty claim, NYLIM claims that Terra cannot show that NYLIM's abandonment of the relationship caused any harm.  This is not so.  In late September 2008, after

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF TERRA INSURANCE COMPANY'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ; Case No. 09-CV-01609-WHA          22

seeing drastic reductions in the value of its equity holdings, Terra asked again for NYLIM's assistance to implement both an immediate action plan and an investment strategy to year end. (Wall Decl., Ex. 46, 47 & 51; Ex. 11 at 319:17-320:5 (Coduto).)  However, adding insult to injury, and despite the hundreds of thousands of dollars of advisory fees that it had been paid to date, NYLIM ignored Terra's requests for help, failed to respond, and abandoned its fiduciary relationship.  *Id.*  As a result, Terra's investment portfolio took another nose dive until November 2008, at which point, in order to mitigate its losses, Terra instructed NYLIM to liquidate Terra's holdings in NYLIM mutual funds. (Wall Decl, Ex. 53.)  Between September and November 2008, Terra lost another million.  (Ex. 26 at Report Ex. 4 (Revised).)

### D.   NYLIM Has Failed to Demonstrate that There Are No Triable Issues of Material Fact on Terra's Breach of Contract and Implied Covenant Claims

The elements of a breach of contract claim are: "(1) the existence of a contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) resulting damage to plaintiff." *EPIS, Inc. v. Fid. & Guar. Life Ins. Co.*, 156 F.Supp.2d 1116, 1124 (N.D. Cal. 2001). Moreover, a "covenant of good faith and fair dealing is implied in every contract and requires that neither party do anything that will injure the right of the other to receive the benefits of the contract." *Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga*, 175 Cal.App.4th 1306, 1332 ( 2009).

Here, there are triable issues of material fact as to whether NYLIM breached the parties' Agreement and the covenant of good faith and fair dealing by: (1) failing to pursue the Agreement's stated investment objectives in good faith; (2) concealing its assessment of the financial and credit markets, which formed the basis for its belief that the markets were acting irrationally; (3) advising Terra to keep its investments in NYLIM proprietary funds, even though NYLIM knew this investment strategy was not sound; and (4) ignoring Terra's requests for help and abandoning its fiduciary relationship.  Consequently, summary judgment on these claims cannot be granted.

### E.   NYLIM Has Failed to Demonstrate that There Are No Triable Issues of Material Fact on Terra's Negligence Claim

The elements of a negligence claim are (1) the defendant owed the plaintiff a legal duty of care, (2) the defendant failed to meet this standard of care (breach), (3) the defendant's breach was the proximate or legal cause of the plaintiff's injuries, and (4) the plaintiff was damaged. *Ladd v.*

LAW OFFICES
COTCHETT,
PITRE &
McCARTHY

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF TERRA INSURANCE COMPANY'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ; Case No. 09-CV-01609-WHA          23

1   *County of San Mateo*, 12 Cal.4th 913, 918-919 (1996).  For the reasons set forth above, there are

2   triable issues of material fact as to whether NYLIM acted negligently towards Terra, and as such,

3   NYLIM's Motion with respect to this claim must also be denied.

4        **F.     There Is a Genuine Issue of Fact Regarding Terra's Punitive Damages Claim**

5        NYLIM asks this Court to grant summary judgment on Terra's punitive damages claim

6   because it contends that Terrra cannot prove by clear and convincing evidence that NYLIM's

7   conduct amounted to fraud, malice, or oppression.  NYLIM's argument appears to be three fold:

8   First, NYLIM asserts that it provided extensive information to Terra about the markets and the

9   economy.  Second, it asserts that it had no obligation to disclose the Quality Tilt Program to Terra

10  and was contractually prohibited from doing so.  Third, NYLIM asserts since Sabella and Knapp did

11  not know about the Quality Tilt Program, there is no evidence that it suppressed any material facts

12  from Terra.  NYLIM, again, mischaracterizes the claims asserted by Terra and contorts the evidence

13  relevant to such claims.

14       It is well settled that section 3294 of the California Civil Code allows for recovery of punitive

15  damages in all civil actions not arising from contract.  Punitive damages may be awarded if the

16  defendant is found to have acted with malice, oppression, or fraud.  Cal. Civ. Code § 3294(a).

17  "Fraud" means "an intentional misrepresentation, deceit, or concealment of a material fact known

18  to the defendant with the intention on the part of the defendant of thereby depriving a person of

19  property or legal rights or otherwise causing injury." *Id.* § 3294(c)(3).  "Malice" is defined, *inter

20  alia*, as "despicable conduct which is carried on by the defendant with a willful and conscious

21  disregard of the rights . . . of others." *Id.* § 3294(c)(1).

22       Conscious disregard is required for a finding of malice under California punitive damages

23  statute, and to establish conscious disregard, plaintiff must show that defendant was aware of

24  probable dangerous consequences of his conduct and that he willfully and deliberately failed to avoid

25  those consequences. *Taylor v. Superior Court,* 24 Cal.3d 890 (1979); *Hoch v. Allied-Signal, Inc.*,

26  24 Cal.App.4th 48 (1994); *see also Nolin v. National Convenience Stores, Inc*. 95 Cal.App.3d 279

27  (1979), where the court ruled that even non-intentional conduct comes within the definition of

28  malicious acts punishable by the assessment of punitive damages when a party intentionally

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF TERRA INSURANCE COMPANY'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ; Case No. 09-CV-01609-WHA          24**

1   performs an act from which he knows, or should know, it is highly probable that harm will result.

2   *Id*. at 285-286.

3        Here, NYLIM concealed material information regarding concerns it had over a "full scale

4   credit crisis" and "irrationality" in credit markets beginning in February 2007, and failed to disclose

5   that a shift from risky investments into safe U.S. Treasury bonds was an asset allocation strategy it

6   advocated due to these concerns.  (Ex. 7; Ex.22 at 305:3-307:9 (Wendlandt).)  This information was

7   unilaterally withheld from Terra despite the same concerns having been raised by Terra in November

8   2007 regarding proposed changes to its investment strategy.  (Ex. 11 at 227:15-20, 232:16-233:15

9   (Coduto).)  Terra relied on NYLIM's self-touted experience and superior research capabilities in

10  managing nearly $250 billion of assets for clients, including its parent, only to be deceived.

11       Viewing the evidence in the light most favorable to Terra, a reasonable fact-finder could

12  determine that there is clear and convincing evidence to show that NYLIM misrepresented material

13  facts and suppressed material information from Terra as its fiduciary, and therefore, acted with fraud,

14  oppression and/or malice.  *See e.g., Wyatt v. Union Mortg. Co.*, 24 Cal.3d 773 (1979) (Shareholders,

15  officers, and directors of corporations could be held liable for punitive damages for breaching their

16  fiduciary duty.); *Stokes v. Henson*, 217 Cal.App.3d 187, 197-198 (1990)  (breach of fiduciary duty

17  constituting constructive fraud is basis for punitive damages). Given this, the Court must deny

18  NYLIM's Motion for summary judgment on Plaintiff's punitive damages claims.

19  **V.      CONCLUSION**

20       For the foregoing reasons, NYLIM's Motion for Summary Judgment, or in the alternative,

21  for Partial Summary Judgment should be denied.

22  Date:   April 15, 2010                    **COTCHETT, PITRE & McCARTHY**

23

24                                            By:_____/s/_____
                                                      NIKI B. OKCU
25
                                              *Attorneys for Plaintiff Terra Insurance Company*
26                                            *(A Risk Retention Group)*

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF TERRA INSURANCE
COMPANY'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT ; Case No. 09-CV-01609-WHA          25**