1   J. Russell Stedman (117130), rstedman@bargerwolen.com
    Travis R. Wall (191662), twall@bargerwolen.com
2   Peter J. Felsenfeld (260433), pfelsenfeld@bargerwolen.com
    BARGER & WOLEN LLP
3   650 California Street, 9th Floor
    San Francisco, California 94108-2713
4   Telephone: (415) 434-2800
    Facsimile: (415) 434-2533
5
6   Attorneys for Defendant
    New York Life Investment Management LLC

7

8                   UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                  SAN FRANCISCO DIVISION

11

12
    TERRA INSURANCE COMPANY            )   CASE NO. C 09-01609 WHA
13  (A Risk Retention Group),          )
                                       )   **REPLY MEMORANDUM IN SUPPORT**
14         Plaintiff,                  )   **OF DEFENDANT'S MOTION FOR**
                                       )   **SUMMARY JUDGMENT OR, IN THE**
15         v.                          )   **ALTERNATIVE, FOR PARTIAL**
                                       )   **SUMMARY JUDGMENT**
16  NEW YORK LIFE INVESTMENT           )
    MANAGEMENT LLC,                    )   **FRCP 56**
17                                     )
           Defendant.                  )   **Date:       May 6, 2010**
18                                     )   **Time:       8:00 AM**
                                       )
19                                     )   **Courtroom 9, 19th Floor**
                                       )
20                                     )
                                       )
21  _____ )   **The Honorable William Alsup**

22

23

24

25

26

27

28

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

# TABLE OF CONTENTS

PAGE

1.   **INTRODUCTION** .................................................................................................1

2.   **DISCUSSION** .....................................................................................................1

A.   Terra Does not Dispute the Overwhelming Majority of Material Facts .........................1

    (1)   New York Life and NYL Investments are Distinct Companies and Their Investment Advisory Agreement Required Confidentiality ...................................1

    (2)   Terra Never Requested or was Promised Information about New York Life's Portfolio or Investment Strategies .................................................1

    (3)   The Scope and Composition of the Quality Tilt Program ....................................2

    (4)   Joan Sabella and Bill Knapp had no Knowledge about the Quality Tilt and Knapp's Opinions Could be Wrong .........................................................2

    (5)   Terra's was a Long-Term Investor that Represented its Intention and Ability to Hold its Equities through Downturns in Market Conditions .................2

    (6)   NYL Investments' Provided Extensive Information About Adverse Market and Economic Conditions, Including That Some Investors Were Buying U.S. Treasuries ....................................................................................2

B.   Terra has not Established any Disputed Material Issue of Fact .........................................3

    (1)   The Fact that NYL Investments Earned Fees from Managing Terra's Mutual Funds Does not Create a Duty to Disclose the Investment Strategies of any Other Client, Including New York Life ..................................3

    (2)   NYL Investments had no Duty to Disclose the Quality Tilt Even after New York Life Made Public Disclosures About it in Early 2008 .................................5

C.   Terra Has not Submitted Competent Evidence Supporting its Contention that NYL Investments Misrepresented or Concealed  its "True" Opinions about the Economy or Equities Markets ...............................................................................6

    (1)   Wendlandt's Position as NYL Investments' Chairman is Irrelevant ....................7

    (2)   NYL Investment E-Mails Sent After New York Life Informed it of the Quality Tilt do not Establish That NYL Investments Conceived of, Recommended The Quality Tilt, or Unanimously Shared Wendlandt's Opinions and Concerns .......................................................................................8

    (3)   NYL Investments' Routine Reporting Regarding Bond Information Does not Establish that it Conceived of or Recommended the Quality Tilt ...................8

    (4)   New York Life's February 2008 Advertisement Does not Create a Triable Issue of Fact .......................................................................................................9

D.   Terra has Failed to Create a Triable Issue as to Materiality .........................................10

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

E.   Terra Has not Established that it Reasonably Relied on Sabella's and Knapp's Statements or that Their Statements Lacked a Reasonable Basis ................................. 12

F.   Terra Cannot Prove that NYL Investments Engaged in Fraud or Intentional Wrongdoing under any Theory ....................................................................... 13

G.   Terra Has Not Created a Triable Issue as to Breach of Fiduciary Duty, Breach of Contract or Negligence ................................................................................. 15

H.   Defendants are Entitled to Judgment as a Matter of Law on the Punitive Damages Claim .............................................................................................. 15

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

ii

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

1

## TABLE OF AUTHORITIES

2

PAGE

3

**Cases**

4

*Basic Inc. v. Levinson,*
    485 U.S. 224 (1988) ........................................................................................ 10

*Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC,*
    162 Cal. App. 4th 858 (2008) ........................................................................... 4

*Dong v. Chertoff,*
    513 F. Supp. 2d 1158 (N.D. Cal. 2007) ........................................................... 6

*Dyke v. Zaiser,*
    80 Cal. App. 2d 639 (1947) ............................................................................ 12

*Gilberd v. Dean Witter Reynolds, Inc.,*
    1992 WL 880089 (N.D. Cal. Aug. 11, 1992) ................................................. 13

*Harte v. United Benefit Life Ins. Co.,*
    66 Cal. 2d 148 (1967) ..................................................................................... 13

*In re Actimmune Marketing Litigation,*
    614 F. Supp. 2d 1037 (N.D. Cal. 2009) ......................................................... 14

*In re Silicon Graphics Inc. Securities Litigation,*
    183 F.3d 970 (9th Cir. 1999) .......................................................................... 15

*Landmen Partners, Inc. v. Blackstone Group, L.P.,*
    659 F. Supp. 2d 532 (S.D.N.Y. 2009) ...................................................... 5, 14

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.,*
    416 F. 3d 940 (9th Cir. 2005) ......................................................................... 10

*Lusk v. Foxmeyer Health Corp.,*
    129 F.3d 773 (5th Cir. 1997) ............................................................................ 7

*Lynch v. Cook,* 148 Cal. App. 3d 1072 (1983) ........................................................ 10

*Matsushita Elec. Indus. Co., Ltd.,*
    475 U.S. 574 (1986) .......................................................................................... 6

*McCormick v. Fund Am. Cos., Inc.,* 26 F.3d 869 (9th Cir. 1994) ............................. 10

*Nationwide Transport Finance v. Cass Info. Systems, Inc.,*
    523 F.3d 1051 (9th Cir. 2008) .......................................................................... 4

*Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells,*
    86 Cal. App. 4th 303 (2000) ........................................................................... 12

*Snook v. Nethreby,*
    124 Cal. App. 2d 797 (1954) .......................................................................... 13

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

iii

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

*Underwriters Clearing House v. Natomas Co.,*
   184 Cal. App. 3d 1520 (1986) ................................................................................................ 10

*United States v. Bestfoods,*
   524 U.S. 51 (1998) .................................................................................................................... 7

**BARGER & WOLEN** LLP
**650 CALIFORNIA STREET**
**NINTH FLOOR**
SAN FRANCISCO, CA 94108
(415) 434-2800

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

## 1.    INTRODUCTION

NYL Investments is entitled to summary judgment.  As Terra's opposition makes clear, its entire claim rests upon two contentions: NYL Investments had a duty to disclose what New York Life Insurance Company ("New York Life") was doing with its investment portfolio and NYL Investments conceived of and recommended the Quality Tilt program such that it misrepresented or concealed its "true" opinions from Terra.  Duty is an issue of law, and Terra has established no legal or factual basis for the duty it seeks to impose in this case.  Terra has failed to meet its burden of presenting any competent evidence to support its bald assertion that NYL Investments misrepresented or concealed its "true" opinions.  These defects are fatal to each and every one of Terra's claims for relief.

## 2.    DISCUSSION

### A.    Terra Does not Dispute the Overwhelming Majority of Material Facts

#### (1)    New York Life and NYL Investments are Distinct Companies and Their Investment Advisory Agreement Required Confidentiality

Terra presents no evidence or argument that New York Life and NYL Investments are alter egos or should be treated as anything other than distinct companies.  Terra does not dispute that the investment advisory contract between New York Life and NYL Investments required confidentiality and non-disclosure of "all information and advice furnished by either party."

#### (2)    Terra Never Requested or was Promised Information about New York Life's Portfolio or Investment Strategies

Terra does not dispute that:  (a) the parties' Agreement does not require NYL Investments to provide any information about New York Life's investments, or its views on the markets or economy; (b) NYL Investments never promised to provide such information; (c) Terra never requested information about New York Life's investments, strategies or opinions; and, (d) NYL Investments had never previously obtained such information for Terra.  Terra relies only upon materials "touting" the relationship between New York Life and NYL Investments, and the fact that a substantial portion of the total funds NYL Investments' management belonged to New York Life.  This evidence is undisputed but entirely immaterial.  The statements promised nothing and created no duty whatsoever.  The amounts NYL Investments managed for affiliates is irrelevant.

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

1

(3)    **The Scope and Composition of the Quality Tilt Program**

Terra does not dispute that the Quality Tilt program: (a) did not involve NYL Investments' assets, but those of New York Life; (b) did not concern equities or any modification to New York Life's equity allocation; (c) did not involve the sale of any assets, but only reallocation of a some new cash flow from specific credit investments (BBB bonds) to U.S. Treasuries.

(4)    **Joan Sabella and Bill Knapp had no Knowledge about the Quality Tilt and Knapp's Opinions Could be Wrong**

Terra does not dispute that Sabella and Knapp never worked on the New York Life account and had no personal knowledge about the Quality Tilt program. Terra does not dispute that it understood Knapp could be wrong about his opinion.

(5)    **Terra's was a Long-Term Investor that Represented its Intention and Ability to Hold its Equities through Downturns in Market Conditions**

Terra does not dispute that: (a) it had always taken a long-term approach with respect to its investments; (b) it always held about 15% equities in its portfolio; (c) multiple sources indicated this was a proper percentage and nobody, other than Coduto, recommended zero equity investments; and, (d) it represented in January 2008 that, despite expected continued difficulties in the financial sector, Terra had taken a long term view of its investments and had the "intent, and proven ability," to hold equity securities through market downturns.

(6)    **NYL Investments' Provided Extensive Information About Adverse Market and Economic Conditions, Including That Some Investors Were Buying U.S. Treasuries**

Terra does not dispute that NYL Investments disclosed extensive information about then current negative market and economic conditions, including the subprime crisis, credit crisis and impacts in the financial sector, as described in detail in NYL Investments' moving papers. It is undisputed that NYL Investments told Terra repeatedly about volatility in the markets, and, more than once, that investors were buying more U.S. Treasuries in a "massive flight to quality."

Terra attempts to dismiss Knapp's presentation as "optimistic," and "one size fits all." Terra does not dispute NYL Investments' evidence of Knapp's presentation, which included statements about the economy exhibiting signs of weakness, the housing market being in trouble, existing concerns about recession and other negative as well as positive factors. Nor is there anything

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

2
DEFENDANT'S REPLY RE MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

improper about Knapp giving consistent information to multiple recipients about his economic analysis and forecast, and doing otherwise would have been inappropriate.  Terra offers no evidence that Knapp's opinions were unreasonable or without basis.

The crux of Terra's fraud-based claims is that the extensive disclosures NYL Investments' made were insufficient because: (a) it had a legal duty to also disclose that *a particular investor*, New York Life, was buying U.S. Treasuries instead of some of its normal fixed income, BBB bond investments; and, (b) it had contrary "true" beliefs it did not share with Terra.  As discussed in detail below, NYL Investments had no such duty, what New York Life was doing was immaterial as a matter of law, and Terra has failed to support its repeated argument that NYL Investments had any contrary beliefs with competent evidence.

### B.   Terra has not Established any Disputed Material Issue of Fact

#### (1)   The Fact that NYL Investments Earned Fees from Managing Terra's Mutual Funds Does not Create a Duty to Disclose the Investment Strategies of any Other Client, Including New York Life

Terra's theory of duty is founded upon a contradiction.  Terra first states it does not contend that NYL Investments had an obligation to "disclose confidential investment strategies of its parent or the specifics of the Quality Tilt Program."  Opposition at 16:1-2.  Terra then argues that NYL Investments had a duty to disclose that "adverse market conditions were driving certain investors, ***including NYLIC***, to partially and temporarily rebalance their credit portfolio, in favor of higher U.S. Treasuries, but that their outlook about equities was unchanged."  Opposition at 16:11-13 (emphasis added).  These positions cannot be reconciled with regard to New York Life's confidential investment activities (until New York Life chose to make them public).
NYL Investments cannot have a legal duty to provide confidential information to Terra that Terra concedes NYL Investments was not required to disclose in the first place.

In support of its position that there was a duty to disclose that New York Life was "temporarily rebalance[ing] its credit portfolio, in favor of higher U.S. Treasuries, but that their outlook about equities was unchanged," Terra relies on the report of (purported) expert John Chung. Opposition at 16:13; Okcu Decl., Ex. 23.  A cursory review of Chung's report shows he relies solely upon statutes, case authority and SEC publications to offer his opinion as to NYL Investments' duty

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

3
DEFENDANT'S REPLY RE MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

and whether it was violated.  *See* Okcu Decl., Ex. 23 at 6-9 & nn.1-4, 13, 14, 18, 19.  Chung improperly opines on legal issues, and his report is not admissible.  *See* Defendant's Objections to Terra's Evidence; *see also, e.g., Nationwide Transport Finance v. Cass Info. Systems, Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) (expert opinion on duty under U.C.C. and breach improper).[1]

Moreover, a cursory review of Chung's report and his opinions shows they are grossly deficient, illogical and not supported by any law or fact.  Chung concludes, without any basis, that NYL Investments' fiduciary duties were "heightened" because it managed mutual funds that Terra invested in, and that this under this "higher" duty NYL Investments assumed an obligation to make wide disclosures as to what New York Life was doing with its portfolio, even if confidential.  Okcu Decl., Ex. 23 at 8.  There is no "spectrum" of fiduciary duties.  There is no legal or logical nexus between NYL Investments' earning fees from mutual funds Terra was invested in and New York Life's investment strategies.  Terra's opposition does not dispute that NYL Investments made full disclosure about its dual role as manager of the mutual funds and Terra's portfolio, and the fees it would earn.  Wall Decl., Ex. 8.

Terra also offers this bizarre rationale for the duty it seeks to impose: "[T]o the extent that there was any conflict between any obligations NYLIM owed to NYLIC and Terra, this conflict was self imposed and voluntarily assumed by NYLIM.  The benefit NYLIM gained from fees and revenues managing Terra's portfolio was offset by its duty to disclose."  Opposition at 17:18-21. Receiving fees from managing a client portfolio does not create a conflict as to other clients.  If that were the case, investment advisors could only manage one client account at a time.  Even if there could be a conflict, the advisor's voluntary assumption of the conflict does not waive another client's rights to confidentiality.  *See Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC,* 162 Cal. App. 4th 858, 888 n.8 (2008) (agent must maintain confidentiality of principal's information).

Terra has not established that NYL Investments had a legal duty to disclose any information regarding New York Life's investments strategies.  To the contrary, it is well established under

---

[1] Terra also fails to establish Chung is qualified to provide expert opinions relevant to this case.  *See* Defendant's Objections to Plaintiff's Evidence.

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

4

DEFENDANT'S REPLY RE MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

securities and common law that, as an investment advisor and fiduciary, NYL Investments had a
duty to maintain the confidentiality of New York Life's portfolio and investment strategies.

### (2)   NYL Investments had no Duty to Disclose the Quality Tilt Even after New York Life Made Public Disclosures About it in Early 2008

New York Life's publishing information about the Quality Tilt in early 2008 did not give
rise to a duty to disclose.  Terra does not dispute that the mere fact that information exists in the
public realm does not mean that NYL Investments had a duty to disclose it or that it was material.
On the one hand, Terra claims NYL Investments' not disclosing what New York Life was doing, as
reported in Wendlandt's "Special Report," was fraud and concealment.  On the other hand, this
Special Report was available on the Internet.  Terra never even asked NYL Investments to provide
information about New York Life, but when it decided to sue it was able to access this publicly
available information and base this lawsuit on that very information.

Terra repeatedly asserts that it had raised "similar concerns" as Wendlandt "at or about the
same time."  Coduto's and Wendlandt's concerns were significantly different, the first concerned
with the equity markets, the second with a coming down cycle in the credit markets.  The
timeframes were also entirely different.  Wendlandt's concerns were in late 2006 and early 2007.
Wendlandt made clear in his Special Report that "By August 2007, the credit market problems we
had feared were front page news."  Wall Decl., Ex. 59 at NYLIM004528.  Thus, well before the
November 2007 Terra Board meeting, New York Life's concerns about the credit market conditions
that led to the Quality Tilt were publicly known, and before the March 2008 Board meeting New
York Life's Quality Tilt program was publicly available.  There is no duty to disclose publicly
available information or "generally known macro-economic conditions."  *See Landmen Partners,
Inc. v. Blackstone Group, L.P.*, 659 F. Supp. 2d 532, 544-46 (S.D.N.Y. 2009) (granting motion to
dismiss for alleged failures of disclosure in SEC registration statement).

Terra does not dispute the disclosure and discussion of substantial market and economic
information, including that investors were "flocking to Treasuries."  Terra does not dispute that the
subprime crisis and credit market crisis were addressed.  Terra has not established any legal duty to

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

5

DEFENDANT'S REPLY RE MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

supplement these disclosures to include information about adjustments that a particular any other client, including New York Life, was making to a portion of its bond portfolio.[2]

**C.** **Terra Has not Submitted Competent Evidence Supporting its Contention that NYL Investments Misrepresented or Concealed its "True" Opinions about the Economy or Equities Markets**

A party opposing a motion for summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. 574, 586 (1986). The nonmoving party "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* The non-movant cannot merely rely on allegations, but "must present specific and supported material facts, of significant probative value, to preclude summary judgment." *Dong v. Chertoff*, 513 F. Supp. 2d 1158, 1168 (N.D. Cal. 2007). Terra's opposition asserts:

> In this case, Terra contends that NYLIM had an obligation to tell Terra of its assessment that the "markets were acting irrationally," that it believed it was an "unfavorable market environment," and that it believed that the prudent course was to withdraw from the equity markets and invest instead in cash or cash equivalents.

Opposition at 15:17-20. This contention forms the basis for all Terra's claims. To survive summary judgment, Terra must present "specific and supported material facts, of significant probative value" supporting this contention. *Dong,* 513 F. Supp. 2d at 1168. Terra has not met its burden.

Terra does not provide a shred of evidence to support the bald assertion that NYL Investments believed "the prudent course was to withdraw from the equity markets and instead invest in cash or cash equivalents." There is no evidence that any person at NYL Investments believed this or recommended this strategy to any client, including New York Life. To the extent that Terra relies upon the Quality Tilt to support this claim, Terra does not dispute that it did not involve equities or even any analysis of the equity market. Terra does not dispute that New York Life actually increased its equity holdings in 2007. On this basis

---

[2] Terra also does not deny that imposing a duty to make sure investment advice coincides with the advisor's parent company's strategies would conflict with an advisor's obligation to provide "independent" advice. *See In the Matter of Alfred C. Rizzo*, Advisors Act Release No. 897 (Jan. 11, 1984) (advisor must have "reasonable independent" basis for recommendation).

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

DEFENDANT'S REPLY RE MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

alone, the Court should enter judgment in NYL Investments' favor as to all fraud and breach of fiduciary duty claims.

Terra also has failed to establish a triable issue as to whether NYL Investments conceived of or recommended the Quality Tilt. Terra represents that the record is "replete with evidence" that NYL Investments conceived of and developed the Quality Tilt (Opposition at 14:19-23), but in fact cites only to the following to support this contention: (1) Wendlandt is New York Life's Chief Investment Officer and NYL Investments' Chairman; (2) e-mails from NYL Investments personnel responding to Wendandt's January 2007 Quality Tilt memorandum; (3) testimony from Thomas McArdle that NYL Investments supplied information that "contributed" to the Quality Tilt; and (4) a promotional piece published by New York Life in February 2008, (Okcu Decl., Ex. 7). Terra makes a passing reference to New York Life's Annual Report for 2007, which contains Wendlandt's Special Report. Nothing in the Annual Report establishes that the Quality Tilt was NYL Investments' idea, and it is undisputed that NYL Investments played no role in the drafting of the Special Report. None of the evidence Terra cites is sufficient to create a triable issue of fact.

### (1)   <u>Wendlandt's Position as NYL Investments' Chairman is Irrelevant</u>

Terra flatly asserts that, because Wendlandt was Chairman of NYL Investments' Board, it was NYL Investments that conceived of and recommended the Quality Tilt, and that Wendlant's opinions about credit market conditions were therefore those of NYL Investments. Terra presents no law or facts to support this position. Terra does not dispute the "well established principle [of corporate law]," that directors and officers holding positions with a parent and its subsidiary "can and do 'change hats' to represent the two corporations separately, despite their common ownership." *United States v. Bestfoods*, 524 U.S. 51, 69 (1998). Terra does not dispute that there is a presumption under the law that individuals are wearing their "parent hats" when acting for the parent and their "subsidiary hats" when acting for the subsidiary (*id.*), and that it is insufficient simply to establish that he held positions with both companies. *See Lusk v. Foxmeyer Health Corp.,* 129 F.3d 773, 779 (5th Cir. 1997). Terra does not offer any evidence that Wendlandt's duties or activities as Chairman of NYL Investments were even related to the Quality Tilt. It does not contest NYL Investments' evidence proving the exact opposite. The undisputed evidence establishes that

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

7

DEFENDANT'S REPLY RE MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

Wendlandt conceived of and recommended the Quality Tilt solely in his capacity as New York Life's Chief Investment Officer. *See, e.g.,* Wall Decl., Ex. 90 at 316:2-8.

### (2) NYL Investment E-Mails Sent After New York Life Informed it of the Quality Tilt do not Establish That NYL Investments Conceived of, Recommended The Quality Tilt, or Unanimously Shared Wendlandt's Opinions and Concerns

Terra cites a handful of emails written by NYL Investments personnel *after* Wendlandt conceived of and recommended the Quality Tilt program to New York Life. These emails were in response to New York Life sharing a draft of Wendlandt's Quality Tilt memorandum. *See* Okcu Decl., Exs. 4 & 5. Without any support, Terra describes these emails as showing that New York Life sought NYL Investments' "approval" before moving forward with the Quality Tilt. Not only does this evidence not establish this, it further proves that NYL Investments did not learn about the proposal until after New York Life preliminarily approved the program and had begun financial modeling. Wall Decl., Ex. 69 (Quality Tilt memo not sent to NYL Investments' personnel until January 10, 2007); *see also* Wall Decl., Ex. 77 at 92:19-93:18; Ex. 79 at 111:3-114:13, 117:3-121:8. The cursory responses in NYL Investments personnel emails were generalized and in one case laudatory that Wendlandt had developed the concept. They contain nothing of substance.

This evidence also refutes Terra's contention that NYL Investments held certain beliefs about the necessity of the Quality Tilt in light of credit market conditions, that economic conditions were dire, or investors should take drastic action. For example, Jae Yoon wrote in an email to NYL Investments' CEO that Wendlandt "probably" was right about the Quality Tilt strategy and that "[m]any feel 2007 will be a *soft to bumpy landing, anything but hard*, but the oppty costs is not so painful to have this tilt." Okcu Decl., Ex. 5 (emphasis added). Terra also does not dispute that there were disagreements within NYL Investments and New York Life regarding the need for and perceived benefits of the Quality Tilt program, and whether it should involve purchase of U.S. Treasuries. *See* Wall Decl., Ex. 90 at 111:17-24, 112:23-113:16.

### (3) NYL Investments' Routine Reporting Regarding Bond Information Does not Establish that it Conceived of or Recommended the Quality Tilt

Terra cites testimony from McArdle that that NYL Investments provided "supporting information" to Wendlandt and Arthur Seter to argue that NYL Investments' "contributions" led to

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

8

DEFENDANT'S REPLY RE MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

the Quality Tilt.  Opposition at 17:9-12 (citing Okcu Decl., Ex. 15 at 66:20-67:12).  This evidence establishes only that NYL Investments had provided information about bond spreads to New York Life – either at New York Life's request or as part of routine reporting – not that NYL Investments collaborated in conceiving of the program or made some "contribution" that led to it.  McArdle clearly testified that no one at NYL Investments played any role in developing the program, other than the mechanical implementation of the Quality Tilt after the program had been approved internally at New York Life.  Wall Decl. Ex. 77 at 65:2-66:10.  He further testified that NYL Investments did not provide advice with regard to the program.  *Id.* at 87:4-9. Wendlandt testified he alone conceived of the Quality Tilt and NYL Investments did not recommend it.  Wall Decl., Ex. 90 at 321:4-12.  The McArdle testimony relied upon by Terra does not create a triable issue of fact.

**(4)   New York Life's February 2008 Advertisement Does not Create a Triable Issue of Fact**

Terra cites a February 2008 advertisement by New York Life arguing it shows that NYL Investments admits it was the source of the Quality Tilt.  Okcu Decl., Ex. 7.  This promotion piece was published by New York Life (as shown on its face), and is not admissible as an admission against NYL Investments, or admissible period.  *See* Defendant's Objections to Plaintiff's Evidence.  Even if it were considered, the generalized statements in the document are not evidence that NYL Investments conceived of or recommended the Quality Tilt program.  These statements do not contradict or conflict with the undisputed evidence that Wendlandt conceived of the Quality Tilt, then developed it with others within New York Life and only later involved NYL Investments. Wall Decl., Ex. 90 at 321:4-12; Ex. 77 at 91:10-93:18.

The New York Life advertisement notes that in 2006 and early 2007 investment professionals at NYL Investments noted trends suggesting the prices in debt securities "did not adequately reflect the degree of risk in the market."  In other words, bond spreads were at historic lows.  This bond spread information was not confidential, but widely known in the marketplace.  It also is consistent with Wendlandt's evidence that, prior to his conceiving of the Quality Tilt, NYL Investments had been buying higher quality bonds as a result of market conditions.  *See, e.g.,* Wall Decl., Ex. 70 at NYLIM28795.  The advertisement then states that NYL Investments "placed

more of [New York Life's] investments in traditionally safe, reliable Treasury bonds and less in corporate debt." This is true – NYL Investments did take this action – at New York Life's direction. The document does not describe who devised the program or provide any detail about the rationale behind it.

NYL Investments has produced all documents it could locate pertaining to the Quality Tilt, with the exception of implementation documents. *See* Docket No. 69. Despite this fact, the only "evidence" Terra can cite to support its claim that NYL Investments conceived of the Quality Tilt is an unauthenticated, advertisement published by a company other than NYL Investments stating that New York Life purchased additional U.S. Treasuries just like many other investors. The document has no probative value under the *Matsushita* standard.

### D.    Terra has Failed to Create a Triable Issue as to Materiality

Materiality can be determined as a matter of law. *McCormick v. Fund Am. Cos., Inc.,* 26 F.3d 869, 884 (9th Cir. 1994); *Lynch v. Cook,* 148 Cal. App. 3d 1072, 1081-82 (1983). Materiality is governed by an objective standard. To create a triable issue, Terra must establish that a reasonable long-term investor, under all the circumstances, would have acted differently if the misrepresentation had not been made or the truth had been disclosed. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.,* 416 F. 3d 940, 947 (9th Cir. 2005); *Ins. Underwriters Clearing House v. Natomas Co.,* 184 Cal. App. 3d 1520, 1526 (1986) (citation omitted). That is, to be material, there must be a substantial likelihood that the omitted or misrepresented fact would have been viewed by the reasonable investor as having "significantly altered the 'total mix' of the information made available." *Basic Inc. v. Levinson,* 485 U.S. 224, 240 (1988).

Terra's Opposition confuses materiality and causation. Before addressing the issue of causation, a fraud plaintiff must first establish materiality, which is determined by an objective "reasonable investor" standard. This standard cannot be established by Terra's Directors' subjective, biased hindsight contention that had they known about the Quality Tilt they would have liquidated all equities.

Terra contends that NYL Investments could have satisfied its obligation to make material disclosures simply by making the following acknowledgment: "The disclosure…could have simply

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

10

DEFENDANT'S REPLY RE MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

been in the form of an acknowledgment that adverse market conditions were driving certain investors, including NYLIC, to partially and temporarily reallocate their portfolios in favor of higher U.S. Treasuries, but that their outlook about the equities was unchanged."  Opposition at 20:11-15.  It is undisputed that Terra was a long-term investor and aware of "predictions for continued difficulties in the financial sector," but still confirmed during the relevant time period that Terra had the "intent, and proven ability," to hold equity securities through downturns in market conditions.  Wall Decl., Ex. 22 at NYLIM13375.  It is undisputed that NYL Investments disclosed extensive information about adverse market and economic conditions to Terra.  It is undisputed that NYL Investments told Terra that many investors were "flocking to U.S. Treasuries."

The only additional "fact" Terra claims it should have been told was that a particular investor, New York Life, was tilting slightly in favor of U.S. Treasuries in its fixed income, *i.e.* not equity, portfolio.  Terra's Opposition fails to offer any explanation, let alone establish, how this incremental information would have been substantially likely to cause a reasonable, long term investor to decide to liquidate all equities against the recommendation of its investment advisor.  This fact does not "significantly alter" the "total mix" of information made available to Terra and thus is immaterial as matter of law.

Citing a report of an economist, Jane Nettesheim, Terra argues there materiality is established because there was a "link" between the stock and bond markets.  Nettesheim's expert report is inadmissible for any purpose.  *See* Defendants Objections to Plaintiff's Evidence.  Even if considered, the testimony Terra cites has no probative value on the issue of materiality.  Terra had extensive negative information about the bond and credit markets in general yet did not liquidate its equities.  And, among other things, it is merely a theoretical link.  Nettesheim admitted under cross examination that she was not aware of anyone in the marketplace ever using corporate bond prices to attempt to predict the stock market and that she was not even offering an opinion as to how an investor could use the alleged correlation between BBB bonds and stocks in making investment decisions.  Supp.Wall Decl., Ex. 93 at 61:5-15, 116:9-23.

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

11
DEFENDANT'S REPLY RE MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

**E.** **Terra Has not Established that it Reasonably Relied on Sabella's and Knapp's Statements or that Their Statements Lacked a Reasonable Basis**

Terra has not presented any evidence or argument establishing that its Directors could justifiably rely upon any statements that Sabella or Knapp made about future economic performance. Opinions about the economy or forecasts about future economic performance cannot support a claim for intentional or negligent misrepresentation. *See Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells*, 86 Cal. App. 4th 303, 310 (2000). Terra argues that opinions sometimes can be actionable where a party holds herself or himself out has having superior knowledge about the subject. This exception to the "opinion" rule does *not* apply to statements about future economic events. *Id.*[3] Moreover, Terra does not dispute that its Directors understood that Knapp's projections about the economy could be wrong. Wall Decl., Ex. 76 at 163:4-8; Ex. 80 at 1-6; Ex. 83 at 121:14-19; Ex. 84 at 104:22-105:13; Ex. 85 at 73:1-23. Terra's Directors cannot reasonably rely on economic predictions that they know could be incorrect. To prevail, Terra must establish that it reasonably relied on Sabella's and Knapp's statements. Terra cannot make that showing here.

Terra also has not presented any evidence or argument establishing that Sabella and Knapp lacked a reasonable basis for their opinions about the economy. Terra does not dispute that there were detailed discussions during both Board meetings about a host of economic factors, including the historical performance of Terra's portfolio, unemployment statistics, the sub-prime crisis, historical charts regarding stock and bond markets, and Terra's investment strategy. Terra has objected to some (but not all) surveys NYL Investments submitted to show that Knapp's opinions were in line with those of other economists thought at the time. Plaintiff's objections lack merit. *See* Defendant's Response to Objections to Request for Judicial Notice. In any event, Terra offers no competing evidence or argument establishing that Sabella and Knapp lacked a reasonable basis for their opinions. Terra concedes this point, and thus its intentional and negligent misrepresentation claims fail as a matter of law.[4]

---

[3] Terra cites *Dyke v. Zaiser,* 80 Cal. App. 2d 639 (1947), for the proposition that statements about future events can be actionable but this case is easily distinguishable. The defendant was a city council member who knew a fact, that a city was going to eliminate gaming, but lied to convince the plaintiff to enter into a guaranteed commercial lease. 80 Cal. App. 2d at 651-52.
[4] NYL Investments objects to the consideration of Chung's expert report. *See* Defendant's

DEFENDANT'S REPLY RE MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

**F.**     **Terra Cannot Prove that NYL Investments Engaged in Fraud or Intentional Wrongdoing under any Theory**

The parties agree that Sabella and Knapp are the only individuals that made representations to Terra that form the basis of its claim.  The parties also agree that neither of these individuals worked on New York Life's account, knew about the Quality Tilt, or had any substantive discussions with anyone at anytime about the program.  Since Terra's claims of intentional wrongdoing all rely upon allegations about the Quality Tilt, there is no factual basis to infer that Sabella or Knapp intentionally misrepresented or concealed their true opinions about the economy.

Plaintiff cites the unpublished decision in *Gilberd v. Dean Witter Reynolds, Inc.*, 1992 WL 880089 (N.D. Cal. Aug. 11, 1992), for the proposition that the focus of the fraud and breach of fiduciary duty claims should be on whether NYL Investments, not individual employees, made false statements.  In *Gilberd*, plaintiff interviewed with Dean Witter personnel and was awarded the job.  *Id.* *1.  During that same time frame, Dean Witter officers were discussing reorganizing and eliminating the position.  The people interviewing the Plaintiff had no knowledge of the impending reorganization.  *Id.*   The court refused to dismiss a negligent misrepresentation claim, reasoning that knowledge of the officers could be imputed to the personnel conducting the interviews.

The case is distinguishable on a number of grounds. The case does not establish, as Terra incorrectly argues, that the required scienter for fraud can be established through imputed knowledge to an agent.  To the contrary, it is basic law that imputed knowledge *cannot* be used to establish scienter where actual knowledge in the subjective sense is required.  *See Harte v. United Benefit Life Ins. Co.,* 66 Cal. 2d 148, 153 (1967) (knowledge not imputed where dispute turns on actual knowledge); *Snook v. Nethreby,* 124 Cal. App. 2d 797, 801 (1954) (imputed knowledge insufficient to establish bad faith).   *Gilberd* did not involve an investment advisor, nor can it be extended to support what Terra is actually asserting:  that if one person employed by an investment advisor has an opinion about the economy or markets then every other person employed by the advisor must state the same opinion or the advisor can be sued for fraud.

---

Objections to Plaintiff's Evidence.  If considered then Terra, through Chung's opinions, has admitted that Sabella's and Knapp's opinions were honestly held and had a reasonable basis.  Okcu Decl., Ex. 23 at 9.

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

DEFENDANT'S REPLY RE MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

The *Gilberd* reasoning would not even support a claim for negligent misrepresentation under the facts of this case. The reorganization plan in *Gilberd* rendered the representations by the personnel interviewing the plaintiff indisputably false, whereas the existence of New York Life's Quality Tilt does not automatically render Sabella's and Knapp's opinions about the economy or financial markets false, or prove that their statements lacked a reasonable basis.

There is no evidence that NYL Investments as an institution conspired to conceal the company's true beliefs about the economy. There is no evidence that NYL Investments conceived of or developed the Quality Tilt or that there was a uniform agreement within the company about the benefits of the program. In other words, there was no NYL Investments "belief" to conceal. NYL Investments cannot conspire to conceal a belief that does not exist.

*Gilberd* also did not involve a contractual duty of confidentiality to a client. NYL Investments had no legal right to disclose to Terra the Quality Tilt program itself until New York Life made it public. An investment advisor obviously cannot be liable for intentionally "suppressing" information it had no right or duty to disclose. Moreover, once the Quality Tilt information became public, there is no basis to infer that NYL Investments could conspire to conceal it. A company cannot suppress information that is publicly available, including widely known information about the credit crisis. *See Landmen*, 659 F. Supp. 2d at 545 ("generally known macro-economic conditions" cannot form the basis of concealment claims because such matters are already part of the "total mix" of information available to investors).

Finally, Terra contends that NYL Investments had a motive to commit fraud or conceal facts in order to receive continued fees on Terra's mutual funds.[5] The bare allegation that NYL Investments was motivated to commit fraud in order to maximize profits is insufficient to create an inference of fraud. *See In re Actimmune Marketing Litigation,* 614 F. Supp. 2d 1037, 1054 (N.D. Cal. 2009) (objective of a company to maximize profits is not evidence of fraud); *In re Silicon Graphics Inc. Securities Litigation,* 183 F.3d 970, 974 (9th Cir. 1999) (motive and opportunity are not enough to provide a inference of deliberately reckless or conscious misconduct.)

---

[5] Terra suggests, without evidence, that it was "essentially forced" to invest only in NYL Investment managed mutual funds. Terra was free to cancel the Agreement at any time.

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

14
DEFENDANT'S REPLY RE MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

**G.     Terra Has Not Created a Triable Issue as to Breach of Fiduciary Duty, Breach of Contract or Negligence**

For the reasons discussed in detail above, Terra has not submitted competent evidence to establish that NYL Investments had any opinion different than provided, that NYL Investments had a duty to disclose the Quality Tilt, that the portfolio managers working on the account knew about the program and agreed with the strategy, that there was any plan to wrongfully conceal the Quality Tilt, that the program was material to Terra's equity investment decision, or that knowledge about the program would have caused a reasonable investor to act differently.

Terra has included one additional argument, that NYL Investments "abandoned" the relationship in October 2008.  Terra's opposition brief does not contest the evidence or argument that NYL Investments submitted on this issue.  For the abandonment argument to have any merit as a stand alone basis for a claim, Terra would have to show it was harmed by it, *i.e.* that NYL Investments' advice would have changed to "liquidate all equities."  There is no such evidence or even argument in Terra's Opposition.

**H.     Defendants are Entitled to Judgment as a Matter of Law on the Punitive Damages Claim**

There is no evidence, let alone clear and convincing evidence, that Sabella or Knapp ever knew about the Quality Tilt, or that NYL Investments suppressed any material information.  NYL Investments had no duty to disclose anything about New York Life's investment strategies and was in fact legally and contractually prohibited from doing so.  Terra will have an insurmountable hurdle simply establishing that there was a duty to disclose the Quality Tilt and cannot possibly prove by clear and convincing evidence that the failure to disclose the program amounted to fraud.

Dated:  April 22, 2010                           BARGER & WOLEN LLP


By:   /s/ Travis R. Wall
        J. RUSSELL STEDMAN
        TRAVIS R. WALL
        Attorneys for Defendant
        New York Life Investment
        Management LLC

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

15
DEFENDANT'S REPLY RE MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT